UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **Students for Life of America**; **Midwest Bible Church**; **Pro-Life Action League**; **Illinois Right to Life**; **Clapham School**; **DuPage Precision Products**; **Michael Flynn**; **Kolby Atchison**; **Jaclyn Cornell**; **Ann Scheidler**; **Eric Scheidler**; **Matthew Yonke**, | |
| Plaintiffs, | Case No. 1:24-cv-11928 |
| v. | |
| **Ann Gillespie**, in her official capacity as acting director of the Illinois Department of Insurance; **Kwame Raoul**, in his official capacity as attorney general of Illinois; **J.B. Pritzker**, in his official capacity as governor of Illinois, | |
| Defendants. | |

## COMPLAINT

Illinois law requires health-insurance policies to cover elective abortions on the same terms as they cover pregnancy-related benefits. *See* 215 ILCS 5/356z.4a. It also requires health-insurance policies to cover abortion-inducing drugs, and it forbids insurers to impose any cost-sharing arrangements such as co-pays or deductibles on this coverage. *See* 215 ILCS 5/356z.60. These abortion-inducing drugs must be provided free of charge to any beneficiary who demands them, and they are paid for entirely by premiums charged to other beneficiaries.

These compulsory abortion-coverage laws provide no exceptions or accommodations for employers or individuals who object to abortion on religious or moral

grounds, not even for churches. As a result, Illinois residents who oppose abortion have no way of obtaining state-regulated health insurance that excludes abortion coverage, forcing many of them to choose between paying for other people's elective abortions with their premiums or forgoing health insurance entirely.

Illinois's compulsory abortion-coverage laws abridge the free exercise of religion and other constitutional rights secured by the First and Fourteenth Amendments. They also violate numerous federal statutes, including 18 U.S.C. §§ 1461–1462, the Coates–Snowe amendment (42 U.S.C. § 238n(a)), and the Weldon Amendment. The plaintiffs bring suit to permanently enjoin their enforcement.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2. Venue is proper because one or more of the defendants resides in this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(1)–(2).

3. Because the plaintiffs' claims arose in Cook County, the case is properly assigned to the eastern division.

## PARTIES

4. Plaintiff Students for Life of America (Students for Life) is a 501(c)(3) non-profit corporation organized under the laws of Virginia.

5. Plaintiff Midwest Bible Church is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

6. Plaintiff Pro-Life Action League is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

7. Plaintiff Illinois Right to Life is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

8.   Plaintiff Clapham School is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

9.   Plaintiff DuPage Precision Products is a for-profit corporation organized under the laws of Illinois.

10.   Plaintiff Michael Flynn is a citizen and resident of Illinois.

11.   Plaintiff Kolby Atchison is a citizen and resident of Illinois.

12.   Plaintiff Jaclyn Cornell is a citizen and resident of Illinois.

13.   Plaintiff Ann Scheidler is a citizen and resident of Illinois.

14.   Plaintiff Eric Scheidler is a citizen and resident of Illinois.

15.   Plaintiff Matthew Yonke is a citizen and resident of Illinois.

16.   Defendant Ann Gillespie is the acting director of the Illinois Department of Insurance. Her offices are at 122 South Michigan Avenue, 19th Floor, Chicago, Illinois 60603, as well as 320 West Washington Street, Springfield, Illinois 62767. She is charged with enforcing the state's insurance laws, including ILCS 5/356z.4a and 215 ILCS 5/356z.60, as well as regulating private health insurers in Illinois. Acting Director Gillespie is sued in her official capacity.

17.   Defendant Kwame Raoul is the attorney general of Illinois. His office is at 100 West Randolph Street, Chicago, Illinois 60601. He is charged with enforcing the laws of Illinois, including ILCS 5/356z.4a and 215 ILCS 5/356z.60. Attorney General Raoul is sued in his official capacity.

