**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Students for Life of America, *et al.*, | |
| Plaintiffs, | Case No. 1:24-cv-11928 |
| v. | District Judge Jeffrey I. Cummings |
| | Magistrate Judge Beth W. Jantz |
| Ann Gillespie, Acting Director of the Illinois Department of Insurance; Kwame Raoul, Attorney General of Illinois; and J.B. Pritzker, Governor of Illinois, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)**

KWAME RAOUL
*Attorney General of Illinois*

Elizabeth Morris, ARDC #6297239
Sarah J. Gallo, ARDC #6320644
Alice L. Riechers, ARDC #6272933
Elena S. Meth, ARDC # 6346041
Office of the Illinois Attorney General
Special Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
312-814-3000

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................ 1

BACKGROUND ............................................................................................................................ 1

LEGAL STANDARD ..................................................................................................................... 2

ARGUMENT ................................................................................................................................. 3

I.   The Complaint must be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack
standing. .................................................................................................................................. 3

    A.  Plaintiffs are not directly injured because they are neither regulated by nor subject
to enforcement under the RHA Provisions. ...................................................................... 5

    B.  Plaintiffs' attenuated theory of indirect injury is insufficient to establish standing. .......... 6

        1.  Nothing in the RHA Provisions requires Plaintiffs to purchase insurance with
abortion coverage. ..................................................................................................... 6

        2.  Defendants cannot force non-party insurers to offer products demanded by
Plaintiffs. ................................................................................................................... 8

    C.  Plaintiff SFLA fails to plead associational standing. ....................................................... 10

II.  Claims 3, 4, and 5 should be dismissed under Rule 12(b)(6) because none of the
statutory claims are actionable by Plaintiffs. ....................................................................... 12

    A.  Plaintiffs' statutory provisions do not create private rights of action. ............................. 13

    B.  Plaintiffs' provisions are not otherwise privately enforceable. ........................................ 13

        1.  Plaintiffs cannot use Section 1983 to enforce these statutory provisions because
they do not confer individualized rights. .................................................................. 14

        2.  Neither the Declaratory Judgment Act nor *Ex parte Young* doctrine create a basis
to assert these claims. ................................................................................................ 15

    C.  Plaintiffs' statutory claims also fail as a matter of law. .................................................... 17

III. Claims 1 and 2 must be dismissed pursuant to Rule 12(b)(6) because the RHA
Provisions comply with the First Amendment. ..................................................................... 19

    A.  The Free Exercise claim fails because the RHA Provisions are neutral, generally
applicable insurance regulation supported by a rational basis. ......................................... 19

    B.  The exemptions in the RHA Provisions do not undermine general applicability............. 20

    C.  Organization-Plaintiffs' boot-strapped hybrid-rights claim fails because their
expressive association claim is also deficient. ................................................................. 21

IV. Even if Plaintiffs had standing and stated a viable cause of action, the Governor and
Attorney General must be dismissed under Rule 12(b)(1). ..................................................... 24

CONCLUSION ............................................................................................................................. 25

i

# TABLE OF AUTHORITIES

## Cases

*Abcarian v. McDonald*,
    617 F.3d 931 (7th Cir. 2010) ........................................................ 3

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*,
    929 F.3d 865 (7th Cir. 2019) ...................................................... 14

*Area Transp., Inc. v. Ettinger*,
    219 F.3d 671 (7th Cir. 2000) ...................................................... 10

*Armstrong v. Exceptional Child Ctr.*,
    575 U.S. 320 (2015) ............................................................. 15, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................... 3

*Baskin v. Bogan*,
    12 F. Supp. 3d 1144 (S.D. Ind. Jun. 25, 2014) *aff'd*, 766 F.3d 648 (7th Cir. 2014).............. 24

*Bours v. United States*,
    229 F. 960 (7th Cir. 1915) ......................................................... 17

*Boy Scouts of Am. v. Dale*,
    530 U.S. 640 (2000) ............................................................. 22, 23

*C.L. for Urb. Believers v. City of Chi.*,
    342 F.3d 752 (7th Cir. 2003) ...................................................... 21

*Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*,
    683 F. Supp. 3d 1172 (W.D. Wash. 2023).............................................. 20

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ............................................................... 12

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) ................................................................ 5

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008) ...................................................... 12

*Doe v. Holcomb*,
    883 F.3d 971 (7th Cir. 2018) ................................................. 16, 24, 25

*Eason v. Pritzker*,
    No. 18-CV-2553, 2020 WL 6781794 (N.D. Ill. Nov. 18, 2020) ........................ 24

*Endsley v. City of Chi.*,
    230 F.3d 276 (7th Cir. 2000) ...................................................... 14

*Ex parte Young*,
    209 U.S. 123 (1908)............................................................. 15, 16

*Gonzaga Univ. v. Doe*,
    536 U.S. 273, 283 (2002).......................................................... 14

*Haaland v. Brackeen*,
    599 U.S. 255 (2023)................................................................ 9

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023)............................................................... 14

*Healy v. James*,
    408 U.S. 169 (1972)............................................................... 23

*Hope, Inc. v. DuPage Cnty., Ill.*,
    738 F.2d 797 (7th Cir. 1984) ...................................................................................... 10

*Howe v. Burwell*,
    No. 2:15-CV-6, 2015 WL 4479757 (D. Vt. July 21, 2015) ..................................... 3

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977) ..................................................................................................... 11

*Ill. Bible Colls. Ass'n v. Anderson*,
    870 F.3d 631 (7th Cir. 2017) ........................................................................... 19, 20, 21

*Ill. League of Advocs. for the Developmentally Disabled v. Quinn*,
    No. 13 C 1300, 2013 WL 5548929 (N.D. Ill. Oct 8, 2013) ..................................... 24

*Int'l Union of Operating Engineers v. Daley*,
    983 F.3d 287 (7th Cir. 2020) .................................................................................... 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................ 4, 5, 10, 12

*McDaniel v. Bd. of Educ. of City of Chi.*,
    956 F.Supp. 2d 887 (N.D. Ill. 2013) ........................................................................ 9

*Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*,
    273 F.3d 722 (7th Cir. 2001) .................................................................................... 13

*Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*,
    108 F.4th 1035 (8th Cir. 2024) ................................................................................. 16

*N.Y. State Club Ass'n., Inc. v. City of N.Y.*,
    487 U.S. 1 (1988) ........................................................................................................ 22

*Nat'l Inst. of Fam. & Life Advocs. v. Rauner*,
    No. 16-cv-50310, 2017 WL 11570803 (N.D. Ill. July 19, 2017) ..................... 15, 24

*Newdow v. Roberts*,
    603 F.3d 1002 (D.C. Cir. 2010) ................................................................................ 9

*Or. Right to Life v. Stolfi*,
    No. 6:23-CV-01282-MK, 2024 WL 4345758 (D. Or. Sept. 30, 2024) .............. 20, 21

*Parents Protecting Our Child, UA v. Eau Claire Area Sch. Dist.*,
    95 F.4th 501 (7th Cir. 2024) ...................................................................................... 4

