UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Students for Life of America; Midwest Bible Church; Pro-Life Action League; Illinois Right to Life; Clapham School; Innovator Capital Management LLC; John Southard; Michael Flynn; Kolby Atchison; Jaclyn Cornell; Ann Scheidler; Eric Scheidler; Matthew Yonke; Erol Sense,**<br><br>Plaintiffs,<br><br>v.<br><br>**Ann Gillespie**, in her official capacity as acting director of the Illinois Department of Insurance,<br><br>Defendant. | Case No. 1:24-cv-11928 |

## FIRST AMENDED COMPLAINT

Illinois law requires health-insurance policies to cover elective abortions on the same terms as they cover pregnancy-related benefits. *See* 215 ILCS 5/356z.4a (attached as Exhibit 1). It also requires health-insurance policies to cover abortion-inducing drugs, and it forbids insurers to impose any cost-sharing arrangements such as co-pays or deductibles on this coverage. *See* 215 ILCS 5/356z.60 (attached as Exhibit 2). These abortion-inducing drugs must be provided free of charge to any beneficiary who demands them, and they are paid for entirely by premiums charged to other beneficiaries.

These compulsory abortion-coverage laws provide no exceptions or accommodations for any employer or individual who objects to abortion on religious or moral grounds, not even for churches. As a result, Illinois residents who oppose abortion

have no way of obtaining state-regulated health insurance that excludes abortion coverage, forcing many of them to choose between paying for other people's elective abortions with their premiums or forgoing health insurance entirely.

Illinois's compulsory abortion-coverage laws abridge the free exercise of religion and other constitutional rights secured by the First and Fourteenth Amendments. They also violate numerous federal statutes, including 18 U.S.C. §§ 1461–1462, the Coates–Snowe amendment (42 U.S.C. § 238n(a)), the Weldon Amendment, and the Religious Freedom Restoration Act. The plaintiffs bring suit to permanently enjoin their enforcement.

## JURISDICTION AND VENUE

1.  The Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.

2.  Venue is proper because one or more of the defendants resides in this judicial district, and a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(1)–(2).

3.  Because the plaintiffs' claims arose in Cook County, the case is properly assigned to the eastern division.

## PARTIES

4.  Plaintiff Students for Life of America (Students for Life) is a 501(c)(3) non-profit corporation organized under the laws of Virginia.

5.  Plaintiff Midwest Bible Church is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

6.  Plaintiff Pro-Life Action League is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

7.  Plaintiff Illinois Right to Life is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

8. Plaintiff Clapham School is a 501(c)(3) non-profit corporation organized under the laws of Illinois.

9. Plaintiff Innovator Capital Management LLC is a for-profit limited liability company organized under the laws of Delaware.

10. Plaintiff John Southard is a citizen and resident of Illinois.

11. Plaintiff Michael Flynn is a citizen and resident of Illinois.

12. Plaintiff Kolby Atchison is a citizen and resident of Illinois.

13. Plaintiff Jaclyn Cornell is a citizen and resident of Illinois.

14. Plaintiff Ann Scheidler is a citizen and resident of Illinois.

15. Plaintiff Eric Scheidler is a citizen and resident of Illinois.

16. Plaintiff Matthew Yonke is a citizen and resident of Illinois.

17. Plaintiff Erol Sense is a citizen and resident of Illinois.

18. Defendant Ann Gillespie is the acting director of the Illinois Department of Insurance. Her offices are at 122 South Michigan Avenue, 19th Floor, Chicago, Illinois 60603, as well as 320 West Washington Street, Springfield, Illinois 62767. Acting Director Gillespie and the Illinois Department of Insurance are charged with enforcing the state's insurance laws, including ILCS 5/356z.4a and 215 ILCS 5/356z.60, as well as regulating private health insurers in Illinois. Acting Director Gillespie is sued in her official capacity.

19. Acting Director Gillespie and the Illinois Department of Insurance are also charged with enforcing 42 U.S.C. § 18023(b)(2), which imposes a segregation-of-funds requirement for any health-insurance plan that covers elective abortion on a state-run exchange. *See* 42 U.S.C. § 18023(b)(2)(E)(1) (attached as Exhibit 3). The law of Illinois vests Acting Director Gillespie and the Department of Insurance with broad and far-reaching authority to enact rules governing the policy provisions offered by state-regulated insurance companies. *See* 215 ILCS 5/4(a) ("The Director may

issue rules that specify prohibited policy provisions, not otherwise specifically prohibited by law, which in the opinion of the Director are unjust, unfair, or unfairly discriminatory to the policyholder, any person insured under the policy, or beneficiary.") (attached as Exhibit 4); *see also* https://www.ilga.gov/commission/jcar/admincode/050/050parts.html (listing all regulations issued by the Illinois Director of Insurance pursuant to its statutory rulemaking authority).

## THE HEALTH-INSURANCE MARKET AND ILLINOIS'S COMPULSORY ABORTION-COVERAGE LAWS

20.   Employers with more than 50 employees are compelled by law to offer health insurance to their employees. *See* 26 U.S.C. §§ 4980H(a), (c)(2). Employers with fewer than 50 employees will often want to offer health insurance to attract employees, even if they are not legally compelled to do so. Employers that do not offer health benefits as part of an employee-compensation package are at a significant competitive disadvantage in recruiting employees compared to employers that provide these benefits.

21.   Large employers have the ability to self-insure or level-fund, which exempts them from state-law abortion-coverage mandates such as 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. It is not feasible, however, for small- or medium-sized employers to self-insure or level-fund, because they cannot afford to bear the risk of a major employee illness that could bankrupt the company.

22.   Individual residents of Illinois and Illinois-based employers cannot purchase health insurance across state lines. They can buy health insurance only in the state where they are located.

23.   So individual residents of Illinois who wish to obtain health insurance and do not work for a self-insured employer have no choice but to purchase a state-regulated health-insurance plan, which is subject to the requirements of Illinois's compulsory abortion-coverage laws. Illinois-based employers that are not large enough to

self-insure or level-fund are in a similar predicament: They must either purchase and provide state-regulated health insurance to their employees, thereby becoming complicit in elective abortions, or else forgo the provision of health insurance.

24.   Federal law requires every health insurer that offers plans on a state-run exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions in any way. *See* 42 U.S.C. § 18023(b) (attached as Exhibit 3). Federal law also directs state health-insurance commissioners to enforce this segregation-of-funds requirement. *See* 42 U.S.C. § 18023(b)(2)(E)(1) ("State health insurance commissioners shall ensure that health plans comply with the segregation requirements in this subsection through the segregation of plan funds in accordance with applicable provisions of generally accepted accounting requirements, circulars on funds management of the Office of Management and Budget, and guidance on accounting of the Government Accountability Office.").

25.   But the Affordable Care Act prohibits 42 U.S.C. § 18023 from preempting state laws that forbid or require insurers to cover abortion. *See* 42 U.S.C. § 18023(c)(1) ("Nothing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions"). So Illinois's compulsory abortion-coverage laws must prevail over 42 U.S.C. § 18023(b)'s protections unless and until the enforcement of those state laws is declared unconstitutional and enjoined.

26.   Before the enactment of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, there were some private insurers in Illinois that offered state-regulated health-insurance plans that excluded or limited coverage for elective abortions. There were also private insurers in Illinois that offered state-regulated health-insurance plans that im-

posed co-pays or other cost-sharing arrangements that required beneficiaries who obtain elective abortions to pay at least some of the costs themselves, rather than imposing all of those costs on other beneficiaries.

27.   But the enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 have eliminated any possibility for individuals or employers in Illinois to obtain a state-regulated health-insurance plan that excludes or limits coverage for elective abortions, forcing them to subsidize and become complicit in elective abortions if they purchase a state-regulated health-insurance plan.

