**(2) Actuarial value**

**(A) In general**

Under regulations issued by the Secretary, the level of coverage of a plan shall be determined on the basis that the essential health benefits described in subsection (b) shall be provided to a standard population (and without regard to the population the plan may actually provide benefits to).

**(B) Employer contributions**

The Secretary shall issue regulations under which employer contributions to a health savings account (within the meaning of section 223 of title 26) may be taken into account in determining the level of coverage for a plan of the employer.

**(C) Application**

In determining under this title,[1] the Public Health Service Act [42 U.S.C. 201 et seq.], or title 26 the percentage of the total allowed costs of benefits provided under a group health plan or health insurance coverage that are provided by such plan or coverage, the rules contained in the regulations under this paragraph shall apply.

**(3) Allowable variance**

The Secretary shall develop guidelines to provide for a de minimis variation in the actuarial valuations used in determining the level of coverage of a plan to account for differences in actuarial estimates.

**(4) Plan reference**

In this title,[1] any reference to a bronze, silver, gold, or platinum plan shall be treated as a reference to a qualified health plan providing a bronze, silver, gold, or platinum level of coverage, as the case may be.

**(e) Catastrophic plan**

**(1) In general**

A health plan not providing a bronze, silver, gold, or platinum level of coverage shall be treated as meeting the requirements of subsection (d) with respect to any plan year if—

(A) the only individuals who are eligible to enroll in the plan are individuals described in paragraph (2); and

(B) the plan provides—

(i) except as provided in clause (ii), the essential health benefits determined under subsection (b), except that the plan provides no benefits for any plan year until the individual has incurred cost-sharing expenses in an amount equal to the annual limitation in effect under subsection (c)(1) for the plan year (except as provided for in section 2713);[1] and

(ii) coverage for at least three primary care visits.

**(2) Individuals eligible for enrollment**

An individual is described in this paragraph for any plan year if the individual—

(A) has not attained the age of 30 before the beginning of the plan year; or

(B) has a certification in effect for any plan year under this title[1] that the individual is exempt from the requirement under section 5000A of title 26 by reason of—

(i) section 5000A(e)(1) of such title (relating to individuals without affordable coverage); or

(ii) section 5000A(e)(5) of such title (relating to individuals with hardships).

**(3) Restriction to individual market**

If a health insurance issuer offers a health plan described in this subsection, the issuer may only offer the plan in the individual market.

**(f) Child-only plans**

If a qualified health plan is offered through the Exchange in any level of coverage specified under subsection (d), the issuer shall also offer that plan through the Exchange in that level as a plan in which the only enrollees are individuals who, as of the beginning of a plan year, have not attained the age of 21, and such plan shall be treated as a qualified health plan.

**(g) Payments to Federally-qualified health centers**

If any item or service covered by a qualified health plan is provided by a Federally-qualified health center (as defined in section 1396d(*l*)(2)(B) of this title) to an enrollee of the plan, the offeror of the plan shall pay to the center for the item or service an amount that is not less than the amount of payment that would have been paid to the center under section 1396a(bb) of this title) for such item or service.

(Pub. L. 111–148, title I, §1302, title X, §10104(b), Mar. 23, 2010, 124 Stat. 163, 896.)

REFERENCES IN TEXT

This title, referred to in subsecs. (a), (b)(5), (d)(2)(C), (4), and (e)(2)(B), is title I of Pub. L. 111–148, Mar. 23, 2010, 124 Stat. 130, which enacted this chapter and enacted, amended, and transferred numerous other sections and notes in the Code. For complete classification of title I to the Code, see Tables.

The Public Health Service Act, referred to in subsec. (d)(2)(C), is act July 1, 1944, ch. 373, 58 Stat. 682, which is classified generally to chapter 6A (§201 et seq.) of this title. For complete classification of this Act to the Code, see Short Title note set out under section 201 of this title and Tables.

Section 2713, referred to in subsec. (e)(1)(B)(i), probably means section 2713 of act July 1, 1944, which is classified to section 300gg–13 of this title.

AMENDMENTS

2010—Subsec. (d)(2)(B). Pub. L. 111–148, §10104(b)(1), substituted ''shall issue'' for ''may issue''.

Subsec. (g). Pub. L. 111–148, §10104(b)(2), added subsec. (g).

**§ 18023. Special rules**

**(a) State opt-out of abortion coverage**

**(1) In general**

A State may elect to prohibit abortion coverage in qualified health plans offered through an Exchange in such State if such State enacts a law to provide for such prohibition.