18.   Defendant J.B. Pritzker is the governor of Illinois. His offices are at 401 South Spring Street, Springfield, Illinois 62704, and 555 West Monroe Street, 16th Floor Chicago, Illinois 60661. Governor Pritzker is sued in his official capacity.

## FACTS RELATED TO STANDING

19.   Each of the plaintiffs is suffering injury in fact, which is traceable to the defendants' allegedly unlawful conduct and likely to be redressed by the requested relief.

### A.    Students for Life of America

20.   Plaintiff Students for Life of America (Students for Life) is a membership organization that exists to oppose abortion and protect unborn children from violence. It has nearly 80 full-time staff, and comprises 1,400 pro-life student groups at middle schools, high schools, colleges, universities, medical schools, and law schools throughout the country. Students for Life is a Judeo–Christian organization, and its opposition to abortion is based on many reasons, including its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Students for Life also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

21.   Students for Life explains its beliefs regarding abortion on its website:

> We believe that the preborn human being is a person deserving the full legal protection of the law—just like you and I. He or she is a whole, living being who is intrinsically valuable. We believe that size, level of development, environment, and degree of dependency do not determine someone's personhood. We are all people simply because we are living human beings. We became people the moment we were created-when the father's sperm and mother's ovum united.

> Abortion is the greatest genocide that our world and our nation have ever known. We believe that a new generation of pro-life leaders must be educated, trained, and equipped with the tools that they need to abolish abortion once and for all. Our generation is the first since the handing down of the Supreme Court cases *Roe v. Wade* and *Doe v. Bolton*, which legalized abortion on demand in 1973. Our generation is among the first to know that abortion kills a human person. We must continue this momentum to turn the tide in our lifetime, and that starts with you.

https://studentsforlife.org/learn/why-should-you-care (emphasis removed) (last visited on November 19, 2024).

22.   Students for Life has standing to sue on two separate and independent grounds. First, it has standing as an employer that wishes to provide abortion-free health insurance to its employees in Illinois. Second, it has standing as an organization whose individual members would have standing to sue in their own right.

### 1.   Students for Life's Standing As Employer

23.   Some of Students for Life's employees reside and work in Illinois.

24.   Students for Life wishes to purchase and provide health insurance for these Illinois-based employees.

25.   But Illinois's compulsory abortion-coverage laws make it impossible for Students for Life to purchase and provide a state-regulated health-insurance policy that excludes abortion coverage, and Students for Life cannot purchase or provide a state-regulated health-insurance policy in Illinois without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) ("[A] law that 'operates so as to make the practice of . . . religious beliefs more expensive' in the context of business activities imposes a burden on the exercise of religion." (quoting *Braunfeld v. Brown*, 366 U.S. 599, 605 (1961)).

26.   This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of

the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### 2.     Students for Life's Organizational Standing

27.   Students for Life also has "representational" or "organizational standing" because it has members in Illinois who wish to purchase abortion-free health insurance. Each of these members would have standing to sue the defendants if they had sued as individuals. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 199 (2023).

28.   Individual A is a member of Students for Life of America. He is currently a student at a private university in Illinois. The university that he attends requires him to carry health insurance as a condition of enrollment. But the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual A to purchase state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

29.   Individual A is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual A also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

30.   Individual A's inability to purchase state-regulated health insurance that excludes abortion coverage inflicts injury in fact. Individual A is suffering further injury in fact because the defendants are forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

31.   Individual B is a member of Students for Life of America. He is currently a student at a private university in Illinois. The university that he attends requires him

to carry health insurance as a condition of enrollment. But the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual B to purchase state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

32.    Individual B is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual B also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

33.    Individual B's inability to purchase state-regulated health insurance that excludes abortion coverage inflicts injury in fact. Individual B is suffering further injury in fact because the defendants are forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

34.    Individual C is a member of Students for Life of America. He is currently a student at a private university in Illinois. The university that he attends requires him to carry health insurance as a condition of enrollment. But the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual C to purchase state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

35.    Individual C is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual C also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

36.    Individual C's inability to purchase state-regulated health insurance that excludes abortion coverage inflicts injury in fact. Individual C is suffering further injury

in fact because the defendants are forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

37.    Individual D is a member of Students for Life of America. He is currently a student at a private university in Illinois. The university that he attends requires him to carry health insurance as a condition of enrollment. But the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual D to purchase state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

38.    Individual D is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual D also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes her complicit in the act of abortion, a grave moral evil.