*Pavlock v. Holcomb*,
    35 F.4th 581 (7th Cir. 2022) ...................................................................................... 9

*Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't. of Health*,
    699 F.3d 962 (7th Cir. 2012) ..................................................................................... 16

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
    2 F.4th 1002 (7th Cir. 2021) ........................................................................ 2, 10, 11, 12

*Priests for Life v. U.S. Dep't of Health & Human Servs.*,
    772 F.3d 229 (D.C. Cir. 2014) (vacated and remanded) ....................................... 23

*Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007) ............................................................................. 3, 9

*Rosemond v. United States*,
    572 U.S. 65 (2014) ...................................................................................................... 18

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc. (FAIR),*
 547 U.S. 47 (2006) ............................................................................... 22
*Schilling v. Rogers,*
 363 U.S. 666 (1960) ............................................................................. 15
*Segovia v. United States,*
 880 F.3d 384 (7th Cir. 2018) ................................................................ 10
*Shahi v. U.S. Dep't of State,*
 572 F. Supp. 3d 470 (N.D. Ill. 2021) ..................................................... 9
*Simon v. E. Ky. Welfare Rights Org.,*
 426 U.S. 26 (1976) ............................................................................... 10
*Skelly Oil Co. v. Phillips Petroleum Co.,*
 339 U.S. 667 (1950) ............................................................................. 15
*Swan v. Bd. of Educ. of City of Chi.,*
 956 F. Supp. 2d 913 (N.D. Ill. 2013) ..................................................... 9
*Taylor v. McCament,*
 875 F.3d 849 (7th Cir. 2017) ............................................................. 4, 9
*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
 582 U.S. 449 (2017) ........................................................................ 19, 20
*U.S. Citizens Ass'n v. Sebelius,*
 705 F.3d 588 (6th Cir. 2013) ............................................................ 22-23
*United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.,*
 517 U.S. 544 (1996) ............................................................................. 11
*United States v. Anderson,*
 988 F.3d 420 (7th Cir. 2021) ............................................................. 17-18
*United States v. Greer,*
 467 F.2d 1064 (7th Cir. 1972) .............................................................. 18
*United States v. Indianapolis Baptist Temple,*
 224 F.3d 627 (7th Cir. 2000) ................................................................ 19
*United States v. One Package,*
 86 F.2d 737 (2d Cir. 1936) ................................................................... 17
*United States v. Texas,*
 599 U.S. 670 (2023) ............................................................................. 16
*Warth v. Seldin,*
 422 U.S. 490 (1975) ............................................................................. 10
*Weinstein v. Edgar,*
 826 F.Supp. 1165 (N.D. Ill. 1993) ........................................................ 24
*White v. Olig,*
 56 F.3d 817 (7th Cir. 1995) .................................................................. 14
*Whitmore v. Ark.,*
 495 U.S. 149 (1990) ............................................................................. 12
*Youngs Rubber Corp. v. C.I. Lee & Co.,*
 45 F.2d 103 (2d Cir. 1930) ................................................................... 17

**Statutes**

18 U.S.C. § 2(a) ....................................................................................... 17
18 U.S.C. §§ 1461-62 ............................................................................... 13

iv

26 U.S.C. § 4980H .................................................................................................. 6

29 U.S.C. § 1144(b)(6) ........................................................................................... 7

42 U.S.C. § 238n(a) ......................................................................................... 13, 18

42 U.S.C. § 238n(c)(2) .......................................................................................... 18

42 U.S.C. § 1395ss ................................................................................................. 8

42 U.S.C. § 1983 ................................................................................................... 13

215 ILCS 5/4 ...................................................................................................... 2, 7

215 ILCS 5/5(1) ..................................................................................................... 2

215 ILCS 5/121(3) .................................................................................................. 2

215 ILCS 5/121-1 ................................................................................................... 2

215 ILCS 5/121-2 ................................................................................................... 7

215 ILCS 5/121-2.05 .............................................................................................. 7

215 ILCS 5/121-5 ................................................................................................... 2

215 ILCS 5/121-19 ................................................................................................. 2

215 ILCS 5/123C-1(B), (C) .................................................................................... 7

215 ILCS 5/123C-5(B) ........................................................................................... 7

215 ILCS 5/123C-18 ............................................................................................... 7

215 ILCS 5/123C-20 ............................................................................................... 7

215 ILCS 5/132 .................................................................................................... 25

215 ILCS 5/143 .................................................................................................... 25

215 ILCS 5/143(1) .................................................................................................. 2

215 ILCS 5/355 .................................................................................................... 25

215 ILCS 5/355(b) .................................................................................................. 2

215 ILCS 5/356z.4a ....................................................................................... 1, 20, 21

215 ILCS 5/356z.60 ......................................................................................... 1, 20

215 ILCS 5/370 .................................................................................................. 8, 25

215 ILCS 5/401 .................................................................................................... 25

215 ILCS 5/403A ................................................................................................ 2, 24

215 ILCS 110/3 ...................................................................................................... 2

215 ILCS 110/15 .................................................................................................... 2

215 ILCS 110/28 .................................................................................................... 2

215 ILCS 110/44 .................................................................................................... 2

215 ILCS 125/1-2(7) .............................................................................................. 2

215 ILCS 125/2-1(a) .............................................................................................. 2

215 ILCS 125/4-13 ................................................................................................. 2

215 ILCS 125/5-9 ................................................................................................... 2

215 ILCS 130/1002 ................................................................................................ 2

215 ILCS 130/2001(a) ............................................................................................ 2

215 ILCS 130/3007 ................................................................................................ 2

215 ILCS 130/4009 ................................................................................................ 2

215 ILCS 165/2(b) .................................................................................................. 2

215 ILCS 165/8 ...................................................................................................... 2

215 ILCS 165/13 .................................................................................................... 2

215 ILCS 165/28 ................................................................................................................... 2

775 ILCS 55/1-5 ............................................................................................................ 17, 20

Pub. L. No. 117-103, Div. H, § 507(d), 136 Stat. 49, 496 (2022) ......................................... 13, 18

## INTRODUCTION

Plaintiffs challenge two provisions of the Illinois Insurance Code enacted through the Reproductive Health Act: 215 ILCS 5/356z.4a and 5/356z.60 ("RHA Provisions"). The RHA Provisions require health insurance products that cover pregnancy care and are regulated by Defendant Illinois Department of Insurance ("the Department") to cover abortion care without cost-sharing. 215 ILCS 5/356z.4a; 5/356z.60. The RHA Provisions apply *only* to Department-regulated health insurance products. Plaintiffs are individuals and organizations located in and outside of Illinois seeking to purchase health insurance. They allege that they are injured because they are forced, against their religious beliefs, to purchase Department-regulated health insurance that covers abortion care. But no such mandate exists in Illinois, and health insurance not regulated by the Department is available.

Tellingly, Plaintiffs make almost no allegations about how the RHA Provisions actually work; how the insurance market in Illinois operates; or the Department's function and authority. Plaintiffs' connection to the RHA Provisions is attenuated when placed in the context of Illinois insurance law, and their grievance is a simple policy disagreement not redressable by any court. Plaintiffs therefore do not meet any of the standing requirements and do not state a single claim.