## FACTS RELATED TO STANDING

28.   Each of the plaintiffs is suffering injury in fact, which is traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.

### A.   Students for Life of America

29.   Plaintiff Students for Life of America (Students for Life) is a membership organization that exists to oppose abortion and protect unborn children from violence. It has nearly 80 full-time staff, and comprises 1,400 pro-life student groups at middle schools, high schools, colleges, universities, medical schools, and law schools throughout the country. Students for Life is a Judeo–Christian organization, and its opposition to abortion is based on many reasons, including its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Students for Life also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

30.   Students for Life explains its beliefs regarding abortion on its website:

> We believe that the preborn human being is a person deserving the full legal protection of the law—just like you and I. He or she is a whole, living being who is intrinsically valuable. We believe that size, level of

development, environment, and degree of dependency do not determine someone's personhood. We are all people simply because we are living human beings. We became people the moment we were created-when the father's sperm and mother's ovum united.

Abortion is the greatest genocide that our world and our nation have ever known. We believe that a new generation of pro-life leaders must be educated, trained, and equipped with the tools that they need to abolish abortion once and for all. Our generation is the first since the handing down of the Supreme Court cases *Roe v. Wade* and *Doe v. Bolton*, which legalized abortion on demand in 1973. Our generation is among the first to know that abortion kills a human person. We must continue this momentum to turn the tide in our lifetime, and that starts with you.

https://studentsforlife.org/learn/why-should-you-care (emphasis removed) (last visited on February 24, 2025).

31.  Students for Life has "representational" or "associational" standing because it has members in Illinois who wish to purchase health insurance that excludes or limits coverage of elective abortions. Each of these members would have standing to sue if they had sued as individuals. *See Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181, 199 (2023); *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977).[1]

32.  Individual A is a member of Students for Life of America. He is currently a student at the University of Chicago, a private university in Illinois. The University of Chicago requires all of its students to carry health insurance as a condition of enrollment. But the defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual A to purchase state-regulated health

---

1.  Sometimes the "associational standing" doctrine referred to as "organizational standing," and the Supreme Court's most recent pronouncement on this doctrine used the term "organizational standing" rather than "associational standing." *Students for Fair Admissions*, 600 U.S. at 199. But the defendants (and other cases) prefer the term "associational standing," *see* Defs.' Mot. to Dismiss, ECF No. 16, at 10 n.4, so we will use that nomenclature throughout.

insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

33.    Individual A is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual A also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

34.    Individual A's inability to purchase state-regulated health insurance that excludes or limits abortion coverage inflicts injury in fact. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety v. National Highway Traffic Safety Administration*, 793 F.2d 1322, 1332–34 (D.C. Cir. 1986) (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg, South Carolina v. FERC*, 862 F.3d 1071, 1078 (D.C. Cir. 2017) ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

35.    Individual A has no ability to obtain health insurance apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as Individual A cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Individual A cannot obtain employer-sponsored health insurance because he is a full-time student and does not have a job with health benefits. Individual A cannot obtain health insurance through his parents because they live in a

foreign country and do not have health insurance that meets the University of Chicago's requirements or allows for coverage of an adult child. Individual A also cannot obtain health insurance by establishing a domestic captive insurance company or acquiring insurance through an association health plan or a self-insured multiple-employer welfare arrangement, as these options are viable only for entities seeking group health insurance (such as employers), not for individuals seeking to purchase health insurance on their own. And the University Student Health Insurance Plan offered by the University of Chicago (U-SHIP) covers elective abortions, as required by Illinois law. *See* http://bit.ly/437yyYk [https://perma.cc/Q54U-4JG4]. Individual A is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

36.   Individual B is a member of Students for Life of America. He is currently a student at the University of Chicago, a private university in Illinois. The University of Chicago requires all of its students to carry health insurance as a condition of enrollment. But the defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual B to purchase state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

37.   Individual B is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual B also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

38.   Individual B's inability to purchase state-regulated health insurance that excludes or limits abortion coverage inflicts injury in fact. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits

abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

39.    Individual B has no ability to obtain health insurance apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as Individual B cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Individual B cannot obtain employer-sponsored health insurance because he is a full-time student and does not have a job with health benefits. Individual B cannot obtain health insurance through his parents because they live in a foreign country with single-payer national health insurance. Individual B also cannot obtain health insurance by establishing a domestic captive insurance company or acquiring insurance through an association health plan or a self-insured multiple-employer welfare arrangement, as these options are viable only for entities seeking group health insurance (such as employers), not for individuals seeking to purchase health insurance on their own. And the University Student Health Insurance Plan offered by the University of Chicago (U-SHIP) covers elective abortions, as required by Illinois law. *See* http://bit.ly/437yyYk [https://perma.cc/Q54U-4JG4]. Individual B is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

40.    Individual C is a member of Students for Life of America. He is currently a student at the University of Chicago, a private university in Illinois. The University of

Chicago requires all of its students to carry health insurance as a condition of enroll-ment. But the defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual C to purchase state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

41.    Individual C is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual C also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

42.    Individual C's inability to purchase state-regulated health insurance that ex-cludes or limits abortion coverage inflicts injury in fact. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insur-ance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

43.    Individual C has no ability to obtain health insurance apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as Individual C cannot purchase health insurance across state lines. *See* par-agraph 22, *supra*. Individual C cannot obtain employer-sponsored health insurance because he is a full-time student and does not have a job with health benefits. Indi-vidual C cannot obtain health insurance through his parents because he is over 26

years of age. Individual C also cannot obtain health insurance by establishing a do-
mestic captive insurance company or acquiring insurance through an association
health plan or a self-insured multiple-employer welfare arrangement, as these options
are viable only for entities seeking group health insurance (such as employers), not for
individuals seeking to purchase health insurance on their own. And the University
Student Health Insurance Plan offered by the University of Chicago (U-SHIP) covers
elective abortions, as required by Illinois law. *See* http://bit.ly/437yyYk
[https://perma.cc/Q54U-4JG4]. Individual C is therefore suffering further injury in
fact because the defendant is forcing him to choose between subsidizing other peo-
ple's abortions and withdrawing from the university that he attends.

44. Individual D is a member of Students for Life of America. He is currently a
student at the University of Chicago, a private university in Illinois. The University of
Chicago requires all of its students to carry health insurance as a condition of enroll-
ment. But the defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS
5/356z.60 makes it impossible for Individual D to purchase state-regulated health
insurance unless he enrolls in a policy that forces him to pay for other people's elective
abortions.

45. Individual D is a Christian, and his Christian faith teaches that life begins at
conception and that the taking of an unborn human life through elective abortion is
an act of murder. Individual D also believes, on sincere religious grounds, that paying
health-insurance premiums that are used to subsidize other people's abortions makes
him complicit in the act of abortion, a grave moral evil.

46. Individual D's inability to purchase state-regulated health insurance that ex-
cludes or limits abortion coverage inflicts injury in fact. The enforcement of any law
that restricts in any way the availability of health insurance that excludes or limits
abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insur-
ance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at

1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

47.    Individual D has no ability to obtain health insurance apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as Individual D cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Individual D cannot obtain employer-sponsored health insurance because he is a full-time student and does not have a job with health benefits. Individual D cannot obtain health insurance through his parents because he is over 26 years of age. Individual D also cannot obtain health insurance by establishing a domestic captive insurance company or acquiring insurance through an association health plan or a self-insured multiple-employer welfare arrangement, as these options are viable only for entities seeking group health insurance (such as employers), not for individuals seeking to purchase health insurance on their own. And the University Student Health Insurance Plan offered by the University of Chicago (U-SHIP) covers elective abortions, as required by Illinois law. *See* http://bit.ly/437yyYk [https://perma.cc/Q54U-4JG4]. Individual D is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

48.    Individual E is a member of Students for Life of America. He is currently a student at the University of Chicago, private university in Illinois. The University of Chicago requires all of its students to carry health insurance as a condition of enrollment. But the defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 makes it impossible for Individual E to purchase state-regulated health

insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

49.    Individual E is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual E also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes her complicit in the act of abortion, a grave moral evil.