**(2) Termination of opt out**

A State may repeal a law described in paragraph (1) and provide for the offering of such services through the Exchange.

**(b) Special rules relating to coverage of abortion services**

**(1) Voluntary choice of coverage of abortion services**

**(A) In general**

Notwithstanding any other provision of this title[1] (or any amendment made by this title)—[1]

(i) nothing in this title[1] (or any amendment made by this title),[1] shall be construed to require a qualified health plan to provide coverage of services described in subparagraph (B)(i) or (B)(ii) as part of its essential health benefits for any plan year; and

(ii) subject to subsection (a), the issuer of a qualified health plan shall determine whether or not the plan provides coverage of services described in subparagraph (B)(i) or (B)(ii) as part of such benefits for the plan year.

**(B) Abortion services**

**(i) Abortions for which public funding is prohibited**

The services described in this clause are abortions for which the expenditure of Federal funds appropriated for the Department of Health and Human Services is not permitted, based on the law as in effect as of the date that is 6 months before the beginning of the plan year involved.

**(ii) Abortions for which public funding is allowed**

The services described in this clause are abortions for which the expenditure of Federal funds appropriated for the Department of Health and Human Services is permitted, based on the law as in effect as of the date that is 6 months before the beginning of the plan year involved.

**(2) Prohibition on the use of Federal funds**

**(A) In general**

If a qualified health plan provides coverage of services described in paragraph (1)(B)(i), the issuer of the plan shall not use any amount attributable to any of the following for purposes of paying for such services:

(i) The credit under section 36B of title 26 (and the amount (if any) of the advance payment of the credit under section 18082 of this title).

(ii) Any cost-sharing reduction under section 18071 of this title (and the amount (if any) of the advance payment of the reduction under section 18082 of this title).

**(B) Establishment of allocation accounts**

In the case of a plan to which subparagraph (A) applies, the issuer of the plan shall—

(i) collect from each enrollee in the plan (without regard to the enrollee's age, sex, or family status) a separate payment for each of the following:

(I) an amount equal to the portion of the premium to be paid directly by the enrollee for coverage under the plan of services other than services described in paragraph (1)(B)(i) (after reduction for credits and cost-sharing reductions described in subparagraph (A)); and

(II) an amount equal to the actuarial value of the coverage of services described in paragraph (1)(B)(i), and

(ii) shall[2] deposit all such separate payments into separate allocation accounts as provided in subparagraph (C).

In the case of an enrollee whose premium for coverage under the plan is paid through employee payroll deposit, the separate payments required under this subparagraph shall each be paid by a separate deposit.

**(C) Segregation of funds**

**(i) In general**

The issuer of a plan to which subparagraph (A) applies shall establish allocation accounts described in clause (ii) for enrollees receiving amounts described in subparagraph (A).

**(ii) Allocation accounts**

The issuer of a plan to which subparagraph (A) applies shall deposit—

(I) all payments described in subparagraph (B)(i)(I) into a separate account that consists solely of such payments and that is used exclusively to pay for services other than services described in paragraph (1)(B)(i); and

(II) all payments described in subparagraph (B)(i)(II) into a separate account that consists solely of such payments and that is used exclusively to pay for services described in paragraph (1)(B)(i).

**(D) Actuarial value**

**(i) In general**

The issuer of a qualified health plan shall estimate the basic per enrollee, per month cost, determined on an average actuarial basis, for including coverage under the qualified health plan of the services described in paragraph (1)(B)(i).

**(ii) Considerations**

In making such estimate, the issuer—

(I) may take into account the impact on overall costs of the inclusion of such coverage, but may not take into account any cost reduction estimated to result from such services, including prenatal care, delivery, or postnatal care;

(II) shall estimate such costs as if such coverage were included for the entire population covered; and

(III) may not estimate such a cost at less than $1 per enrollee, per month.

**(E) Ensuring compliance with segregation requirements**

**(i) In general**

Subject to clause (ii), State health insurance commissioners shall ensure that health plans comply with the segregation

---

[1] See References in Text note below.

[2] So in original. The word ''shall'' probably should not appear.

requirements in this subsection through the segregation of plan funds in accordance with applicable provisions of generally accepted accounting requirements, circulars on funds management of the Office of Management and Budget, and guidance on accounting of the Government Accountability Office.

**(ii) Clarification**

Nothing in clause (i) shall prohibit the right of an individual or health plan to appeal such action in courts of competent jurisdiction.

**(3) Rules relating to notice**

**(A) Notice**

A qualified health plan that provides for coverage of the services described in paragraph (1)(B)(i) shall provide a notice to enrollees, only as part of the summary of benefits and coverage explanation, at the time of enrollment, of such coverage.