39.    Individual D's inability to purchase state-regulated health insurance that excludes abortion coverage inflicts injury in fact. Individual D is suffering further injury in fact because the defendants are forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

40.    Individual E is a member of Students for Life of America. He is currently a student at a private university in Illinois. The university that he attends requires him to carry health insurance as a condition of enrollment. But the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual E to purchase state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

41.    Individual E is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual E also believes, on sincere religious grounds, that paying

health-insurance premiums that are used to subsidize other people's abortions makes her complicit in the act of abortion, a grave moral evil.

42. Individual E's inability to purchase state-regulated health insurance that excludes abortion coverage inflicts injury in fact. Individual E is suffering further injury in fact because the defendants are forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

43. Individual F is a member of Students for Life of America. He is currently a student an undergraduate student at a public university in Illinois. The university that he attends requires him to carry health insurance as a condition of enrollment. Individual E is still on his parents' health plan but he intends to remain and work in Illinois after graduating. The defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 will make it difficult or impossible for Individual D to purchase or obtain state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

44. Individual F is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual F also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

45. Individual F's inability to purchase state-regulated health insurance that excludes abortion coverage inflicts injury in fact.

46. Students for Life has other members, in addition to Individuals A through F, who are university students in Illinois and are suffering injuries in fact similar or identical to those described above.

47. All of these Article III injuries are fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin the defendants from enforcing 215

ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

48. The interests that Students for Life seeks to protect in the litigation are germane to the organization's purpose. Students for Life exists to oppose abortion and protect unborn children from violence. *See supra*, at ¶ 20.

49. Neither the claims asserted by Students for Life nor the relief requested in this litigation requires the participation of the organizations' individual members.

## B. Midwest Bible Church

50. Plaintiff Midwest Bible Church is an independent, non-denominational Christian church located in Illinois. It has three church employees. Midwest Bible Church is a Christ-centered, Bible-believing congregation. Midwest Bible Church believes that all human life is sacred and that every human being has inherent dignity and worth, and that elective abortion is a murderous act of violence against the most vulnerable and defenseless members of the human family. Midwest Bible Church's anti-abortion stance is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Midwest Bible Church also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

51. Midwest Bible Church purchases and provides health insurance for its employees, all of whom reside and work in Illinois. Midwest Bible Church, however, has too few employees to self-insure or level-fund, and self-insurance and level-funding

are financially unfeasible because one of its eligible employees is currently suffering from an expensive pre-existing health condition. Christian bill-sharing is also not an option because bill-sharing companies will not accept members with expensive pre-existing health conditions. So Midwest Bible Church, which needs to provide health insurance to its employees, including the employee who is currently suffering from an expensive pre-existing health condition, has obtained health insurance for its employees from Blue Cross Blue Shield, but the Blue Cross Blue Shield plan (as required by Illinois law) covers elective abortions and abortifacients without cost-sharing arrangements, in violation of Midwest Bible Church's religious beliefs.

52.   Illinois's compulsory abortion-coverage laws make it impossible for Midwest Bible Church to purchase and provide state-regulated health insurance that excludes abortion coverage, and Midwest Bible Church cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

53.   This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### C.      Pro-Life Action League

54.   Plaintiff Pro-Life Action League is a nonprofit organization that exists to oppose abortion and protect unborn children from violence. It employs five full-time staff members. Pro-Life Action League's opposition to abortion is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of homicide. Pro-Life Action League also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

55.   Pro-Life Action League purchases and provides health insurance for its employees, all of whom reside and work in Illinois. Because Pro-Life Action is too small to self-insure or level-fund, it must purchase health-insurance policies from state-regulated insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