In short, Plaintiffs fail to show that the RHA Provisions can be enforced against them in contravention of their religious beliefs (because they cannot), that the RHA Provisions force them to violate federal laws (because no such laws are being violated), or that the RHA Provisions run afoul of the First Amendment (because they do not). Plaintiffs also improperly name the Governor and the Attorney General as Defendants. For these reasons, the Complaint must be dismissed.

## BACKGROUND

The Department regulates insurance companies and certain types of managed care entities that wish to sell private insurance or managed care policies in Illinois. The Department ensures

1

that insurance and managed care products subject to the Illinois Insurance Code or one of the managed care statutes comply with Illinois law by issuing certificates of authority to entities seeking to sell certain classes of insurance, including health insurance. An insurance company or managed care entity seeking to sell health insurance in Illinois presents the Department with a potential product, which the Department then reviews for compliance with the Illinois Insurance Code, including the RHA Provisions. The Department has the authority to penalize anyone who sells such products without proper authorization from the Department. *See* 215 ILCS 5/4; 5/5(1); 5/121-1; 5/121(3); 5/121-5; 5/121-19; 5/143(1); 5/355(b); 5/403A; 110/3; 110/15; 110/28; 110/44; 125/1-2(7); 125/2-1(a); 125/4-13; 125/5-9; 130/1002; 130/2001(a); 130/3007; 130/4009; 165/2(b); 165/8; 165/13; 165/28.

The Department does not have statutory authority to force insurers to offer health insurance products with specific coverage parameters or penalize insurers for not providing certain products. In Illinois, insurers vie for purchasers' business in an open market. The Department simply plays referee by approving products offered under the Illinois Insurance Code or a managed care statute.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction including for lack of standing. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). A Rule 12(b)(1) challenge to standing can take the form of a "facial attack" "test[ing] whether the allegations, taken as true, support an inference that the elements of standing exist." *Id*. Facial attacks require the Court to "look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* At the pleading stage, courts "presume general allegations include the specific facts supporting the claim"; however, broad unsupported allegations "akin to impermissible speculation rather than permissible presumption . . . 'stop short of the line between possibility and

2

plausibility.'" *Id.* at 1010 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Similarly, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) evaluates a complaint for "facial plausibility." *Iqbal*, 556 U.S. at 678. A complaint may not merely state an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When deciding the sufficiency of a complaint under this standard, the Court must accept all well-pleaded factual allegations as true. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). However, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotations omitted).

## ARGUMENT

## I. The Complaint must be dismissed pursuant to Rule 12(b)(1) because Plaintiffs lack standing.

Plaintiffs base the Complaint on a faulty legal theory: that they are forced to purchase Department-regulated health insurance that does not exempt abortion care. But that allegation is not borne out by the law, so Plaintiffs lack standing to challenge the RHA Provisions. For standing, Plaintiffs plead only that "[e]ach of them is suffering injury in fact, which is . . . likely to be redressed by the requested relief" and then recite their requested relief. Compl. ¶¶19, 26, 53, 57, 61, 66, 71. But "a bald allegation of standing is not enough to survive even a motion to dismiss where neither the factual allegations nor their logic establish redressability." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007); *accord Howe v. Burwell*, No. 2:15-CV-6, 2015 WL 4479757, at *9 (D. Vt. July 21, 2015). Plaintiffs have not made the required showing here. For that reason, the Complaint must be dismissed pursuant to Rule 12(b)(1).

3

To plead Article III standing, Plaintiffs must allege facts showing three requirements: (1) they "have suffered an injury in fact—an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the challenged action of Defendant(s) and [] not the result of independent action by a third party not before the Court;" and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up); *see also Parents Protecting Our Child, UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 505 (7th Cir. 2024); *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing these elements. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof[.]" *Lujan*, 504 U.S. at 561.

Because the RHA Provisions do not apply to any Plaintiffs, they are not injured by them. The impact of the RHA Provisions lands exclusively on non-party insurance providers offering Department-regulated insurance products. But Plaintiffs are not insurance providers—they are prospective insurance purchasers. Nor are Plaintiffs indirectly harmed by the coverage requirements imposed by the RHA Provisions on insurance providers. Nothing in the RHA Provisions requires Plaintiffs to purchase Department-regulated insurance products. Plaintiffs remain free to purchase health insurance products that are not regulated by the Department and, therefore, not subject to the coverage requirements in the RHA Provisions. The existence of alternative insurance options means that the injury Plaintiffs claim—using their premium payments to fund abortion—is not traceable to the RHA Provisions.

Plaintiffs' traceability problem also translates to a redressability problem. Even if Plaintiffs obtained an injunction prohibiting enforcement of the RHA Provisions, their perceived grievances

would not be redressed. Enjoining the RHA Provisions against the Department would only impact how the Department regulates insurance products—but it would not necessarily manifest Plaintiffs' desired insurance product into existence. That ability rests solely with non-party insurers that bring regulated insurance products to market. Plaintiffs' request for relief—which audaciously includes a request for this Court to order the Department to order non-party insurers to offer specific insurance products tailored to Plaintiffs' coverage preferences (*see* Compl. ¶125(e)), reflects the disconnect between the RHA Provisions themselves and Plaintiffs' perceived injury. Because of this disconnect, Plaintiffs have failed to establish redressability.

Failure to adequately plead even one element of Article III standing is grounds for dismissal. 504 U.S. at 561. Moreover, "standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up). Here, Plaintiffs do not adequately plead one element, much less all three, and dismissal is therefore appropriate.

### A.     Plaintiffs are not directly injured because they are neither regulated by nor subject to enforcement under the RHA Provisions.

Plaintiffs cannot establish standing because they are not insurers, and the RHA Provisions only apply to Department-regulated health insurance products offered by insurers. Plaintiffs do not sell insurance products in Illinois. They have not alleged or even implied that they wish to offer insurance products in Illinois that exclude abortion care. Plaintiffs have effectively pled themselves out of court because, by their own admission, they are not personally subject to the RHA Provisions in any way.

Rather, the only injury alleged by Plaintiffs is that they supposedly have no choice but to purchase Department-regulated health insurance that, contrary to their religious beliefs, covers

abortion care.[1] But the RHA Provisions do not apply to individuals or organizations that *purchase* health insurance, rather to those who *sell* Department-regulated insurance. The Department does not and cannot enforce the RHA Provisions against those who purchase insurance, and Plaintiffs do not plead any direct harm that they suffer from the RHA Provisions.

> **B.** **Plaintiffs' attenuated theory of indirect injury is insufficient to establish standing.**

> **1.** **Nothing in the RHA Provisions requires Plaintiffs to purchase insurance with abortion coverage.**

The crux of Plaintiffs' claims appears to be that they suffer an indirect injury, averring that they "must purchase" Department-regulated insurance. Compl. ¶¶55, 59, 64, 69. But because the RHA Provisions do not force Plaintiffs to do anything and are not even enforceable against them, Plaintiffs have not shown that any perceived injury is traceable to the RHA Provisions. Neither the RHA Provisions nor any Illinois law requires Illinois employers, out-of-state employers employing Illinois residents, or individuals—including Plaintiffs—to purchase health insurance regulated by the Department. And the Illinois-based employer-Plaintiffs are not even required to purchase health insurance for their employees at all due to their size. *See* 26 U.S.C. § 4980H.