50.    Individual E's inability to purchase state-regulated health insurance that excludes or limits abortion coverage inflicts injury in fact. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

51.    Individual E has no ability to obtain health insurance apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as Individual E cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Individual E cannot obtain employer-sponsored health insurance because he is a full-time student and does not have a job with health benefits. Individual E cannot obtain health insurance through his parents because he is over 26 years of age. Individual E also cannot obtain health insurance by establishing a domestic captive insurance company or acquiring insurance through an association health plan or a self-insured multiple-employer welfare arrangement, as these options

are viable only for entities seeking group health insurance (such as employers), not for individuals seeking to purchase health insurance on their own. And the University Student Health Insurance Plan offered by the University of Chicago (U-SHIP) covers elective abortions, as required by Illinois law. *See* http://bit.ly/437yyYk [https://perma.cc/Q54U-4JG4]. Individual E is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and withdrawing from the university that he attends.

52. Individual F is a member of Students for Life of America. He is currently a student an undergraduate student at Illinois State University, a public university in Illinois. Illinois State University requires all of its students to carry health insurance as a condition of enrollment. Individual F is still on his parents' health plan but he intends to remain and work in Illinois after graduating. The defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 will make it difficult or impossible for Individual F to purchase or obtain state-regulated health insurance unless he enrolls in a policy that forces him to pay for other people's elective abortions.

53. Individual F is a Christian, and his Christian faith teaches that life begins at conception and that the taking of an unborn human life through elective abortion is an act of murder. Individual F also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes him complicit in the act of abortion, a grave moral evil.

54. Individual F's inability to purchase state-regulated health insurance that excludes or limits abortion coverage inflicts injury in fact. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product

is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

55. Students for Life has other members, in addition to Individuals A through F, who are university students in Illinois and are suffering injuries in fact similar or identical to those described above.

56. All of these Article III injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

57. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Individuals A through

F, at least in part, by providing Individuals A through F with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology of California v. United States*, 506 U.S. 9, 13 (1992)).

58. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Individuals A through F, at least in part, by reducing the extent to which Individuals A through F must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

59. Students for Life is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of

elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Individuals A through F by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

60.   The interests that Students for Life seeks to protect in the litigation are germane to the organization's purpose. Students for Life exists to oppose abortion and protect unborn children from violence. *See supra*, at ¶ 29.

61.   Neither the claims asserted by Students for Life nor the relief requested in this litigation requires the participation of the organizations' individual members.

### B.   Midwest Bible Church

62.   Plaintiff Midwest Bible Church is an independent, non-denominational Christian church located in Illinois. It has three church employees. Midwest Bible Church is a Christ-centered, Bible-believing congregation. Midwest Bible Church believes that all human life is sacred and that every human being has inherent dignity and worth, and that elective abortion is a murderous act of violence against the most vulnerable and defenseless members of the human family. Midwest Bible Church's anti-abortion stance is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Midwest Bible Church also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

63.   Midwest Bible Church purchases and provides health insurance for its employees, all of whom reside and work in Illinois. Midwest Bible Church, however, has too few employees to self-insure or level-fund, and self-insurance and level-funding are financially unfeasible because one of its eligible employees is currently suffering from an expensive pre-existing health condition. Christian bill-sharing is also not an option because bill-sharing companies will not accept members with expensive pre-existing health conditions. So Midwest Bible Church, which needs to provide health insurance to its employees, including the employee who is currently suffering from an expensive pre-existing health condition, has obtained health insurance for its employees from Blue Cross Blue Shield, but the Blue Cross Blue Shield plan (as required by Illinois law) covers elective abortions and abortifacients without cost-sharing arrangements, in violation of Midwest Bible Church's religious beliefs.

64.   Illinois's compulsory abortion-coverage laws make it impossible for Midwest Bible Church to purchase and provide state-regulated health insurance that excludes or limits abortion coverage, and Midwest Bible Church cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014). The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the

city cannot purchase wholesale power from the provider of its choice *nor* on its pre-ferred terms").

65.    Midwest Bible Church has no ability to provide health insurance to its employees apart from purchasing a state-regulated plan that forces it to subsidize and become complicit in elective abortions, as it has too few employees to self-insure or level-fund. Establishing a domestic captive insurance company is not an option because captives typically determine rates for a group that is a member of the captive on the basis of that group's claims experience, which imposes prohibitively expensive rates on a small employer that has significant pre-existing conditions. That is why having access to the community rating of the state-regulated small group and individual marketplace is so important. Association health plans and multiple employer welfare arrangements are also not an option because they require some nexus of association for a group to join. Midwest Bible Church is therefore suffering further injury in fact because the defendant is forcing it to choose between subsidizing other people's abortions and withholding health insurance from its employees.

66.    These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes

coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

67. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Midwest Bible Church, at least in part, by providing Midwest Bible Church with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

68. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Midwest Bible Church, at least in part, by reducing the extent to which Midwest Bible Church must subsidize other people's

abortions as a condition of purchasing state-regulated health insurance. *See Uzueg-bunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

69.  Midwest Bible Church is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Midwest Bible Church by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

## C.    Pro-Life Action League

70.  Plaintiff Pro-Life Action League is a nonprofit organization that exists to oppose abortion and protect unborn children from violence. It employs five full-time staff members. Pro-Life Action League's opposition to abortion is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of homicide. Pro-Life Action League also believes, on sincere religious grounds, that paying health-insurance premiums that are used to

subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

71. Pro-Life Action League purchases and provides health insurance for its employees, all of whom reside and work in Illinois. Because Pro-Life Action is too small to self-insure or level-fund, it cannot provide health insurance to its employees unless it purchases health-insurance policies from state-regulated insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

72. Illinois's compulsory abortion-coverage laws make it impossible for Pro-Life Action League to purchase and provide state-regulated health insurance that excludes or limits abortion coverage, and Pro-Life Action League cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of homicide. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

73. Pro-Life Action League has no ability to provide health insurance to its employees apart from purchasing a state-regulated plan that forces it to subsidize and become complicit in elective abortions, as it has too few employees to self-insure or

level-fund. Establishing a domestic captive insurance company is not an option be-
cause captives typically determine rates for a group that is a member of the captive on
the basis of that group's claims experience, which imposes prohibitively expensive
rates on a small employer that has significant pre-existing conditions. That is why
having access to the community rating of the state-regulated small group and individ-
ual marketplace is so important. Association health plans and multiple employer wel-
fare arrangements are also not an option because they require some nexus of associa-
tion for a group to join. Pro-Life Action League is therefore suffering further injury
in fact because the defendant is forcing it to choose between subsidizing other peo-
ple's abortions and withholding health insurance from its employees.

74.     These injuries are fairly traceable to the defendant's enforcement of Illinois's
compulsory abortion-coverage laws. And these injuries will be redressed by the re-
quested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a
and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department
of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority
that prohibit state-regulated health-insurance plans from including any policy provi-
sion that covers elective abortions unless that health insurer: (1) Provides a notice to
enrollees, as part of the summary of benefits and coverage explanation, at the time of
enrollment, that the plan covers elective abortions; (2) Offers a separate state-regu-
lated health plan that excludes any coverage of elective abortion; and (3) Ensures that
none of the premiums collected from beneficiaries enrolled in a plan that excludes
coverage of elective abortion are used to directly or indirectly subsidize elective abor-
tions or provide coverage of elective abortions in any way.