**(B) Rules relating to payments**

The notice described in subparagraph (A), any advertising used by the issuer with respect to the plan, any information provided by the Exchange, and any other information specified by the Secretary shall provide information only with respect to the total amount of the combined payments for services described in paragraph (1)(B)(i) and other services covered by the plan.

**(4) No discrimination on basis of provision of abortion**

No qualified health plan offered through an Exchange may discriminate against any individual health care provider or health care facility because of its unwillingness to provide, pay for, provide coverage of, or refer for abortions [3]

**(c) Application of State and Federal laws regarding abortion**

**(1) No preemption of State laws regarding abortion**

Nothing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions, including parental notification or consent for the performance of an abortion on a minor.

**(2) No effect on Federal laws regarding abortion**

**(A) [4] In general**

Nothing in this Act shall be construed to have any effect on Federal laws regarding—
(i) conscience protection;
(ii) willingness or refusal to provide abortion; and
(iii) discrimination on the basis of the willingness or refusal to provide, pay for, cover, or refer for abortion or to provide or participate in training to provide abortion.

**(3) No effect on Federal civil rights law**

Nothing in this subsection shall alter the rights and obligations of employees and employers under title VII of the Civil Rights Act of 1964 [42 U.S.C. 2000e et seq.].

**(d) Application of emergency services laws**

Nothing in this Act shall be construed to relieve any health care provider from providing emergency services as required by State or Federal law, including section 1395dd of this title (popularly known as ''EMTALA'').

(Pub. L. 111–148, title I, §1303, title X, §10104(c), Mar. 23, 2010, 124 Stat. 168, 896.)

REFERENCES IN TEXT

This title, referred to in subsec. (b)(1)(A), is title I of Pub. L. 111–148, Mar. 23, 2010, 124 Stat. 130, which enacted this chapter and enacted, amended, and transferred numerous other sections and notes in the Code. For complete classification of title I to the Code, see Tables.

This Act, referred to in subsecs. (c)(1), (2)(A) and (d), is Pub. L. 111–148, Mar. 23, 2010, 124 Stat. 119, known as the Patient Protection and Affordable Care Act. For complete classification of this Act to the Code, see Short Title note set out under section 18001 of this title and Tables.

The Civil Rights Act of 1964, referred to in subsec. (c)(3), is Pub. L. 88–352, July 2, 1964, 78 Stat. 241. Title VII of the Act is classified generally to subchapter VI (§2000e et seq.) of chapter 21 of this title. For complete classification of this Act to the Code, see Short Title note set out under section 2000a of this title and Tables.

AMENDMENTS

2010—Pub. L. 111–148, §10104(c), amended section generally. Prior to amendment, section consisted of subsecs. (a) to (c) relating to special rules relating to coverage of abortion services, application of State and Federal laws regarding abortion, and application of emergency services laws.

EX. ORD. NO. 13535. ENSURING ENFORCEMENT AND IMPLEMENTATION OF ABORTION RESTRICTIONS IN THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

Ex. Ord. No. 13535, Mar. 24, 2010, 75 F.R. 15599, provided:

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the ''Patient Protection and Affordable Care Act'' (Public Law 111–148), I hereby order as follows:

SECTION 1. *Policy*. Following the recent enactment of the Patient Protection and Affordable Care Act (the ''Act''), it is necessary to establish an adequate enforcement mechanism to ensure that Federal funds are not used for abortion services (except in cases of rape or incest, or when the life of the woman would be endangered), consistent with a longstanding Federal statutory restriction that is commonly known as the Hyde Amendment. The purpose of this order is to establish a comprehensive, Government-wide set of policies and procedures to achieve this goal and to make certain that all relevant actors—Federal officials, State officials (including insurance regulators) and health care providers—are aware of their responsibilities, new and old.

The Act maintains current Hyde Amendment restrictions governing abortion policy and extends those restrictions to the newly created health insurance exchanges. Under the Act, longstanding Federal laws to protect conscience (such as the Church Amendment, 42 U.S.C. 300a–7, and the Weldon Amendment, section 508(d)(1) of Public Law 111–8) remain intact and new protections prohibit discrimination against health care facilities and health care providers because of an unwillingness to provide, pay for, provide coverage of, or refer for abortions.

Numerous executive agencies have a role in ensuring that these restrictions are enforced, including the De-

---

[3] So in original. Probably should be followed by a period.
[4] So in original. There is no subpar. (B).

partment of Health and Human Services (HHS), the Office of Management and Budget (OMB), and the Office of Personnel Management.