56.   Illinois's compulsory abortion-coverage laws make it impossible for Pro-Life Action League to purchase and provide state-regulated health insurance that excludes abortion coverage, and Pro-Life Action League cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of homicide. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

57.   This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of

the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### D.    Illinois Right to Life

58.    Plaintiff Illinois Right to Life is a nonprofit organization that exists to oppose abortion and protect unborn children from violence. It employs three full-time staff members. Illinois Right to Life's opposition to abortion is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Illinois Right to Life also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

59.    Illinois Right to Life purchases and provides health insurance for its employees, all of whom reside and work in Illinois. Because Illinois Right to Life is too small to self-insure or level-fund, it must purchase health-insurance policies from state-regulated insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

60.    Illinois's compulsory abortion-coverage laws make it impossible for Illinois Right to Life to purchase and provide state-regulated health insurance that excludes abortion coverage, and Illinois Right to Life cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

61.    This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215

ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### E.    Clapham School

62.   Plaintiff Clapham School is a private Christian classical K–12 school located in Wheaton, Illinois. It is committed to education founded on a Christian worldview informed by the classical tradition. Every faculty member at Clapham School professes faith in Jesus Christ, and the school seeks to point its students to Christ through all subjects. *See* https://www.claphamschool.org/the-clapham-story

63.   As a Christian institution, Clapham School opposes abortion. Clapham School's opposition to abortion is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Clapham School also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

64.   Clapham School employs 18 full-time staff members, and it purchases and provides health insurance for these employees, all of whom reside and work in Illinois. Because Clapham School is too small to self-insure or level-fund, it must purchase health-insurance policies from state-regulated insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

65.   Illinois's compulsory abortion-coverage laws make it impossible for Clapham School to purchase and provide state-regulated health insurance that excludes

abortion coverage, and Clapham School cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

66. This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### F.      DuPage Precision Products

67. Plaintiff DuPage Precision Products is a for-profit, closely held corporation that does business in Illinois.

68. The owners of DuPage Precision Products are Christians who oppose abortion, and their opposition to abortion is rooted in their sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. The owners of DuPage Precision Products also believe, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

69. DuPage Precision Products purchases and provides health insurance for its employees, all of whom reside and work in Illinois. Because DuPage Precision Products is too small to self-insure or level-fund, it must purchase state-regulated health-

insurance policies from insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

70.   Illinois's compulsory abortion-coverage laws make it impossible for DuPage Precision Products to purchase and provide state-regulated health insurance that excludes abortion coverage, and DuPage Precision Products cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

71.   This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### G.   Michael Flynn

72.   Plaintiff Michael Flynn is an Illinois resident. Mr. Flynn serves as Operations Manager of DuPage Precision Products. As Operations Manager, Mr. Flynn is responsible for obtaining health insurance for the employees of DuPage Precision Products, including himself.

73.   Mr. Flynn is a Christian. Mr. Flynn also opposes abortion. Mr. Flynn's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr.

Flynn also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

74.    Mr. Flynn wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Flynn to purchase state-regulated health insurance that excludes abortion coverage, and Mr. Flynn cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

75.    Mr. Flynn also wants to obtain health insurance that excludes abortion coverage for the employees of DuPage Precision Products. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Flynn to obtain state-regulated health insurance that excludes abortion coverage, and Mr. Flynn cannot arrange for DuPage Precision Products to purchase or provide a state-regulated health-insurance policy without becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Wheaton College v. Burwell*, 573 U.S. 958 (2014).

76.    These injuries are fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### H.    Kolby Atchison

77.    Plaintiff Kolby Atchison is an Illinois resident. Mr. Atchison serves as Head of School at Clapham School. As Head of School, Mr. Atchison is responsible for obtaining health insurance for the employees of Clapham School, including himself.