Plaintiff Students for Life of America ("SFLA"), headquartered in Virginia, separately lacks standing as an employer because Illinois insurance law does not apply to health insurance

---

[1] Individually-named Plaintiffs (Michael Flynn, Kolby Atchison, Jaclyn Cornell, Ann Scheidler, Eric Scheidler, and Matthew Yonke) lack standing for the same reasons as their Plaintiff employers. The Complaint alleges these Plaintiffs assert standing because: (1) they are tasked with procuring health insurance for their employers (Compl. ¶¶72, 75, 77, 80, 82, 85, 87, 89); and/or (2) they will be purchasing Department-regulated health insurance through their employers (*id.* at ¶¶72, 74, 77, 79, 82, 84, 91, 93, 95, 97). Other than Ann Scheidler, who procures insurance for other employees but obtains her own insurance through Medicare (*id.* at ¶89), there is no allegation that any individual-Plaintiff seeks to obtain insurance anywhere except through their employer. Their injury is thus based on the same allegations, and they seek the same relief as, their employers.

products sold to non-Illinois employers. Instead, out-of-state employers purchase it under the law of the state in which they are based, regardless of whether some of their employees live in Illinois. *See* 215 ILCS 5/121-2 and 5/121-2.05. Accordingly, it is implausible that SFLA is forced to buy Illinois-regulated health insurance in the first place. *See* Compl. ¶¶23, 24.

When purchasing health insurance, individuals and organizations freely decide whether to purchase products that are regulated by the Department or look elsewhere. In fact, there are health insurance options not regulated by the Department beyond those cited in the Complaint. For example:

- Illinois-based associations that do not wish or are ineligible to purchase group health insurance from an existing Department-regulated entity can establish a domestic captive insurance company. *See* 215 ILCS 5/123C-1(B), (C); 5/123C-5(B). The health coverage offered to employers through a domestic captive insurance company would be subject to state and federal regulations including ERISA and the ACA. Captive insurance companies offer flexibility in designing care and coverage because they are exempt from all Illinois health benefit mandates and other insurance requirements, including the RHA Provisions. *See* 215 ILCS 5/123C-18; 5/123C-20.

- An employer can also join an association sited in a different state. Its employees' coverage under that plan would then be subject to a different state's insurance laws if the plan is fully-insured, or if the other state has enacted laws governing self-insured multiple-employer welfare arrangements, but the coverage would not be subject to Illinois laws like the RHA Provisions. 29 U.S.C. § 1144(b)(6) *with* 215 ILCS 5/121-2.05.[2]

By contrast, the Complaint does not provide any law or facts to support the bare allegations that Plaintiffs "must purchase health-insurance policies from state-regulated insurance companies in Illinois." ¶¶51, 55, 59, 64, 69. That is because Plaintiffs cannot sustain such an allegation when nothing in Illinois law corroborates that assertion. Any injury Plaintiffs claim to suffer therefore

---

[2] Plaintiffs could also join a health care sharing ministry. A health care sharing ministry is not insurance in the traditional sense but a way to defray and spread healthcare costs among its members. *See* 215 ILCS 5/4 Class 1(b) (defining "arrangements between a religious organization and the organization's members or participants").

cannot be traceable to Defendants.

### 2. Defendants cannot force non-party insurers to offer products demanded by Plaintiffs.

Fundamentally, Plaintiffs desire a Department-regulated health insurance product that does not cover abortion care. But achieving an injunction against Defendants would not make such a product available to them. Plaintiffs request that the Court:

> enter a permanent injunction that will compel Acting Director Gillespie and her successors to require every state-regulated health-insurance issuer to offer and make available health-insurance policies that exclude abortion coverage to any individual or employer who asks for such a policy, and to ensure that none of the premiums collected from policies that exclude abortion coverage are used to directly or indirectly subsidize elective abortions or the coverage of elective abortions or abortion-inducing drugs in any way . . .

Compl. ¶125(e). Yet the Department has no statutory authority to force non-party insurance companies to do either of these things. The Department simply ensures that health insurance products presented by insurance companies comply with existing Illinois insurance laws. Those laws authorize the Department to enforce statutory requirements that specify health care services to be covered by health insurance or managed care plans. *See, e.g.*, 215 ILCS 5/370.

No Illinois law authorizes the Department to require that any specific health care service be excluded from such insurance or plans.[3] And an injunction cannot legislate new requirements for Department-regulated insurance companies or require them to offer products that exclude specific care from coverage, as Plaintiffs request. *See Taylor*, 875 F.3d at 855 (no standing when

---

[3] The Department does enforce a national standardization of benefits for Medicare supplement insurance as required by State and federal law, so Medicare supplement insurance benefits are identical across insurance companies, and some benefits cannot be included even if an insurance company would like to include them. 42 U.S.C. 1395ss; 50 Ill. Adm. Code 2008. Even under those laws, the Department does not have authority to require Illinois insurance companies to exclude coverage for any health care service provided in the national models for the standardized plans. None of those laws apply to the types of health insurance products at issue in this action.

"only Congress can provide the relief [plaintiffs] seek"); *Newdow v. Roberts*, 603 F.3d 1002, 1011 (D.C. Cir. 2010) ("legislation . . . [is] not within the power of the courts."); *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). That is the job of the General Assembly, not the Department or the Court.

If, as here, "a defendant does not have the authority to carry out the injunction, a plaintiff's claim for injunctive relief must be dismissed because the Court cannot enjoin a defendant to act in any way that is beyond the defendant's authority in the first place." *Swan v. Bd. of Educ. of City of Chi.*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013) (citation omitted) (dismissing non-redressable claims for lack of standing); *see also McDaniel v. Bd. of Educ. of City of Chi.*, 956 F. Supp. 2d 887, 893 (N.D. Ill. 2013) (same); *Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th Cir. 2022) (no state defendant had power to confer requested relief: "no injunction we enter can fix that problem"); *Taylor*, 875 F.3d at 854-55 (executive agency lacked statutory authority to grant the relief sought); *Shahi v. U.S. Dep't of State*, 572 F. Supp. 3d 470, 477-78 (N.D. Ill. 2021); *Newdow*, 603 F.3d at 1012.

Importantly, even if Plaintiffs can successfully request to "permanently enjoin the defendants from enforcing" the RHA Provisions (Compl. ¶125(d)), such an injunction would not redress Plaintiffs' injuries. An injunction alone would not necessarily translate to Department-regulated insurance products that exclude abortion care. Non-party insurance companies—not the Department—make those decisions based on the insurance market and other business factors. Redressability cannot be satisfied "whenever a decision might persuade actors who are not before the court" to act in a certain manner. *Haaland*, 599 U.S. at 293-94. Rather, Plaintiffs must allege facts "sufficient to demonstrate a substantial likelihood that" these third parties "directly injuring [P]laintiff[s] would cease doing so as a result of the relief . . . sought." *Renal Physicians,* 489 F.3d

at 1275; *see also Lujan*, 504 U.S. at 561; *Area Transp., Inc. v. Ettinger*, 219 F.3d 671, 674 (7th Cir. 2000); *Haaland*, 599 U.S. at 293-94.