75.     If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is
declared unconstitutional and enjoined, then federal law will require every health in-
surer that offers plans on Illinois's state exchange to offer at least one plan that: (a)
excludes coverage for elective abortion; and (b) segregates funds in a manner that

prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Pro-Life Action League, at least in part, by providing Pro-Life Action League with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

76.   If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Pro-Life Action League, at least in part, by reducing the extent to which Pro-Life Action League must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

77.   Pro-Life Action League is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that

health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Pro-Life Action League by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### D.  Illinois Right to Life

78.  Plaintiff Illinois Right to Life is a nonprofit organization that exists to oppose abortion and protect unborn children from violence. It employs three full-time staff members. Illinois Right to Life's opposition to abortion is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Illinois Right to Life also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

79.  Illinois Right to Life purchases and provides health insurance for its employees, all of whom reside and work in Illinois. Because Illinois Right to Life is too small to self-insure or level-fund, it cannot provide health insurance to its employees unless it purchases health-insurance policies from state-regulated insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

80.    Illinois's compulsory abortion-coverage laws make it impossible for Illinois Right to Life to purchase and provide state-regulated health insurance that excludes or limits abortion coverage, and Illinois Right to Life cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

81.    Illinois Right to Life has no ability to provide health insurance to its employees apart from purchasing a state-regulated plan that forces it to subsidize and become complicit in elective abortions, as it has too few employees to self-insure or level-fund. Establishing a domestic captive insurance company is not an option because captives typically determine rates for a group that is a member of the captive on the basis of that group's claims experience, which imposes prohibitively expensive rates on a small employer that has significant pre-existing conditions. That is why having access to the community rating of the state-regulated small group and individual marketplace is so important. Association health plans and multiple employer welfare arrangements are also not an option because they require some nexus of association for a group to join. Illinois Right to Life is therefore suffering further injury in

fact because the defendant is forcing it to choose between subsidizing other people's abortions and withholding health insurance from its employees.

82. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

83. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Illinois Right to Life, at least in part, by providing Illinois Right to Life with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

84.   If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra.* That will redress the injury to Illinois Right to Life, at least in part, by reducing the extent to which Illinois Right to Life must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

85.   Illinois Right to Life is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Illinois Right to Life by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage

and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### E. Clapham School

86.  Plaintiff Clapham School is a private Christian classical K–12 school located in Wheaton, Illinois. It is committed to education founded on a Christian worldview informed by the classical tradition. Every faculty member at Clapham School professes faith in Jesus Christ, and the school seeks to point its students to Christ through all subjects. *See* https://www.claphamschool.org/the-clapham-story

87.  As a Christian institution, Clapham School opposes abortion. Clapham School's opposition to abortion is rooted in its sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Clapham School also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

88.  Clapham School employs 18 full-time staff members, and it purchases and provides health insurance for these employees, all of whom reside and work in Illinois. Because Clapham School is too small to self-insure or level-fund, it cannot provide health insurance to its employees unless it purchases health-insurance policies from state-regulated insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

89.  Illinois's compulsory abortion-coverage laws make it impossible for Clapham School to purchase and provide state-regulated health insurance that excludes or limits abortion coverage, and Clapham School cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in

any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

90.   Clapham School has no ability to provide health insurance to its employees apart from purchasing a state-regulated plan that forces it to subsidize and become complicit in elective abortions, as it has too few employees to self-insure or level-fund. Establishing a domestic captive insurance company is not an option because captives typically determine rates for a group that is a member of the captive on the basis of that group's claims experience, which imposes prohibitively expensive rates on a small employer that has significant pre-existing conditions. That is why having access to the community rating of the state-regulated small group and individual marketplace is so important. Association health plans and multiple employer welfare arrangements are also not an option because they require some nexus of association for a group to join. Clapham School is therefore suffering further injury in fact because the defendant is forcing it to choose between subsidizing other people's abortions and withholding health insurance from its employees.

91.   These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority

that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

92.   If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Clapham School, at least in part, by providing Clapham School with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

93.   If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-

regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Clapham School, at least in part, by reducing the extent to which Clapham School must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

94.   Clapham School is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Clapham School by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### F.   Innovator Capital Mangement LLC

95.   Plaintiff Innovator Capital Management LLC (Innovator) is a for-profit, limited liability company located in Wheaton, Illinois. Its owners and employees are residents of Illinois.

96.   The owners of Innovator are Christians who oppose abortion, and their opposition to abortion is rooted in their sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. The owners of Innovator also believe, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

97.   Innovator has more than 50 employees, so it is required by federal law to purchase and provide health insurance for its employees, all of whom reside and work in Illinois. *See* 26 U.S.C. §§ 4980H(a), (c)(2). Because Innovator is too small to self-insure or level-fund, it cannot provide health insurance to its employees unless it purchases state-regulated health-insurance policies from insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

98.   Illinois's compulsory abortion-coverage laws make it impossible for Innovator to purchase and provide state-regulated health insurance that excludes or limits abortion coverage, and Innovator cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what it regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from

another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

99.   Innovator has no ability to provide health insurance to its employees apart from purchasing a state-regulated plan that forces it to subsidize and become complicit in elective abortions, as it has too few employees to self-insure or level-fund. Establishing a domestic captive insurance company is not an option because captives typically determine rates for a group that is a member of the captive on the basis of that group's claims experience, which imposes prohibitively expensive rates on a small employer that has significant pre-existing conditions. That is why having access to the community rating of the state-regulated small group and individual marketplace is so important. Association health plans and multiple employer welfare arrangements are also not an option because they require some nexus of association for a group to join. Innovator is therefore suffering further injury in fact because the defendant is forcing it to choose between subsidizing other people's abortions and withholding health insurance from its employees.

100.   These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes

coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

101. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Innovator, at least in part, by providing Innovator with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

102. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Innovator, at least in part, by reducing the extent to which Innovator must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291

("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

103. Innovator is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Innovator by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### G.    John Southard

104. Plaintiff John Southard is an Illinois resident. Mr. Southard is a co-owner and serves as chief investments officer of Innovator Capital Management LLC (Innovator). As co-owner and chief investments officer, Mr. Southard is responsible for obtaining health insurance for the employees of Innovator, including himself.

105. Mr. Southard is a Christian. Mr. Southard also opposes abortion. Mr. Southard's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Southard also believes, on sincere religious grounds, that paying health-

insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

106. Mr. Southard wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Southard to purchase state-regulated health insurance that excludes or limits abortion coverage, and Mr. Southard cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

107. Mr. Southard also wants to obtain health insurance that excludes or limits abortion coverage for the employees of Innovator. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Southard to obtain state-regulated health insurance that excludes or limits abortion coverage, and Mr. Southard cannot arrange for Innovator to purchase or provide a state-regulated health-insurance policy without becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Wheaton College v. Burwell*, 573 U.S. 958 (2014). The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits

abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

108. Mr. Southard has no ability to purchase health insurance for himself or his employees apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as his employer has too few employees to self-insure or level-fund and Mr. Southard cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Mr. Southard is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and forgoing health insurance and withholding health insurance from his employees. Mr. Southard is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as he cannot purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

109. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to

enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

110. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Mr. Southard, at least in part, by providing him with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

111. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enact-

ment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Mr. Southard, at least in part, by reducing the extent to which Mr. Southard must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

112. Mr. Southard is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Mr. Southard by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### H. Michael Flynn

113. Plaintiff Michael Flynn is an Illinois resident. Mr. Flynn serves as Operations Manager of DuPage Precision Products. As Operations Manager, Mr. Flynn is responsible for obtaining health insurance for the employees of DuPage Precision Products, including himself. DuPage Precision Products has more than 50 employees, so

it is required by federal law to purchase and provide health insurance for its employees, all of whom reside and work in Illinois. *See* 26 U.S.C. §§ 4980H(a), (c)(2). Because DuPage Precision Products is too small to self-insure or level-fund, it cannot provide health insurance to its employees unless it purchases state-regulated health-insurance policies from insurance companies in Illinois, who are required by state law to cover elective abortions and abortifacients without cost-sharing arrangements.