SEC. 2. *Strict Compliance with Prohibitions on Abortion Funding in Health Insurance Exchanges.* The Act specifically prohibits the use of tax credits and cost-sharing reduction payments to pay for abortion services (except in cases of rape or incest, or when the life of the woman would be endangered) in the health insurance exchanges that will be operational in 2014. The Act also imposes strict payment and accounting requirements to ensure that Federal funds are not used for abortion services in exchange plans (except in cases of rape or incest, or when the life of the woman would be endangered) and requires State health insurance commissioners to ensure that exchange plan funds are segregated by insurance companies in accordance with generally accepted accounting principles, OMB funds management circulars, and accounting guidance provided by the Government Accountability Office.

I hereby direct the Director of the OMB and the Secretary of HHS to develop, within 180 days of the date of this order, a model set of segregation guidelines for State health insurance commissioners to use when determining whether exchange plans are complying with the Act's segregation requirements, established in section 1303 of the Act, for enrollees receiving Federal financial assistance. The guidelines shall also offer technical information that States should follow to conduct independent regular audits of insurance companies that participate in the health insurance exchanges. In developing these model guidelines, the Director of the OMB and the Secretary of HHS shall consult with executive agencies and offices that have relevant expertise in accounting principles, including, but not limited to, the Department of the Treasury, and with the Government Accountability Office. Upon completion of those model guidelines, the Secretary of HHS should promptly initiate a rulemaking to issue regulations, which will have the force of law, to interpret the Act's segregation requirements, and shall provide guidance to State health insurance commissioners on how to comply with the model guidelines.

SEC. 3. *Community Health Center Program.* The Act establishes a new Community Health Center (CHC) Fund within HHS, which provides additional Federal funds for the community health center program. Existing law prohibits these centers from using Federal funds to provide abortion services (except in cases of rape or incest, or when the life of the woman would be endangered), as a result of both the Hyde Amendment and longstanding regulations containing the Hyde language. Under the Act, the Hyde language shall apply to the authorization and appropriations of funds for Community Health Centers under section 10503 and all other relevant provisions. I hereby direct the Secretary of HHS to ensure that program administrators and recipients of Federal funds are aware of and comply with the limitations on abortion services imposed on CHCs by existing law. Such actions should include, but are not limited to, updating Grant Policy Statements that accompany CHC grants and issuing new interpretive rules.

SEC. 4. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect: (i) authority granted by law or Presidential directive to an agency, or the head thereof; or (ii) functions of the Director of the OMB relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees or agents, or any other person.

BARACK OBAMA.

## § 18024. Related definitions

### (a) Definitions relating to markets

In this title:[1]

#### (1) Group market

The term ''group market'' means the health insurance market under which individuals obtain health insurance coverage (directly or through any arrangement) on behalf of themselves (and their dependents) through a group health plan maintained by an employer.

#### (2) Individual market

The term ''individual market'' means the market for health insurance coverage offered to individuals other than in connection with a group health plan.

#### (3) Large and small group markets

The terms ''large group market'' and ''small group market'' mean the health insurance market under which individuals obtain health insurance coverage (directly or through any arrangement) on behalf of themselves (and their dependents) through a group health plan maintained by a large employer (as defined in subsection (b)(1)) or by a small employer (as defined in subsection (b)(2)), respectively.

### (b) Employers

In this title:[1]

#### (1) Large employer

The term ''large employer'' means, in connection with a group health plan with respect to a calendar year and a plan year, an employer who employed an average of at least 101 employees on business days during the preceding calendar year and who employs at least 1 employee on the first day of the plan year.

#### (2) Small employer

The term ''small employer'' means, in connection with a group health plan with respect to a calendar year and a plan year, an employer who employed an average of at least 1 but not more than 100 employees on business days during the preceding calendar year and who employs at least 1 employee on the first day of the plan year.

#### (3) State option to treat 50 employees as small

In the case of plan years beginning before January 1, 2016, a State may elect to apply this subsection by substituting ''51 employees'' for ''101 employees'' in paragraph (1) and by substituting ''50 employees'' for ''100 employees'' in paragraph (2).

#### (4) Rules for determining employer size

For purposes of this subsection—

##### (A) Application of aggregation rule for employers

All persons treated as a single employer under subsection (b), (c), (m), or (*o*) of section 414 of title 26 shall be treated as 1 employer.

##### (B) Employers not in existence in preceding year

In the case of an employer which was not in existence throughout the preceding cal-

---

[1] See References in Text note below.