78.    Mr. Atchison is a Christian. Mr. Atchison also opposes abortion. Mr. Atchison opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Atchison also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

79.    Mr. Atchison wants to purchase and obtain health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Atchison to purchase state-regulated health insurance that excludes abortion coverage, and Mr. Atchison cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

80.    Mr. Atchison also wants to obtain health insurance that excludes abortion coverage for the employees of Clapham School. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Atchison to obtain state-regulated health insurance that excludes abortion coverage, and Mr. Atchison cannot arrange for Illinois Right to Life to purchase or provide a state-regulated health-insurance policy for its employees without becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958.

81.    These injuries are fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a

and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

## I.     Jaclyn Cornell

82.    Plaintiff Jaclyn Cornell is an Illinois resident. Ms. Cornell serves as Executive Director of Illinois Right to Life. As Executive Director, Ms. Cornell is responsible for obtaining health insurance for the employees of Illinois Right to Life, including herself.

83.    Ms. Cornell is a Christian. Ms. Cornell also opposes abortion. Ms. Cornell's opposition to abortion is rooted in her sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Ms. Cornell also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

84.    Ms. Cornell wants to purchase health insurance for herself and her family. But Illinois's compulsory abortion-coverage laws make it impossible for Ms. Cornell to purchase state-regulated health insurance that excludes abortion coverage, and Ms. Cornell cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what she regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

85.    Ms. Cornell also wants to obtain health insurance that excludes abortion coverage for the employees of Illinois Right to Life. But Illinois's compulsory abortion-coverage laws make it impossible for Ms. Cornell to obtain state-regulated health

insurance that excludes abortion coverage, and Ms. Cornell cannot arrange for Illinois Right to Life to purchase or provide a state-regulated health-insurance policy for its employees without becoming complicit in what she regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958.

86.   These injuries are fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### J.    Ann Scheidler

87.   Plaintiff Ann Scheidler is an Illinois resident. Ms. Scheidler serves as Executive Director of the Pro Life Action League. As Executive Director, Ms. Scheidler is responsible for obtaining health insurance for the employees of the Pro Life Action League.

88.   Ms. Scheidler is a Christian. Ms. Scheidler also opposes abortion. Ms. Scheidler's opposition to abortion is rooted in her sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Ms. Scheidler also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

89.   Ms. Scheidler is over 65 and has health insurance through Medicare. But Ms. Scheidler wants to obtain health insurance that excludes abortion coverage for

the employees of the Pro Life Action League. But Illinois's compulsory abortion-coverage laws make it impossible for Ms. Scheidler to obtain state-regulated health insurance that excludes abortion coverage, and Ms. Scheidler cannot arrange for the Pro Life Action League to purchase or provide a state-regulated health-insurance policy for its employees without becoming complicit in what she regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958.

90. This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### K.     Eric Scheidler

91. Plaintiff Eric Scheidler is an Illinois resident employed by the Pro Life Action League.

92. Mr. Scheidler is a Christian. Mr. Scheidler also opposes abortion. Mr. Scheidler's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Scheidler also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

93. Mr. Scheidler wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Scheidler

to purchase state-regulated health insurance that excludes abortion coverage, and Mr. Scheidler cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

94.    This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### L.    Matthew Yonke

95.    Plaintiff Matthew Yonke is an Illinois resident employed by the Pro Life Action League.

96.    Mr. Yonke is a Christian. Mr. Yonke also opposes abortion. Mr. Yonke's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Yonke also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

97.    Mr. Yonke wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Yonke to purchase state-regulated health insurance that excludes abortion coverage, and Mr.

Yonke cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710.

98.   This injury is fairly traceable to the defendants' enforcement of Illinois's compulsory abortion-coverage laws. And this injury will be redressed by the requested relief, which will enjoin the defendants from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to: (1) Require state-regulated insurance companies to offer abortion-free health-insurance policies to employers and individuals; and (2) Ensure that none of the premiums collected from those abortion-free state-regulated health-insurance policies are used to directly or indirectly subsidize abortion or abortion coverage in any way.