Here, Plaintiffs do not plead any facts that an injunction would somehow force non-party insurance companies to offer the products Plaintiffs desire. And because Plaintiffs fail to plead that their alleged injury is fairly traceable to the Department's enforcement of the RHA Provisions against non-party insurance companies, they fail to properly allege standing. *See Lujan*, 504 U.S. at 561; *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976) (no standing by alleging that challenged policy "encouraged" third parties to deny services causing injury; "purely speculative whether" third party's actions were fairly traced to defendants); *Int'l Union of Operating Eng'rs, Loc. 139, AFL-CIO v. Daley*, 983 F.3d 287, 295-96 (7th Cir. 2020); *Segovia v. United States*, 880 F.3d 384, 389 (7th Cir. 2018) (same, injury not caused by federal statute that allowed but did not require relief sought; injury instead caused by third-party state's decision); *Area Transp., Inc.*, 219 F.3d at 674 (no causation when speculative and related to actions of third party); *Hope, Inc. v. DuPage Cnty., Ill.*, 738 F.2d 797, 807 (7th Cir. 1984) (no causation when plaintiff alleged no facts showing any third parties were willing to provide requested relief absent government action).

## C. Plaintiff SFLA fails to plead associational standing.[4]

SFLA's assertion of standing as a representative organization for Claims 1 and 2 also fails as the Complaint lacks the necessary information to show that it can sue as an association on behalf

---

[4] Although Plaintiffs pled organizational standing (Compl. ¶¶27-49), within the context of the Complaint, Defendants believe they intended to assert associational standing. While the Seventh Circuit does not appear to distinguish between the two, the Supreme Court does. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975) (distinguishing between "organizational" standing where organization is asserting "injury to itself" as separate from "associational" standing where organization is standing "solely as the representative of its members."). For that reason, and to avoid confusion, Defendants will refer to associational standing in this brief.

of its members, "even without a showing of injury to the association itself." *Prairie Rivers*, 2 F.4th at 1008 (citation omitted). To sustain associational standing, an organization must show that: (1) at least one member of the organization would otherwise have standing to sue in their own right; (2) the interests that the organization seeks to protect are germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the suit. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Such standing is "derivative of—and not independent from—individual standing," and all three elements of Article III standing must be met. *Prairie Rivers*, 2 F.4th at 1008; *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). SFLA fails to make this showing on behalf of any member, however, and the Complaint must be dismissed.

In the Complaint, SFLA anonymously lists six of its members and alleges that they are enrolled at Illinois universities that require them to carry health insurance. Compl. ¶¶28-46. They allege enforcement of the RHA Provisions makes it impossible for these individuals to purchase Department-regulated health insurance that does not cover abortion care. *Id.* at ¶¶28, 31, 34, 37, 40, 43. SFLA's underlying grievances are with the policies of unnamed universities who purportedly require them to purchase insurance, however. Neither Defendants nor the RHA Provisions require or force Individuals A-F to purchase Department-regulated insurance.

Moreover, SFLA's allegations of injury are abstract at best. The Complaint does not provide enough information to discern what insurance options are available to Individuals A-F (through their universities, jobs, parents, or otherwise), and does not show that they are limited to buying Department-regulated insurance. It contains no information about these individuals' identities, ages, the names of their universities, or the specific policies of the universities. The

alleged injuries of Individuals A-E are far too speculative to establish standing.[5] *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013); *Whitmore v. Ark.*, 495 U.S. 149, 157 (1990); *Prairie Rivers*, 2 F.4th at 1009 ("we do not know—based on the face of the complaint—who these [harmed] members are or how exactly the alleged discharge will harm them individually."); *Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008).

Aside from what is pled about Individuals A-F, SFLA generally alleges that it "has other members . . . who are university students in Illinois and are suffering injuries in fact similar or identical to those described above." Compl. ¶46. But an organization must plead, in specific detail, that at least one member would have standing, not merely that *some* members have vague characteristics that could satisfy standing requirements. *See Prairie Rivers*, 2 F.4th at 1008; *Lujan*, 504 U.S. at 563. SFLA fails to do so.

SFLA accordingly lacks associational standing and Claims 1 and 2 brought on that basis should be dismissed.

## II. Claims 3, 4, and 5 should be dismissed under Rule 12(b)(6) because none of the statutory claims are actionable by Plaintiffs.

Plaintiffs allege in Claims 3, 4, and 5 that the RHA Provisions are preempted by scattered provisions of federal law. These claims fail on multiple grounds. Most fundamentally, the statutes Plaintiffs cite do not confer a private right of action or a right enforceable under Section 1983, and no other authority can fill that gap. Even if Plaintiffs could enforce these statutes, they do not preempt the RHA Provisions. Their statutory claims must be dismissed under Rule 12(b)(6).

---

[5] Nor is there any allegation that Individual F has suffered any injury whatsoever, as he currently is enrolled in his parents' plan, but speculates that he might want to buy insurance in Illinois someday. Compl. ¶43.

**A.      Plaintiffs' statutory provisions do not create private rights of action.**

Plaintiffs cannot enforce federal law simply by pointing to it. Rather, "[a] private right of action to enforce federal law must be created by Congress." *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 729 (7th Cir. 2001). Here, none of Plaintiffs' statutory provisions creates a private right of action, as Plaintiffs concede. Compl. ¶124 (citing other causes of action).

In Claim 3, Plaintiffs seek relief under federal criminal laws enacted in 1873 known as the Comstock Act. *Id.* at ¶¶113-15. The Comstock Act prohibits the import, interstate distribution, or mailing of "obscene materials," including "[e]very article or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use." 18 U.S.C. §§ 1461-62. But the Act is enforced by the U.S. Department of Justice—not private plaintiffs.

The Coats-Snowe and Weldon Amendments—the bases for Claims 4 and 5—are provisions limiting dispersal of federal funds. The Coats-Snowe Amendment prohibits "any State or local government that receives Federal financial assistance" from discriminating against a health care entity based on refusal to provide abortion care. 42 U.S.C. § 238n(a). Likewise, the Weldon Amendment is an appropriations rider that prohibits distribution of federal funds to government entities that discriminate against a health care entity based on refusal to provide abortion care. *See* Pub. L. No. 117-103, Div. H, § 507(d), 136 Stat. 49, 496 (2022). Neither of these appropriations provisions contain any hint of a private right of action.

**B.      Plaintiffs' provisions are not otherwise privately enforceable.**

Plaintiffs instead appear to believe that 42 U.S.C. § 1983, the Declaratory Judgment Act, and the doctrine of *Ex parte Young* allow them to invoke these statutory provisions. Compl. ¶124. But none of these authorities permit Plaintiffs to bring suit.

### 1. Plaintiffs cannot use Section 1983 to enforce these statutory provisions because they do not confer individualized rights.