114. Mr. Flynn is a Christian. Mr. Flynn also opposes abortion. Mr. Flynn's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Flynn also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

115. Mr. Flynn wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Flynn to purchase state-regulated health insurance that excludes or limits abortion coverage, and Mr. Flynn cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the

city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

116. Mr. Flynn also wants to obtain health insurance that excludes or limits abortion coverage for the employees of DuPage Precision Products. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Flynn to obtain state-regulated health insurance that excludes or limits abortion coverage, and Mr. Flynn cannot arrange for DuPage Precision Products to purchase or provide a state-regulated health-insurance policy without becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

117. Mr. Flynn has no ability to purchase health insurance for himself or his employees apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as his employer has too few employees to self-insure or level-fund and Mr. Flynn cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Mr. Flynn is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and forgoing health insurance and withholding health insurance from his employees. Mr. Flynn is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as he cannot

purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

118.  These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

119.  If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Mr. Flynn, at least in part, by providing him with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

120. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Mr. Flynn, at least in part, by reducing the extent to which Mr. Flynn must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

121. Mr. Flynn is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Mr. Flynn by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of

its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### I.    Kolby Atchison

122. Plaintiff Kolby Atchison is an Illinois resident. Mr. Atchison serves as Head of School at Clapham School. As Head of School, Mr. Atchison is responsible for obtaining health insurance for the employees of Clapham School, including himself.

123. Mr. Atchison is a Christian. Mr. Atchison also opposes abortion. Mr. Atchison opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Atchison also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

124. Mr. Atchison wants to purchase and obtain health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Atchison to purchase state-regulated health insurance that excludes or limits abortion coverage, and Mr. Atchison cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from

another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

125. Mr. Atchison also wants to obtain health insurance that excludes or limits abortion coverage for the employees of Clapham School. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Atchison to obtain state-regulated health insurance that excludes or limits abortion coverage, and Mr. Atchison cannot arrange for Illinois Right to Life to purchase or provide a state-regulated health-insurance policy for its employees without becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

126. Mr. Atchison has no ability to purchase health insurance for himself or his employees apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as his employer has too few employees to self-insure or level-fund and Mr. Atchison cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Mr. Atchison is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and forgoing health insurance and withholding it from his employees. Mr. Atchison is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as he

cannot purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

127. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

128. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Mr. Atchison, at least in part, by providing him with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291

("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

129. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Mr. Atchison, at least in part, by reducing the extent to which Mr. Atchison must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

130. Mr. Atchison is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in

any way. That requested relief will further redress the injury to Mr. Atchison by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### J.     Jaclyn Cornell

131. Plaintiff Jaclyn Cornell is an Illinois resident. Ms. Cornell serves as Executive Director of Illinois Right to Life. As Executive Director, Ms. Cornell is responsible for obtaining health insurance for the employees of Illinois Right to Life, including herself.

132. Ms. Cornell is a Christian. Ms. Cornell also opposes abortion. Ms. Cornell's opposition to abortion is rooted in her sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Ms. Cornell also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

133. Ms. Cornell wants to purchase health insurance for herself and her family. But Illinois's compulsory abortion-coverage laws make it impossible for Ms. Cornell to purchase state-regulated health insurance that excludes or limits abortion coverage, and Ms. Cornell cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what she regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See*

*Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

134. Ms. Cornell also wants to obtain health insurance that excludes or limits abortion coverage for the employees of Illinois Right to Life. But Illinois's compulsory abortion-coverage laws make it impossible for Ms. Cornell to obtain state-regulated health insurance that excludes or limits abortion coverage, and Ms. Cornell cannot arrange for Illinois Right to Life to purchase or provide a state-regulated health-insurance policy for its employees without becoming complicit in what she regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

135. Ms. Cornell has no ability to purchase health insurance for herself or her employees apart from purchasing a state-regulated plan that forces her to subsidize and become complicit in elective abortions, as her employer has too few employees to self-insure or level-fund and Ms. Cornell cannot purchase health insurance across

state lines. *See* paragraph 22, *supra*. Ms. Cornell is therefore suffering further injury in fact because the defendant is forcing her to choose between subsidizing other people's abortions and forgoing health insurance and withholding it from her employees. Ms. Cornell is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as she cannot purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

136. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

137. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Ms. Cornell, at least

in part, by providing her with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

138. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Ms. Cornell, at least in part, by reducing the extent to which Ms. Cornell must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

139. Ms. Cornell is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of

elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Ms. Cornell by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### K. Ann Scheidler

140. Plaintiff Ann Scheidler is an Illinois resident. Ms. Scheidler serves as Executive Director of the Pro Life Action League. As Executive Director, Ms. Scheidler is responsible for obtaining health insurance for the employees of the Pro Life Action League.

141. Ms. Scheidler is a Christian. Ms. Scheidler also opposes abortion. Ms. Scheidler's opposition to abortion is rooted in her sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Ms. Scheidler also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

142. Ms. Scheidler is over 65 and has health insurance through Medicare. But Ms. Scheidler wants to obtain health insurance that excludes or limits abortion coverage for the employees of the Pro Life Action League. But Illinois's compulsory abortion-coverage laws make it impossible for Ms. Scheidler to obtain state-regulated health insurance that excludes or limits abortion coverage, and Ms. Scheidler cannot arrange for the Pro Life Action League to purchase or provide a state-regulated health-insurance policy for its employees without becoming complicit in what she

regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

143. Ms. Scheidler has no ability to purchase health insurance for her employees apart from purchasing a state-regulated plan that forces her to subsidize and become complicit in elective abortions, as her employer has too few employees to self-insure or level-fund and Ms. Scheidler cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Ms. Scheidler is therefore suffering further injury in fact because the defendant is forcing her to choose between subsidizing other people's abortions and withholding health insurance from her employees. Ms. Scheidler is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as she cannot purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

144. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority

that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

145. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Ms. Scheidler, at least in part, by providing her with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

146. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-

regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Ms. Scheidler, at least in part, by reducing the extent to which Ms. Scheidler must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

147. Ms. Scheidler is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Ms. Scheidler by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

## L.     Eric Scheidler

148. Plaintiff Eric Scheidler is an Illinois resident employed by the Pro Life Action League.

149. Mr. Scheidler is a Christian. Mr. Scheidler also opposes abortion. Mr. Scheidler's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Scheidler also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

150. Mr. Scheidler wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Scheidler to purchase state-regulated health insurance that excludes or limits abortion coverage, and Mr. Scheidler cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

151. Mr. Scheidler has no ability to purchase health insurance apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as his employer has too few employees to self-insure or level-fund and Mr. Scheidler cannot purchase health insurance across state lines. *See* paragraph

22, *supra*. Mr. Scheidler is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and forgoing health insurance entirely. Mr. Scheidler is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as he cannot purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

152. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

153. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Mr. Scheidler, at least

in part, by providing him with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

154. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Mr. Scheidler, at least in part, by reducing the extent to which Mr. Scheidler must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

155. Mr. Scheidler is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of

elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Mr. Scheidler by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

## M.  Matthew Yonke

156. Plaintiff Matthew Yonke is an Illinois resident employed by the Pro Life Action League.

157. Mr. Yonke is a Christian. Mr. Yonke also opposes abortion. Mr. Yonke's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Yonke also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

158. Mr. Yonke wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Yonke to purchase state-regulated health insurance that excludes or limits abortion coverage, and Mr. Yonke cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See*

*Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a de-sired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost oppor-tunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its pre-ferred terms").