### Claim No. 1: The Defendants' Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Abridges The Free Exercise Of Religion, In Violation Of The First And Fourteenth Amendments

99.   The defendants' enforcement of Illinois's compulsory abortion-law coverage laws violates the each of the plaintiffs' constitutional right to freely exercise their religion. U.S. Const. amend. XIV.

100. Neither 215 ILCS 5/356z.4a nor 215 ILCS 5/356z.60 qualifies as a neutral and generally applicable law under *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990).

101. Both 215 ILCS 5/356z.4a, which compels private health-insurance policies to cover elective abortions, and 215 ILCS 5/356z.60, which compels private health-insurance policies to cover abortion-inducing drugs without cost-sharing, provide an exemption for any "multistate plan that does not provide coverage for abortion." *See* 215 ILCS 5/356z.4a(d); 215 ILCS 5/356z.60(f).

102. 215 ILCS 5/356z.4a also allows (but does not require) the Department of Insurance to grant individualized exemptions if the Department concludes that the enforcement of 215 ILCS 5/356z.4a "may adversely affect the allocation of federal funds to this State":

> If the Department concludes that enforcement of this Section may adversely affect the allocation of federal funds to this State, the Department may grant an exemption to the requirements, but only to the minimum extent necessary to ensure the continued receipt of federal funds.

215 ILCS 5/356z.4a(e). 215 ILCS 5/356z.60 contains a similar provision:

> If the Department concludes that enforcement of any coverage requirement of this Section for abortifacients may adversely affect the allocation of federal funds to this State, the Department may grant an exemption to that requirement, but only to the minimum extent necessary to ensure the continued receipt of federal funds.

215 ILCS 5/356z.60(g). The allowance for these discretionary, individualized exemptions defeats any claim that 215 ILCS 5/356z.4a or 215 ILCS 5/356z.60 is "generally applicable" under *Smith. See Fulton v. City of Philadelphia*, 593 U.S. 522, 533–34 (2021).

103. 215 ILCS 5/356z.60 also provides an exception to its no-cost-sharing rule by exempting high-deductible plans if (and only if) the no-cost-sharing arrangement would render that high-deductible plan ineligible for a health savings account under 27 U.S.C. § 223:

> Except as otherwise provided in this Section, a policy subject to this Section shall not impose a deductible, coinsurance, copayment, or any other cost-sharing requirement on the coverage provided. The provisions of this subsection do not apply to coverage of procedures to the extent such coverage would disqualify a high-deductible health plan from eligibility for a health savings account pursuant to the federal Internal Revenue Code, 26 U.S.C. 223.

215 ILCS 5/356z.60(d).

104. Finally, both 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 provide exemptions for grandfathered health-insurance policies that were issued, amended, delivered, or renewed in Illinois before a certain date. *See* 215 ILCS 5/356z.4a(a) (applying only to health-insurance policies "issued, amended, delivered, or renewed in this State after the effective date of this amendatory Act of the 101st General Assembly unless the policy provides a covered person with coverage for abortion"); 215 ILCS 5/356z.60(b) (applying only to health-insurance policies "amended, delivered, issued, or renewed in this State on or after January 1, 2024").

105. The availability of these individualized exemptions in 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 defeats any claim that the laws are "generally applicable" under *Smith. See Fulton*, 593 U.S. at 533–34 ("'[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of "religious hardship" without compelling reason.'" (quoting *Smith*, 494 U.S. at 884)).