First, Section 1983 does not permit Plaintiffs to enforce these statutory provisions. Section 1983 creates a private right of action against state officials who have violated rights protected by the Constitution or federal statute. *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995). A plaintiff that seeks to enforce a federal law under Section 1983 must show, using "traditional tools of statutory construction," that "Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 285-86 (2002)). The plaintiff must show that "'Congress intended to create a federal right' for the identified class, not merely that [it falls] 'within the general zone of interest that the statute is intended to protect.'" *Id.* (quoting *Gonzaga*, 536 U.S. at 283). As the Supreme Court explained last year, that test is satisfied "where the provision in question is phrased in terms of the persons benefited and contains rights-creating, individual-centric language," but not where the provision contains "no rights-creating language," has "an aggregate, not individual, focus," or operates "primarily to direct the Federal Government's distribution of public funds." *Id.* at 183-84 (cleaned up).

None of Plaintiffs' cited statutory provisions establishes a right enforceable under Section 1983. The Comstock Act is a federal criminal statute. It is not a source of an enforceable individual right, nor does it unambiguously confer a right on any party. Plaintiffs identify no case that has ever permitted a private party to enforce a criminal statute under Section 1983. The Coats-Snowe and Weldon Amendments, for their part, are paradigmatic examples of provisions that operate "primarily to direct the Federal Government's distribution of public funds." *Id.*; *see Endsley v. City of Chi.*, 230 F.3d 276, 281 (7th Cir. 2000) (existence of "limitations on use of" federal funds does not mean "that Congress intended to open the door to private enforcement of them"); *Nat'l*

*Inst. of Fam. & Life Advocs. v. Rauner*, No. 16-cv-50310, 2017 WL 11570803, at *3 (N.D. Ill. July 19, 2017) (granting motion to dismiss Coats-Snowe Amendment claim on this ground). These statutory provisions do not confer any rights on anyone, much less on Plaintiffs, and so cannot be enforced under Section 1983.

### 2. Neither the Declaratory Judgment Act nor *Ex parte Young* doctrine create a basis to assert these claims.

Plaintiffs also appear to believe that the Declaratory Judgment Act and *Ex parte Young* doctrine permit them to assert their statutory claims (Compl. ¶124), but they are incorrect.

The Declaratory Judgment Act "is procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), and does not create a cause of action. Instead, a plaintiff seeking relief under the Act must separately show "the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *accord Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019). Plaintiffs cannot do so here, as discussed, and so the Declaratory Judgment Act is of no help to them.

Plaintiffs also cannot pursue their statutory claims through equitable cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908). That doctrine allows a court, "in some circumstances," where "an individual claims federal law immunizes him from state regulation," to "grant injunctive relief against state officers who are violating, or planning to violate, federal law." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326-27 (2015). It does not apply to Plaintiffs' statutory claims for multiple independent reasons.

First, Plaintiffs cannot rely on *Ex parte Young* because the Department is not threatening to enforce the RHA Provisions against them—nor will it ever, because Plaintiffs are not insurers and are not subject to the Department's authority. *Ex parte Young* allows "the pre-emptive assertion in equity of a defense that would otherwise have been available in the State's enforcement

15

proceedings at law," and therefore is available only where a State "is threatening [the plaintiff] with an enforcement action or otherwise trying to regulate its behavior through an action at law." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't. of Health*, 699 F.3d 962, 983 (7th Cir. 2012) (cleaned up). It allows a plaintiff to enjoin state officials "who threaten and are about to commence proceedings" against him or her. *Young*, 209 U.S. at 156; *accord Doe v. Holcomb*, 883 F.3d 971, 977 (7th Cir. 2018) (*Young* unavailable because state officer "ha[d] not threatened to do anything" to plaintiff); *Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1037 (8th Cir. 2024) (*Young* applies only "to officials who threaten and are about to commence civil or criminal proceedings to enforce unconstitutional policies"). Here, Plaintiffs face no imminent threat that the Department will enforce the RHA Provisions against them. Indeed, because the Department has power only over insurers, not private parties, there can be no "threat[] . . . [of] an enforcement action," *Planned Parenthood*, 699 F.3d at 983, against Plaintiffs at all. *Ex parte Young* is inapplicable here.

Plaintiffs' reliance on *Ex parte Young* fails for a separate reason, which is that each of the statutory provisions on which they rely contains an exclusive remedial scheme that precludes private enforcement. Congress can implicitly foreclose reliance on *Ex parte Young* by providing an exclusive remedial scheme. *See Armstrong*, 575 U.S. at 328 ("[T]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." (cleaned up)). The Comstock Act, as a criminal statute, is subject to the exclusive enforcement authority of the federal Executive Branch. *See, e.g.*, *United States v. Texas*, 599 U.S. 670, 678-79 (2023). And both the Coats-Snowe and Weldon Amendments contemplate withholding of funding from noncompliant state or local government recipients as the method of ensuring compliance. Because Congress has created exclusive enforcement regimes for each of the statutes Plaintiffs

cite, they cannot bring their statutory claims pursuant to *Ex parte Young*.

### C. Plaintiffs' statutory claims also fail as a matter of law.

Finally, to the extent Plaintiffs' statutory claims can be interpreted on their merits, they must be dismissed under Rule 12(b)(6).

*Comstock Act.* Plaintiffs' Comstock Act claim is badly flawed and must be dismissed. First, Plaintiffs misread the scope of the Act. Contrary to Plaintiffs' view that "[e]very abortion provider in the United States is violating" the Act (Compl. ¶ 113), the Act does not supplant state law regulating abortion care or categorically prohibit obtaining abortion products. The Comstock Act only bans the conveyance of items used in abortion care if the sender intends the items to be used unlawfully under the law of the receiving state. *See*, *e.g.*, *United States v. One Package*, 86 F.2d 737, 738 (2d Cir. 1936) (relying on New York law to conclude ultimate use of contraceptive was legal and therefore did not violate Section 305(a) of Tariff Act of 1930, derived from Comstock Act); *Youngs Rubber Corp. v. C.I. Lee & Co.*, 45 F.2d 103, 107 (2d Cir. 1930) (same, in dicta); *Bours v. United States*, 229 F. 960, 965 (7th Cir. 1915) (reversing conviction of physician when indictment failed to delineate whether potential abortion would be performed as "duty of any reputable physician to perform the act"). In Illinois, abortion is not only legal, but statutorily protected. 775 ILCS 55/1-5. So Plaintiffs are wrong at the outset that any health care provider that operates in or sends abortion products to Illinois is engaging in conduct implicating the Act at all.

And Plaintiffs' specific preemption claim is even more attenuated. Plaintiffs, after all, are not abortion providers; they claim that purchasing Department-regulated insurance forces them to aid and abet violations of the Comstock Act when other insurance consumers use abortion medication and are reimbursed through their insurance. Compl. ¶114. But that novel theory is wrong on its face. "A person who 'aids, abets, counsels, commands, induces or procures' the

commission of a federal offense 'is punishable as a principal.'" *United States v. Anderson*, 988 F.3d 420, 424 (7th Cir. 2021) (citing 18 U.S.C. § 2(a)). To be liable, "a person must (1) take an affirmative act in furtherance of the offense with (2) the intent of facilitating the offense's commission." *Id.* (citing *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). Where the actions of the accused and the ultimate crime for which they are charged is attenuated, an aiding-and-abetting theory fails "absent 'some showing of specific intent to aid in, or specific knowledge of, the crime charged.'" *Id.* at 425 (citing *United States v. Greer*, 467 F.2d 1064, 1069 (7th Cir. 1972)).