159. Mr. Yonke has no ability to purchase health insurance apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as his employer has too few employees to self-insure or level-fund and Mr. Yonke cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Mr. Yonke is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and forgoing health in-surance entirely. Mr. Yonke is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as he cannot purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

160. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the re-quested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provi-sion that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of

enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

161. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Mr. Yonke, at least in part, by providing him with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

162. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Mr. Yonke, at least in part, by reducing

the extent to which Mr. Yonke must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

163. Mr. Yonke is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Mr. Yonke by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### N.   Erol Sense

164. Plaintiff Erol Sense is an Illinois resident. Mr. Sense serves as church administrator at Midwest Bible Church. As church administrator, Mr. Sense is responsible for obtaining health insurance for the employees of Midwest Bible Church, including himself.

165. Mr. Sense is a Christian. Mr. Sense also opposes abortion. Mr. Sense's opposition to abortion is rooted in his sincere religious belief that life begins at conception and that the unjustified taking of an unborn human life is an act of murder. Mr. Sense also believes, on sincere religious grounds, that paying health-insurance premiums that are used to subsidize other people's abortions makes one complicit in the act of abortion, a grave moral evil.

166. Mr. Sense wants to purchase health insurance for himself and his family. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Sense to purchase state-regulated health insurance that excludes or limits abortion coverage, and Mr. Sense cannot purchase or provide a state-regulated health-insurance policy without paying for other people's elective abortions and becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Hobby Lobby*, 573 U.S. at 710. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

167. Mr. Sense also wants to obtain health insurance that excludes or limits abortion coverage for the employees of Midwest Bible Church. But Illinois's compulsory abortion-coverage laws make it impossible for Mr. Sense to obtain state-regulated health insurance that excludes or limits abortion coverage, and Mr. Sense cannot ar-

range for Midwest Bible Church to purchase or provide a state-regulated health-insurance policy without becoming complicit in what he regards as an act of murder. This inflicts injury in fact. *See Wheaton*, 573 U.S. 958. The enforcement of any law that restricts in any way the availability of health insurance that excludes or limits abortion coverage inflicts "injury in fact" on those who wish to obtain a health-insurance plan that omits or limits such coverage. *See Center for Auto Safety*, 793 F.2d at 1332–34 (reduced opportunity to purchase a desired product inflicts injury in fact); *Orangeburg*, 862 F.3d at 1078 ("The lost opportunity to purchase a desired product is a cognizable injury, even though Orangeburg *can* purchase, and *has* purchased, wholesale power from another source. . . . [E]ven though Orangeburg can and does purchase wholesale power from another source, the city cannot purchase wholesale power from the provider of its choice *nor* on its preferred terms").

168. Mr. Sense has no ability to purchase health insurance for himself or his employees apart from purchasing a state-regulated plan that forces him to subsidize and become complicit in elective abortions, as his employer has too few employees to self-insure or level-fund and Mr. Sense cannot purchase health insurance across state lines. *See* paragraph 22, *supra*. Mr. Sense is therefore suffering further injury in fact because the defendant is forcing him to choose between subsidizing other people's abortions and forgoing health insurance and withholding it from Midwest Bible Church's employees. Mr. Sense is similarly incapable of purchasing or obtaining non-employer-sponsored health insurance that excludes or limits coverage for elective abortions, as he cannot purchase health insurance across state lines and cannot obtain health insurance that is not subject to Illinois's compulsory abortion-coverage laws. *See* paragraph 22, *supra*.

169. These injuries are fairly traceable to the defendant's enforcement of Illinois's compulsory abortion-coverage laws. And these injuries will be redressed by the requested relief, which will enjoin state officials from enforcing 215 ILCS 5/356z.4a

and 215 ILCS 5/356z.60, and order the acting director of the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way.

170. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that: (a) excludes coverage for elective abortion; and (b) segregates funds in a manner that prevents any portion of the premiums paid by beneficiaries who opt for a policy that excludes elective-abortion coverage from subsidizing other people's elective abortions. *See* 42 U.S.C. § 18023(b). That will redress the injury to Mr. Sense, at least in part, by providing him with an opportunity to purchase a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

171. If the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is declared unconstitutional and enjoined, then at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion. Other private insurers in Illinois will respond by offering state-regulated plans that (at the very least) impose co-pays or other cost-sharing

  
arrangements that require beneficiaries who obtain elective abortions to pay at least some of the costs rather than imposing all of those costs on other beneficiaries. State-regulated health insurers in Illinois offered plans of this sort before the state's enactment and enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. *See* paragraph 26, *supra*. That will redress the injury to Mr. Sense, at least in part, by reducing the extent to which Mr. Sense must subsidize other people's abortions as a condition of purchasing state-regulated health insurance. *See Uzuegbunam*, 592 U.S. at 291 ("[T]he ability 'to effectuate a partial remedy' satisfies the redressability requirement." (quoting *Church of Scientology*, 506 U.S. at 13)).

172. Mr. Sense is also requesting relief that orders Acting Director Gillespie and the Illinois Department of Insurance to issue and enforce rules pursuant to its statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way. That requested relief will further redress the injury to Mr. Sense by ensuring that every entity that offers state-regulated health insurance in Illinois will provide a health-insurance plan that excludes elective-abortion coverage and prevents any portion of its premiums from directly or indirectly subsidizing elective abortions, thereby ensuring that beneficiaries who oppose abortion do not subsidize or become complicit in elective abortions.

### Claim No. 1: The Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Abridges The Free Exercise Of Religion, In Violation Of The First And Fourteenth Amendments

173. The enforcement of Illinois's compulsory abortion-law coverage laws violates each of the plaintiffs' constitutional right to freely exercise their religion. U.S. Const. amend. XIV.

174. Neither 215 ILCS 5/356z.4a nor 215 ILCS 5/356z.60 qualifies as a neutral and generally applicable law under *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990).

175. Both 215 ILCS 5/356z.4a, which compels private health-insurance policies to cover elective abortions, and 215 ILCS 5/356z.60, which compels private health-insurance policies to cover abortion-inducing drugs without cost-sharing, provide an exemption for any "multistate plan that does not provide coverage for abortion." *See* 215 ILCS 5/356z.4a(d); 215 ILCS 5/356z.60(f).

176. 215 ILCS 5/356z.4a also allows (but does not require) the Department of Insurance to grant individualized exemptions if the Department concludes that the enforcement of 215 ILCS 5/356z.4a "may adversely affect the allocation of federal funds to this State":

> If the Department concludes that enforcement of this Section may adversely affect the allocation of federal funds to this State, the Department may grant an exemption to the requirements, but only to the minimum extent necessary to ensure the continued receipt of federal funds.

215 ILCS 5/356z.4a(e). 215 ILCS 5/356z.60 contains a similar provision:

> If the Department concludes that enforcement of any coverage requirement of this Section for abortifacients may adversely affect the allocation of federal funds to this State, the Department may grant an exemption to that requirement, but only to the minimum extent necessary to ensure the continued receipt of federal funds.

215 ILCS 5/356z.60(g). The allowance for these discretionary, individualized ex-
emptions defeats any claim that 215 ILCS 5/356z.4a or 215 ILCS 5/356z.60 is
"generally applicable" under *Smith. See Fulton v. City of Philadelphia*, 593 U.S. 522,
533–34 (2021).

177. 215 ILCS 5/356z.60 also provides an exception to its no-cost-sharing rule
by exempting high-deductible plans if (and only if) the no-cost-sharing arrangement
would render that high-deductible plan ineligible for a health savings account under
27 U.S.C. § 223:

> Except as otherwise provided in this Section, a policy subject to this
> Section shall not impose a deductible, coinsurance, copayment, or any
> other cost-sharing requirement on the coverage provided. The provi-
> sions of this subsection do not apply to coverage of procedures to the
> extent such coverage would disqualify a high-deductible health plan
> from eligibility for a health savings account pursuant to the federal In-
> ternal Revenue Code, 26 U.S.C. 223.