106. *Smith* is inapplicable to this lawsuit for an additional reason: Several of the plaintiffs are asserting a hybrid-rights claim, as they allege that the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates not only their rights under the Free Exercise Clause but also their right to expressive association under the First Amendment. *See infra* at ¶¶ 110–111; *Smith*, 494 U.S. at 881 ("[D]ecisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections . . . . [I]t is easy to envision a case in which a challenge on freedom of association grounds would likewise be reinforced by Free Exercise Clause concerns"); *Fulton*, 593 U.S. at 598–600 (Alito, J., concurring) ("[M]any claims for religious exemptions can easily be understood as hybrid free-exercise/free-speech claims."). The plaintiffs are also alleging that 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 are preempted by numerous federal statutes. *See infra* at ¶¶ 113–122. So the plaintiffs' free-exercise

challenge to the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 triggers strict scrutiny rather than the *per se* legality rule of *Smith.*

107. The defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 substantially burdens the plaintiffs' free exercise of religion. Each of these statutes prevents the plaintiffs from obtaining or purchasing health insurance for themselves or their employees unless they pay for other people's abortions and become complicit in the provision of elective abortions and abortion-inducing drugs. That imposes a "substantial burden" of the plaintiffs' exercise of their religious faith. *See Hobby Lobby*, 573 U.S. at 725; *Wheaton*, 573 U.S. 958; *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 681 (2020) (courts "must accept the sincerely held complicity-based objections of religious entities.").

108. The defendants must therefore prove that their refusal to provide religious exceptions or accommodations in 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is the "least restrictive means" of advancing a "compelling governmental interest." *See Fulton*, 593 U.S. at 541 ("The question, then, is not whether the City has a compelling interest in enforcing its non-discrimination policies generally, but whether it has such an interest in denying an exception to CSS."). The defendants cannot make this showing. There is no compelling governmental interest in forcing religious objectors (or anyone else) to pay for other people's abortions. And even if the defendants wanted to assert a "compelling governmental interest" in making elective abortions available at no charge to any person who wants them, there are ways to accomplish that goal without forcing religious objectors to choose between paying for other people's abortions and forgoing health insurance entirely.

109. The free-exercise claim is brought by each of the plaintiffs.

### Claim No. 2: The Defendants' Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Abridges The Right Of Expressive Association, In Violation Of The First And Fourteenth Amendments

110. The defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 further violates the constitutional rights of Students for Life, Pro-Life Action League, and Illinois Right to Life by abridging their First Amendment right of expressive association. *See Boy Scouts v. Dale*, 530 U.S. 640 (2000).

111. Each of the organizational plaintiffs exists to oppose abortion and protect unborn children from murderous acts of violence. They all express anti-abortion messages and associate for the purpose of propagating those anti-abortion messages. Forcing the organizational plaintiffs to pay for abortions as a condition of providing health insurance to their employees affects in a significant way their ability to advocate those viewpoints, because they must either: (1) Refuse to provide health insurance to their employees, which makes it difficult to recruit and retain capable staff members; or (2) Aid and abet the very behaviors that they condemn, which undercuts the credibility of their anti-abortion message and exposes them to charges of hypocrisy. Whatever choice they make will "affect[] in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts*, 530 U.S. at 648.

112. The expressive-association claim is brought only by Students for Life, Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life.

### Claim No. 3: The Defendants' Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Is Preempted By 18 U.S.C. §§ 1461–1462

113. Federal law outlaws and criminalizes each of the following acts:

    a. Knowingly using the mails for the mailing, carriage, or delivery of abortion-related paraphernalia;[1]

---

1. *See* 18 U.S.C. § 1461.

    b.  Knowingly using any express company, common carrier, or interactive computer service for carriage of abortion-related paraphernalia in interstate or foreign commerce;[2] and

    c.  Knowingly taking or receiving abortion-related paraphernalia from an express company, a common carrier, or an interactive computer service.[3]

18 U.S.C. §§ 1461–1462. Every abortion provider in United States is violating these federal criminal prohibitions by obtaining abortion-inducing drugs or abortion-related equipment through the mails or from an express company, common carrier, or interactive computer service. The Biden Administration is refusing to prosecute abortion providers for these crimes, but they are criminal acts nonetheless. *See Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions*, 46 Op. O.L.C. ___ (Dec. 23, 2022).