Plaintiffs plead no facts that suggest they specifically intend to further a criminal venture— or frankly, that they intend to support abortion in any capacity. It is far too attenuated to claim that Plaintiffs could be held criminally liable for actions by strangers who happen to have the same insurer. Given that disavowal, there can be no aiding-and-abetting liability here, and therefore no preemption.

*Funding statutes.* Plaintiffs' Weldon and Coats-Snowe Amendment claims also fail for multiple reasons. For one, these statutes do not apply to the RHA Provisions at all. Both statutes bar state and local governments that receive certain federal funds from subjecting any "health care entity" to discrimination on certain abortion-related bases. 42 U.S.C. § 238n(a); Pub. L. No. 117-103, Div. H, § 507(d), 136 Stat. 49, 496 (2022). However, insurance plan beneficiaries and purchasers like Plaintiffs are not protected "health care entities" as defined in these statutes.[6] The Coats-Snowe and Weldon Amendments do not speak to state law governing health insurers, and

---

[6] *See* 42 U.S.C. § 238n(c)(2) ("'health care entity' includes an individual physician, a postgraduate physician training program, and a participant in a program of training in the health professions"); Pub. L. No. 117-103, Div. H, § 507(d)(2), 136 Stat. 49, 496 (2022) ("'health care entity' includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.").

thus do not apply to the RHA Provisions (which regulate insurers, not physicians).

Regardless, both claims fail to the extent they rest on a perceived conflict between the RHA Provisions and the funding statutes. To the extent any private party could sue to enforce Weldon, it would be insurers that wish to decline to cover abortion care, not insureds like Plaintiffs.

## III.   Claims 1 and 2 must be dismissed pursuant to Rule 12(b)(6) because the RHA Provisions comply with the First Amendment.

### A.   The Free Exercise claim fails because the RHA Provisions are neutral, generally applicable insurance regulation supported by a rational basis.

The Court should dismiss Plaintiffs' Free Exercise claim (Claim 1) because the RHA Provisions are neutral, generally applicable, and rationally related to a valid government purpose. *See Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017), *as amended* (Oct. 5, 2017) (quotation omitted). Plaintiffs do not, and cannot, plead any set of facts that would show otherwise.

"The Free Exercise Clause protects against laws that impose special disabilities on the basis of religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 461 (2017) (cleaned up). "[N]eutral laws of general application that burden religious practices do not run afoul of the Free Exercise Clause." *United States v. Indianapolis Baptist Temple*, 224 F.3d 627, 629 (7th Cir. 2000). "[A] neutral law of general applicability is constitutional if it is supported by a rational basis." *Ill. Bible Colls. Ass'n*, 870 F.3d at 639.

The RHA Provisions meet all of these criteria. First, they are neutral because they "do not target religion or religious institutions" and the Complaint contains "no allegation of an underlying religious animus." *Id.* (affirming grant of motion to dismiss Free Exercise claim). Second, they are generally applicable because they apply equally to all Department-regulated health insurance products regardless of the religious beliefs of the employers or individuals who purchase them.

19

*See id.* Third, they are rationally related to the valid government purpose of "protect[ing]

individual decision-making in the area of reproductive health and [] support[ing] access to the full

scope of quality reproductive health care for all in our State." 775 ILCS 55/1-5. This is undoubtedly

a legitimate government purpose. *See Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*,

683 F. Supp. 3d 1172, 1187 (W.D. Wash. 2023) (finding "promoting gender equity, promoting

economic success of women, improving women's health, and protecting privacy" are "all

legitimate governmental purposes"); *see also Or. Right to Life v. Stolfi*, --- F.Supp.3d ----, No.

6:23-CV-01282-MK, 2024 WL 4345758, at *8 (D. Or. Sept. 30, 2024) (court had "no trouble

concluding" that "access to comprehensive reproductive health care" is "legitimate governmental

purpose"). Plaintiffs do not, and cannot, allege otherwise.

Finally, the Complaint does not allege that the RHA Provisions "impose[] a special

disability on religions or religious beliefs and practices." *Ill. Bible Colls. Ass'n*, 870 F.3d at 639;

*see also Trinity*, 582 U.S. at 461. Nor is such a special disability evident in their text.

## B. The exemptions in the RHA Provisions do not undermine general applicability.

Plaintiffs allege that exemptions in the RHA Provisions ensuring compliance with federal

laws defeat general applicability. Compl. ¶¶101-03, 105. Their argument fails as a matter of law.

The exemptions are for when "'necessary to ensure the continued receipt of federal funds'" and

when, "pursuant to 42 U.S.C. 18054(a)(6), [] a multistate plan that does not provide coverage for

abortion." 215 ILCS 5/356z.4a(d)-(e), 5/356z.60(f). RHA Provision 5/356z.60(d) also has an

exemption for when coverage for abortion care without cost-sharing "would disqualify a high-

deductible health plan from eligibility for a health savings account pursuant to the federal Internal

Revenue Code, 26 U.S.C. 223." As case law has made clear, "ensuring compliance with federal

law" through these exemptions "does not defeat general applicability." *Cedar Park*, 683 F. Supp.

3d at 1186 (rejecting Free Exercise challenge to law requiring state-regulated insurance cover abortion); *see also Or. Right to Life,* 2024 WL 4345758, at *7-8 (same); *Ill. Bible Colls.*, 870 F.3d at 640-41.

Plaintiffs also claim that the RHA Provisions contain exemptions for grandfathered health insurance policies. Compl. ¶104. However, these are not exemptions to the RHA Provisions, but rather a specification that the RHA Provisions would take effect at the start of a policy period or if the policy were amended for any reason. Thus, one RHA Provision went into effect for any Department-regulated policies "amended, delivered, issued, or renewed . . . on or after January 1, 2024" (215 ILCS 5/356z.60(b)) and the other for those "issued, amended, delivered, or renewed . . . after the effective date of this amendatory Act of the 101st General Assembly." 215 ILCS 5/356z.4a(a). Any health insurance policies amended or renewed on or after the effective dates of the RHA Provisions became subject to those provisions regardless of whether they were a grandfathered health plan. Simply put, the "exemptions" cited in the Complaint are not exemptions at all.

### C. Organization-Plaintiffs' boot-strapped hybrid-rights claim fails because their expressive association claim is also deficient.

Organization-Plaintiffs[7] attempt to salvage their defective Free Exercise claim by alleging that it is "a hybrid-rights claim." They allege that thanks to their accompanying First Amendment expressive association claim (Claim 2), the RHA Provisions automatically are subject to strict scrutiny. Compl. ¶¶106, 110-12. But "a plaintiff does not allege a hybrid rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right." *C.L. for Urb. Believers v. City of Chi.*, 342

---

[7] The expressive association claim is brought only by organization-Plaintiffs and not by individual-Plaintiffs. Compl. ¶¶110-12.