215 ILCS 5/356z.60(d).

178. Finally, both 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 provide ex-
emptions for grandfathered health-insurance policies that were issued, amended, de-
livered, or renewed in Illinois before a certain date. *See* 215 ILCS 5/356z.4a(a) (ap-
plying only to health-insurance policies "issued, amended, delivered, or renewed in
this State after the effective date of this amendatory Act of the 101st General Assembly
unless the policy provides a covered person with coverage for abortion"); 215 ILCS
5/356z.60(b) (applying only to health-insurance policies "amended, delivered, is-
sued, or renewed in this State on or after January 1, 2024").

179. The availability of these individualized exemptions in 215 ILCS 5/356z.4a
and 215 ILCS 5/356z.60 defeats any claim that the laws are "generally applicable"
under *Smith. See Fulton*, 593 U.S. at 533–34 ("'[W]here the State has in place a sys-
tem of individual exemptions, it may not refuse to extend that system to cases of
"religious hardship" without compelling reason.'" (quoting *Smith*, 494 U.S. at 884)).

180. *Smith* is inapplicable to this lawsuit for an additional reason: Several of the plaintiffs are asserting a hybrid-rights claim, as they allege that the enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates not only their rights under the Free Exercise Clause but also their right to expressive association under the First Amendment. *See infra* at ¶¶ 184–185; *Smith*, 494 U.S. at 881 ("[D]ecisions in which we have held that the First Amendment bars application of a neutral, generally applicable law to religiously motivated action have involved not the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional protections . . . . [I]t is easy to envision a case in which a challenge on freedom of association grounds would likewise be reinforced by Free Exercise Clause concerns"); *Fulton*, 593 U.S. at 598–600 (Alito, J., concurring) ("[M]any claims for religious exemptions can easily be understood as hybrid free-exercise/free-speech claims."). The plaintiffs are also alleging that 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 are preempted by numerous federal statutes. *See infra* at ¶¶ 188–197. So the plaintiffs' free-exercise challenge to the defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 triggers strict scrutiny rather than the *per se* legality rule of *Smith.*

181. The defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 substantially burdens the plaintiffs' free exercise of religion. Each of these statutes prevents the plaintiffs from obtaining or purchasing health insurance for themselves or their employees unless they pay for other people's elective abortions and become complicit in the provision of elective abortions and abortion-inducing drugs. That imposes a "substantial burden" of the plaintiffs' exercise of their religious faith. *See Hobby Lobby*, 573 U.S. at 725; *Wheaton*, 573 U.S. 958; *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 681 (2020) (courts "must accept the sincerely held complicity-based objections of religious entities.").

182. The defendant must therefore prove that the state's refusal to provide religious exceptions or accommodations in 215 ILCS 5/356z.4a and 215 ILCS

5/356z.60 is the "least restrictive means" of advancing a "compelling governmental interest." *See Fulton*, 593 U.S. at 541 ("The question, then, is not whether the City has a compelling interest in enforcing its non-discrimination policies generally, but whether it has such an interest in denying an exception to CSS."). The defendant cannot make this showing. There is no compelling governmental interest in forcing religious objectors (or anyone else) to pay for other people's abortions. And even if the defendant wanted to assert a "compelling governmental interest" in making elective abortions available at no charge to any person who wants them, there are ways to accomplish that goal without forcing religious objectors to choose between paying for other people's abortions and forgoing health insurance entirely.

183. The free-exercise claim is brought by each of the plaintiffs. The plaintiffs are asserting this claim under 42 U.S.C. § 1983, the Declaratory Judgment Act (28 U.S.C. § 2201), and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015), each of which supplies a cause of action for the relief that they are requesting.

### Claim No. 2: The Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Abridges The Right Of Expressive Association, In Violation Of The First And Fourteenth Amendments

184. The enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 further violates the constitutional rights of Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life by abridging their First Amendment right of expressive association. *See Boy Scouts v. Dale*, 530 U.S. 640 (2000).

185. Pro-Life Action League and Illinois Right to Life exist to oppose abortion and protect unborn children from murderous acts of violence. They all express anti-abortion messages and associate for the purpose of propagating those anti-abortion messages. Midwest Bible Church exists to promote its Christian faith, which regards

elective abortion as murder and forbids participation in elective abortion. Forcing these organizational plaintiffs to pay for abortions as a condition of providing health insurance to their employees affects in a significant way their ability to advocate those viewpoints, because they must either: (1) Refuse to provide health insurance to their employees, which makes it difficult to recruit and retain capable staff members; or (2) Aid and abet the very behaviors that they condemn, which undercuts the credibility of their anti-abortion message and exposes them to charges of hypocrisy. Whatever choice they make will "affect[] in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts*, 530 U.S. at 648.

186. The defendant's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates the constitutional right of expressive association for an additional reason: It makes membership in Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life less attractive because these organizations cannot provide health insurance to their employees without making their employees (and their organization) complicit in other people's elective abortions. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 69 (2006) ("[F]reedom of expressive association protects more than just a group's membership decisions. . . . [L]aws . . . [that] ma[ke] group membership less attractive . . . rais[e] the same First Amendment concerns about affecting the group's ability to express its message."); *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 600 (6th Cir. 2013) ("The right of expressive association . . . protects a group's membership decisions and shields against laws that make group membership less attractive without directly interfering in an organization's composition."). Those who wish to join Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life as full-time employees cannot do so unless they become complicit in other people's abortions or forgo health insurance entirely, and those who wish to become non-employee members of these organizations cannot do so without

lending support to an entity that is using its resources to pay for other people's abortions on account of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60. This makes membership in those organizations less attractive than it would be in a world in which Midwest Bible Church, Pro-Life Action League and Illinois Right to Life had the ability to offer health insurance to their employees that excludes elective-abortion coverage and lends no financial support or subsidy to elective abortions obtained by others.

187. The expressive-association claim is brought only by Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life. The plaintiffs are asserting this claim under 42 U.S.C. § 1983, the Declaratory Judgment Act (28 U.S.C. § 2201), and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015), each of which supplies a cause of action for the relief that they are requesting.

### Claim No. 3: The Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Is Preempted By 18 U.S.C. §§ 1461–1462

188. Federal law outlaws and criminalizes each of the following acts:

a. Knowingly using the mails for the mailing, carriage, or delivery of abortion-related paraphernalia;[2]

b. Knowingly using any express company, common carrier, or interactive computer service for carriage of abortion-related paraphernalia in interstate or foreign commerce;[3] and

c. Knowingly taking or receiving abortion-related paraphernalia from an express company, a common carrier, or an interactive computer service.[4]

---

2. *See* 18 U.S.C. § 1461.

3. *See* 18 U.S.C. § 1462(a)–(c).

4. *See* 18 U.S.C. § 1462 (last two paragraphs).

18 U.S.C. §§ 1461–1462. Every abortion provider in United States is violating these federal criminal prohibitions by obtaining abortion-inducing drugs or abortion-related equipment through the mails or from an express company, common carrier, or interactive computer service. The Biden Administration refused to prosecute abortion providers for these crimes, but they are criminal acts nonetheless. *See Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions*, 46 Op. O.L.C. ___ (Dec. 23, 2022).

189. 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 require health insurers and their beneficiaries to aid or abet violations of 18 U.S.C. §§ 1461–1462 by reimbursing abortion providers who obtain abortion-inducing drugs and abortion-related paraphernalia in violation of federal law. Each of these statutes is preempted to the extent it requires coverage of abortions and abortion-inducing drugs from providers who refuse to comply with 18 U.S.C. §§ 1461–1462.

190. The preemption claim under 18 U.S.C. §§ 1461–1462 is brought by each of the plaintiffs. The plaintiffs are asserting this claim under the Declaratory Judgment Act (28 U.S.C. § 2201) and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015), each of which supplies a cause of action for the relief that they are requesting.