114. 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 require health insurers and their beneficiaries to aid or abet violations of 18 U.S.C. §§ 1461–1462 by reimbursing abortion providers who obtain abortion-inducing drugs and abortion-related paraphernalia in violation of federal law. Each of these statutes is preempted to the extent it requires coverage of abortions and abortion-inducing drugs from providers who refuse to comply with 18 U.S.C. §§ 1461–1462.

115. The preemption claim under 18 U.S.C. §§ 1461–1462 is brought by each of the plaintiffs.

### Claim No. 4: The Defendants' Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Is Preempted By The Coates–Snowe Amendment, 42 U.S.C. § 238n(a)

116. The defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 also violates the Coates–Snowe amendment, which provides as follows:

---

2. *See* 18 U.S.C. § 1462(a)–(c).

3. *See* 18 U.S.C. § 1462 (last two paragraphs).

> The Federal Government, and any State or local government that receives Federal financial assistance, may not subject any health care entity to discrimination on the basis that—
>
> (1) the entity refuses to undergo training in the performance of induced abortions, to require or provide such training, to perform such abortions, or to provide referrals for such training or such abortions; [or]
>
> (2) the entity refuses to make arrangements for any of the activities specified in paragraph (1);

42 U.S.C. § 238n(a).

117. The state of Illinois is a "State or local government that receives Federal financial assistance" because it receives payments for the federal government as reimbursement for carrying out Medicaid and other "health-related activities." 42 U.S.C. § 238n(c)(1).

118. Illinois is therefore violating 42 U.S.C. § 238n(a) by discriminating against health insurers that refuse to cover elective abortions or abortion-inducing drugs.

119. The preemption claim under 42 U.S.C. § 238n(a) is brought by each of the plaintiffs.

### Claim No. 5: The Defendants' Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Is Preempted By The Weldon Amendment

120. The defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates the Weldon Amendment, which provides as follows:

> None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

Pub. L. 111-8, § 508(d)(1).

121. The state of Illinois is a "State or local government" that receives federal funds because it receives payments for the federal government as reimbursement for carrying out Medicaid and other programs.

122. Illinois is therefore violating 42 U.S.C. § 238n(a) by discriminating against health insurers that refuse to cover elective abortions or abortion-inducing drugs.

123. The preemption claim under the Weldon Amendment is brought by each of the plaintiffs.

## CAUSES OF ACTION

124. The plaintiffs are asserting these claims against the defendants under 42 U.S.C. § 1983, the Declaratory Judgment Act (28 U.S.C. § 2201), and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015), each of which supplies a cause of action for the relief that they are requesting.

## DEMAND FOR RELIEF

125. The plaintiffs respectfully request that the court:

    a.   declare that the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates each of the plaintiffs' constitutional rights under the Free Exercise Clause;

    b.   declare that the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates each of the organizational plaintiffs' constitutional right of expressive association under the First Amendment;

    c.   declare that the defendants' enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is preempted by 18 U.S.C. §§ 1461–1462, the Coates–Snowe amendment (42 U.S.C. § 238n(a)), and the Weldon Amendment;

    d.   permanently enjoin the defendants from enforcing 215 ILCS 5/356z.4a or 215 ILCS 5/356z.60;

e.    enter a permanent injunction that will compel Acting Director Gillespie and her successors to require every state-regulated health-insurance issuer to offer and make available health-insurance policies that exclude abortion coverage to any individual or employer who asks for such a policy, and to ensure that none of the premiums collected from policies that exclude abortion coverage are used to directly or indirectly subsidize elective abortions or the coverage of elective abortions or abortion-inducing drugs in any way;

f.    award the plaintiffs costs and attorneys' fees under 42 U.S.C. § 1988;

g.    grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

Thomas Brejcha
Peter Breen
Thomas More Society
309 West Washington Street, Suite 1250
Chicago, Illinois 60606
(312) 782-1680 (phone)
(312) 782-1887 (fax)
info@thomasmoresociety.org

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Dated: November 20, 2024

*Counsel for Plaintiffs*