F.3d 752, 765 (7th Cir. 2003) (cleaned up). And organization-Plaintiffs fail to state an expressive association claim upon which relief can be granted, thus their expressive association claim must also be dismissed.

A law may violate an organization's expressive association right where it directly interferes with membership decisions or where it indirectly affects the group's composition by making membership "less attractive." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc. (FAIR)*, 547 U.S. 47, 69 (2006). "The forced inclusion of an unwanted *person* in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (citing *N.Y. State Club Ass'n., Inc. v. City of N.Y.*, 487 U.S. 1, 13 (1988), emphasis added). Laws compelling associations to interact with "outsiders" but do not force those associations to "accept members [they] do[] not desire" do not violate the right to expressive association. *FAIR*, 547 U.S. at 69-70 (law requiring universities to grant military recruiters access to campuses did not violate First Amendment as schools were free to express disapproval of military policy, faculty and students were free to avoid recruiters, and no one would reasonably believe recruiters' presence reflected schools' beliefs).

The Complaint lacks any allegations supporting a violation of the right to expressive association. It merely alleges that the RHA Provisions force organization-Plaintiffs to choose between: (1) not purchasing health insurance at all, making them less attractive to potential employees; or (2) purchasing insurance that "aid[s] and abet[s] the very behaviors that they condemn, [] undercut[ting] the credibility of their anti-abortion messag[ing]" and exposing them to "charges of hypocrisy." Compl. ¶111. But because organization-Plaintiffs are not required to purchase Department-regulated health insurance, the ultimatum they describe does not exist. *See,*

22

*e.g.*, *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 600 (6th Cir. 2013).

More fundamentally, choosing an insurance plan is not expressive conduct. While the right to freedom of expressive association protects more than a group's membership decisions, baldly claiming that certain conduct (e.g., purchasing health insurance) is undertaken for expressive purposes does not make it symbolic, protected speech; nor can a speaker "erect a shield" against laws it dislikes simply by asserting that they would impair its message. *Boy Scouts of Am. v. Dale*, 530 U.S. at 653; *see also Healy v. James*, 408 U.S. 169, 180-84 (1972).

Here, organization-Plaintiffs do not and cannot allege how the act of purchasing health insurance for their employees is protected speech, let alone how that action infringes on their expressive membership decisions. The RHA Provisions do not contemplate policyholders' organizational membership choices. It is implausible that potential members would view their compliance with a facially neutral, generally applicable law that does not target their religious beliefs as expressive speech by organization-Plaintiffs themselves. For example, the federal contraceptive mandate requiring insurance to cover contraception does not violate the right to expressive association. Purchasing such insurance does not interfere with the freedom of an association's members to "associate with each other and to promote their religious views on contraception . . . and to voice their disapproval of health-care products and services that they believe to be immoral." *Priests for Life v. U.S. Dep't of Health & Hum. Servs.*, 772 F.3d 229, 270 (D.C. Cir. 2014) (vacated and remanded on other grounds); *see also U.S. Citizens Ass'n*, 705 F.3d at 600 (individual mandate does not "impair plaintiffs' ability to engage in expressive conduct" and "nothing about" such laws "affects the composition of the group by making group membership less desirable." (citation omitted)).

Thus, the Court should dismiss Claim 2 under Rule 12(b)(6) thereby disallowing a hybrid-

rights claim with Claim 1.

**IV.    Even if Plaintiffs had standing and stated a viable cause of action, the Governor and Attorney General must be dismissed under Rule 12(b)(1).**

All claims against the Governor and the Attorney General should be dismissed under Rule 12(b)(1) because they are not proper defendants for a challenge to the RHA Provisions.

Plaintiffs sued Governor Pritzker solely in his official capacity. Compl. ¶18. While the Eleventh Amendment allows suit against a state official for injunctive relief, the official must have a sufficiently close connection to the enforcement or implementation of the statute at issue. *See, e.g.*, *Weinstein v. Edgar*, 826 F. Supp. 1165, 1166-67 (N.D. Ill. 1993); *Ill. League of Advocs. for the Developmentally Disabled v. Quinn*, No. 13 C 1300, 2013 WL 5548929, at *4 (N.D. Ill. Oct 8, 2013); *Nat'l Inst. of Family & Life Advocates v. Rauner*, No. 16 C 50310, 2017 WL 11570803, at *4 (N.D. Ill. July 19, 2017).

The Governor's general obligations to enforce the law are insufficient to establish this close connection. *See Holcomb*, 883 F.3d at 976 ("mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute" (citation omitted)). Plaintiffs acknowledge that the Governor has no enforcement power over the RHA Provisions. *See* Compl. ¶18. Instead, Plaintiffs are impermissibly trying to achieve "an injunction against the Governor because he's the Governor." *Eason v. Pritzker*, No. 18-CV-2553, 2020 WL 6781794, at *9 (N.D. Ill. Nov. 18, 2020). But proper State defendants are those who "bear 'legal responsibility for the flaws [Plaintiffs] perceive in the system' and not one[s] from whom they 'could not ask anything … that could conceivably help their cause.'" *Baskin v. Bogan*, 12 F. Supp. 3d 1144, 1152 (S.D. Ind. Jun. 25, 2014) *aff'd*, 766 F.3d 648 (7th Cir. 2014) (citation omitted); *see also Nat'l Inst.*, 2017 WL 11570803, at *4; *Holcomb*, 883 F.3d at 976. Governor Pritzker could not conceivably help Plaintiffs' cause of finding health

insurance that does not cover abortion care, and therefore must be dismissed as a Defendant.

Plaintiffs also sued Attorney General Raoul solely in his official capacity. Compl. ¶17. Although the Attorney General may be broadly tasked with enforcing the laws of Illinois, he "cannot be sued simply because of his duty to support the constitutionality of a challenged state statute." *Holcomb*, 883 F.3d at 976 (citation omitted). To overcome the Eleventh Amendment's bar, Plaintiffs must show that Attorney General Raoul plays some role in enforcing, and not merely defending, the RHA Provisions. *See id.* at 976-77. Here, he has no such duty, or even ability, to enforce the RHA Provisions, and should be dismissed from this suit. *See generally* 215 ILCS 5/132; 5/143, 5/355, 5/403A; 5/370; 5/401 (granting Department authority to enforce Illinois insurance laws including RHA Provisions).

## CONCLUSION

For these reasons, the Court should dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

Dated: February 3, 2025

KWAME RAOUL
*Attorney General of Illinois*

*/s/ Elizabeth Morris*
Elizabeth Morris, ARDC #6297239
Sarah J. Gallo, ARDC #6320644
Alice L. Riechers, ARDC #6272933
Elena S. Meth, ARDC # 6346041
Office of the Illinois Attorney General
Special Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
312-814-3000
elizabeth.morris@ilag.gov
sarah.gallo@ilag.gov
alice.riechers@ilag.gov
elena.meth@ilag.gov

*Counsel for Defendants*