### Claim No. 4: The Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Is Preempted By The Coates–Snowe Amendment, 42 U.S.C. § 238n(a)

191. The enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 also violates the Coates–Snowe amendment, which provides as follows:

> The Federal Government, and any State or local government that receives Federal financial assistance, may not subject any health care entity to discrimination on the basis that—

> (1) the entity refuses to undergo training in the performance of induced abortions, to require or provide such training, to perform such abortions, or to provide referrals for such training or such abortions; [or]

> (2) the entity refuses to make arrangements for any of the activities specified in paragraph (1);

42 U.S.C. § 238n(a).

192. The state of Illinois is a "State or local government that receives Federal financial assistance" because it receives payments for the federal government as reimbursement for carrying out Medicaid and other "health-related activities." 42 U.S.C. § 238n(c)(1).

193. Illinois is therefore violating 42 U.S.C. § 238n(a) by discriminating against health insurers that refuse to cover elective abortions or abortion-inducing drugs.

194. The preemption claim under 42 U.S.C. § 238n(a) is brought by each of the plaintiffs. The plaintiffs are asserting this claim under 42 U.S.C. § 1983, the Declaratory Judgment Act (28 U.S.C. § 2201), and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015), each of which supplies a cause of action for the relief that they are requesting.

### Claim No. 5: The Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Is Preempted By The Weldon Amendment

195. The enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates the Weldon Amendment, which provides as follows:

> None of the funds made available in this Act may be made available to a Federal agency or program, or to a State or local government, if such agency, program, or government subjects any institutional or individual health care entity to discrimination on the basis that the health care entity does not provide, pay for, provide coverage of, or refer for abortions.

Pub. L. 111-8, § 508(d)(1).

196. The state of Illinois is a "State or local government" that receives federal funds because it receives payments for the federal government as reimbursement for carrying out Medicaid and other programs.

197. Illinois is therefore violating 42 U.S.C. § 238n(a) by discriminating against health insurers that refuse to cover elective abortions or abortion-inducing drugs.

198. The preemption claim under the Weldon Amendment is brought by each of the plaintiffs. The plaintiffs are asserting this claim under 42 U.S.C. § 1983, the Declaratory Judgment Act (28 U.S.C. § 2201), and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015), each of which supplies a cause of action for the relief that they are requesting.

### Claim No. 6: The Enforcement Of Illinois's Compulsory Abortion-Coverage Laws Against Innovator Capital Management LLC Is Preempted By The Combination Of The Religious Freedom Restoration Act And The Affordable Care Act's Employer-Coverage Mandate

199. Federal law requires employers with more than 50 employees to offer ACA-compliant health insurance to their employees or pay draconian penalties. *See* 26 U.S.C. §§ 4980H(a), (c)(2). Innovator Capital Management LLC (Innovator) employs more than 50 employees, so it must provide its employees with ACA-compliant health insurance or pay a statutory penalty of $100 per employee per day. *See* 26 U.S.C. § 4980D(a)–(b); *Hobby Lobby*, 573 U.S. 696–97.

200. The Religious Freedom Restoration Act prohibits the federal government from substantially burdening a person's exercise of religion, even if the burden results from a rule of general applicability, unless the federal government proves that the burden represents the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000bb–1.

201. The state's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 against Innovator causes the federal government to violate the Religious Freedom

Restoration Act by enforcing the federal employer-coverage mandate and its threat-ened penalties against Innovator. *See* 26 U.S.C. § 4980D(a)–(b); 26 U.S.C. §§ 4980H(a), (c)(2). Because Innovator is too small to self-insure or level-fund, it cannot comply with the federal employer-coverage mandate unless it purchases state-regulated health-insurance policies from insurance companies in Illinois, who are re-quired by state law to cover elective abortions and abortifacients without cost-sharing arrangements. This causes the federal government's enforcement of the employer-coverage mandate to impose a "substantial burden" on Innovator's exercise of reli-gion, because Innovator cannot comply with these federal laws without subsidizing and becoming complicit in elective abortions. *See Hobby Lobby*, 573 U.S. at 725; *Wheaton*, 573 U.S. 958. And the federal government has made no attempt to demon-strate that imposing this burden on Innovator represents the "least restrictive means" of furthering a "compelling governmental interest." 42 U.S.C. § 2000bb–1.

202. To the extent that the state's enforcement of its compulsory abortion-cov-erage mandates will curb the scope or efficacy or permissible enforcement of the fed-eral employer-coverage mandate, the state's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 must give way under the Supremacy Clause. *See* U.S. Const. art. VI, § 2. The enforceability of the federal employer-coverage mandate cannot be limited or scaled back to accommodate a non-supreme state law. The conflict created by the combined existence of RFRA, the federal employer-coverage mandate, and the state's abortion-coverage laws must be resolved in favor of the federal statutes rather than state law.

203. The RFRA/employer-mandate preemption claim is brought only by plain-tiff Innovator Capital Management LLC. Innovator is asserting this claim under 42 U.S.C. § 1983, the Declaratory Judgment Act (28 U.S.C. § 2201), and the implied cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Armstrong*

*v. Exceptional Child Center, Inc.*, 575 U.S. 320, 326–27 (2015), each of which supplies a cause of action for the relief that they are requesting.

## DEMAND FOR RELIEF

204. The plaintiffs respectfully request that the court:

    a.    declare that the state's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 violates each of the plaintiffs' constitutional rights under the Free Exercise Clause;

    b.    declare that the state's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60, as applied to plaintiffs Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life, violates those plaintiffs' constitutional right of expressive association under the First Amendment;

    c.    declare that the state's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 is preempted by 18 U.S.C. §§ 1461–1462, the Coates–Snowe amendment (42 U.S.C. § 238n(a)), and the Weldon Amendment;

    d.    declare that the state's enforcement of 215 ILCS 5/356z.4a and 215 ILCS 5/356z.60 against Innovator Capital Management LLC is preempted by the combined effect of the Religious Freedom Restoration Act and the federal employer-coverage mandate;

    e.    permanently enjoin Acting Director Gillespie and her successors from enforcing 215 ILCS 5/356z.4a or 215 ILCS 5/356z.60;

    f.    enter a permanent injunction that compels Acting Director Gillespie and her successors to issue and enforce rules pursuant to their statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions

unless that health insurer: (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions; (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way;

g.    award the plaintiffs nominal and compensatory damages;

h.    award the plaintiffs costs and attorneys' fees under 42 U.S.C. § 1988;

i.    grant all other relief that the Court deems just, proper, or equitable.

Respectfully submitted.

/s/ Jonathan F. Mitchell

| | |
|---|---|
| THOMAS BREJCHA | JONATHAN F. MITCHELL |
| PETER BREEN | Mitchell Law PLLC |
| Thomas More Society | 111 Congress Avenue, Suite 400 |
| 309 West Washington Street, Suite 1250 | Austin, Texas 78701 |
| Chicago, Illinois 60606 | (512) 686-3940 (phone) |
| (312) 782-1680 (phone) | (512) 686-3941 (fax) |
| (312) 782-1887 (fax) | jonathan@mitchell.law |
| info@thomasmoresociety.org | |
| | |
| Dated: February 24, 2025 | *Counsel for Plaintiffs* |

## CERTIFICATE OF SERVICE

I certify that on February 24, 2025, I served this document through CM/ECF upon:

ELIZABETH MORRIS
SARAH J. GALLO
ALICE L. RIECHERS
ELENA S. METH
Office of the Illinois Attorney General
Special Litigation Bureau
115 South LaSalle Street, 35th Floor
Chicago, Illinois 60603
(312) 814-3000
elizabeth.morris@ilag.gov
sarah.gallo@ilag.gov
alice.riechers@ilag.gov
elena.meth@ilag.gov

*Counsel for Defendant*

                                         */s/ Jonathan F. Mitchell*
                                         JONATHAN F. MITCHELL
                                         *Counsel for Plaintiffs*