**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Students for Life of America, *et al.*, | |
| Plaintiffs, | Case No. 1:24-cv-11928 |
| v. | District Judge Jeffrey I. Cummings |
| | Magistrate Judge Beth W. Jantz |
| Ann Gillespie, Acting Director of the Illinois Department of Insurance | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
SECOND AMENDED COMPLAINT UNDER RULES 12(b)(1) AND 12(b)(6)**

KWAME RAOUL
*Attorney General of Illinois*

Elizabeth Morris, ARDC #6297239
Sarah J. Gallo, ARDC #6320644
Alice L. Riechers, ARDC #6272933
Elena S. Meth, ARDC # 6346041
Office of the Illinois Attorney General
Special Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
312-814-3000

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.   The Department regulates certain health insurance products. .................................. 2

II.  Some health insurance products are not regulated by the Department. .................... 4

III. The ACA is silent as to whether insurance products offered to individuals must cover abortion care. ............................................................................................................ 5

LEGAL STANDARD ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

I.   Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(1) for lack of standing. .............. 8

    A.  Plaintiffs' requested injunction against the Department would not redress their alleged injury. ..................................................................................................... 10

       1.  The Department lacks the authority to require non-party insurance companies to sell insurance without abortion care coverage, and thus cannot redress Plaintiffs' alleged injury.................................................................................................... 11

       2.  Plaintiffs fail to plead that enjoining enforcement of the RHA Provisions or providing notice of abortion coverage would redress their alleged injury ................. 13

    B.  Plaintiffs fail to plead traceability to the Department because non-party insurance companies decide coverage specifications. ........................................................... 15

II.  Claims 3, 4, 5, and 6 should be dismissed under Rule 12(b)(6) because none of the statutory claims are actionable by Plaintiffs. ......................................................... 16

    A.  Plaintiffs' asserted statutory provisions do not create private rights of action. .............. 16

    B.  Plaintiffs' asserted provisions are not otherwise privately enforceable. ......................... 18

       1.  Plaintiffs cannot use Section 1983 to enforce these statutory provisions because they do not confer individualized rights. ........................................................... 18

       2.  Neither the Declaratory Judgment Act nor *Ex parte Young* doctrine create a basis to assert Plaintiffs' claims. ............................................................................... 19

    C.  Plaintiffs' statutory claims also fail as a matter of law. .................................................. 21

III. Claims 1 and 2 must be dismissed pursuant to Rule 12(b)(6) because the RHA Provisions comply with the First Amendment. ........................................................ 25

    A.  The Free Exercise claim fails because the RHA Provisions are neutral, generally applicable insurance regulations supported by a rational basis. ..................................... 25

    B.  The Free Exercise claim fails because the exemptions in the RHA Provisions do not undermine general applicability. ...................................................................................... 26

    C.  Plaintiffs' expressive association claim is also deficient and should be dismissed, dooming any attempted boot-strapped hybrid-rights claim. ........................................... 27

CONCLUSION ................................................................................................................. 30

## TABLE OF AUTHORITIES

**Cases**

*Abcarian v. McDonald,*
   617 F.3d 931 (7th Cir. 2010) ....................................................... 7

*Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.,*
   929 F.3d 865 (7th Cir. 2019) ....................................................... 20

*Area Transp., Inc. v. Ettinger,*
   219 F.3d 671 (7th Cir. 2000) ................................................... 13, 14

*Armstrong v. Exceptional Child Ctr. Inc.,*
   575 U.S. 320 (2015) ............................................................... 20, 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................... 7

*Bours v. United States,*
   229 F. 960 (7th Cir. 1915) ......................................................... 22

*Boy Scouts of Am. v. Dale,*
   530 U.S. 640 (2000) ............................................................... 28, 29

*C.L. for Urb. Believers v. City of Chi.,*
   342 F.3d 752 (7th Cir. 2003) ..................................................... 27

*Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler,*
   683 F. Supp. 3d 1172 (W.D. Wash. 2023) ............................... 26, 27

*Cedar Park Assembly of God of Kirkland, Wash. v. Kriedler,*
   No. 23-35560, 2025 WL 716341 (9th Cir. Mar. 6, 2025) ............. 13

*City of Boerne v. Flores,*
   521 U.S. 507 (1997) ............................................................... 18, 24

*Davis v. Fed. Election Comm'n,*
   554 U.S. 724 (2008) ..................................................................... 9

*Doe v. Holcomb,*
   883 F.3d 971 (7th Cir. 2018) ..................................................... 20

*Endsley v. City of Chi.,*
   230 F.3d 276 (7th Cir. 2000) ..................................................... 19

*Ex parte Young,*
   209 U.S. 123 (1908) ....................................................... 18, 20, 21

*Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C.,*
   No. 1:16CV125, 2017 WL 1155807 (M.D.N.C. Mar. 27, 2017) ..... 17

*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002) ................................................................... 18

*Haaland v. Brackeen,*
   599 U.S. 255 (2023) ....................................................... 12, 13, 14

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
  599 U.S. 166 (2023)......................................................................................... 18, 19

*Healy v. James*,
  408 U.S. 169 (1972) .................................................................................................. 29

*Howe v. Burwell*,
  No. 2:15-CV-6, 2015 WL 4479757 (D. Vt. July 21, 2015)........................................11

*Ill. Bible Colls. Ass'n v. Anderson*,
  870 F.3d 631 (7th Cir. 2017), *as amended* (Oct. 5, 2017) ......................... 25, 26, 27

*Int'l Union of Operating Engineers, Local 139, AFL-CIO v. Daley*,
  983 F.3d 287 (7th Cir. 2020) ................................................................................... 15

*Julie Q. v. Ill. Dep't of Children & Family Servs.*,
  2011 IL App. (2d) 100643 .......................................................................................... 3

*Linda R.S. v. Richard D.*,
  410 U.S. 614 (1973) .................................................................................................. 21

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................... 8, 9, 14, 15

*McDaniel v. Bd. of Educ. of City of Chi.*,
  956 F. Supp. 2d 887 (N.D. Ill. 2013) ....................................................................... 12

*Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*,
  273 F.3d 722 (7th Cir. 2001) ................................................................................... 16

*Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*,
  108 F.4th 1035 (8th Cir. 2024) .......................................................................... 20, 21

*N.Y. State Club Ass'n., Inc. v. City of N.Y.*,
  487 U.S. 1 (1988)...................................................................................................... 28

*Nat'l Inst. of Fam. & Life Advocs. v. Rauner*,
  No. 16-cv-50310, 2017 WL 11570803 (N.D. Ill. July 19, 2017)............................... 19

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010)................................................................................ 12

*Or. Right to Life v. Stolfi*,
  No. 6:23-CV-01282-MK, 2024 WL 4345758 (D. Or. Sept. 30, 2024) ................. 26, 27

*Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*,
  95 F.4th 501 (7th Cir. 2024)....................................................................................... 9

*Pavlock v. Holcomb*,
  35 F.4th 581 (7th Cir. 2022) .................................................................................... 12

*Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't. of Health*,
  699 F.3d 962 (7th Cir. 2012) .............................................................................. 20, 21

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
  2 F. 4th 1002 (7th Cir. 2021) ................................................................................. 7, 8

*Priests for Life v. U.S. Dep't of Health & Human Servs.*,
    772 F.3d 229 (D.C. Cir. 2014) ........................................................................ 29

*Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007) ............................................................... 10, 14

*Rosemond v. United States*,
    572 U.S. 65 (2014) ...................................................................................... 22

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc. (FAIR)*,
    547 U.S. 47 (2006) ................................................................................. 28, 29

*Schilling v. Rogers*,
    363 U.S. 666 (1960) ..................................................................................... 20

*Segovia v. United States*,
    880 F.3d 384 (7th Cir. 2018) ........................................................................ 15

*Shahi v. U.S. Dep't of State*,
    572 F. Supp. 3d 470 (N.D. Ill. 2021) ........................................................... 12

*Shakman v. Dunne*,
    829 F.2d 1387 (7th Cir. 1987) ...................................................................... 15

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) ...................................................................................... 15

*Skelly Oil Co. v. Phillips Petroleum Co.*,
    339 U.S. 667 (1950) ................................................................................ 19, 20

*Swan v. Bd. of Educ. of City of Chi.*,
    956 F. Supp. 2d 913 (N.D. Ill. 2013) ........................................................11, 12

*Taylor v. McCament*,
    875 F.3d 849 (7th Cir. 2017) ..................................................................... 9, 12

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ................................................................................ 25, 26

*U.S. Citizens Ass'n v. Sebelius*,
    705 F.3d 588 (6th Cir. 2013) ................................................................... 29, 30

*U.S. Liab. Ins. Co. v. Ill. Dep't of Ins.*,
    2014 IL App. (4th) 121125............................................................................. 3

*United States v. Anderson*,
    988 F.3d 420 (7th Cir. 2021) ................................................................... 22, 23

*United States v. Greer*,
    467 F.2d 1064 (7th Cir. 1972) ................................................................. 22, 23

*United States v. Indianapolis Baptist Temple*,
    224 F.3d 627 (7th Cir. 2000) ........................................................................ 25

*United States v. One Package*,
    86 F.2d 737 (2d Cir. 1936) ........................................................................... 22

iv

*United States v. Texas*,
  599 U.S. 670 (2023) ............................................................... 21

*White v. Olig*,
  56 F.3d 817 (7th Cir. 1995) ...................................................... 18

*Youngs Rubber Corp. v. C.I. Lee & Co.*,
  45 F.2d 103 (2d Cir. 1930) ....................................................... 22

**Statutes, Rules, and Regulations**

18 U.S.C. § 1461-62 .................................................................. 16
26 U.S.C. § 4980D(a)-(b) ....................................................... 17, 19
26 U.S.C. § 4980H(a), (c)(2) ................................................... 6, 17
29 U.S.C. § 1144(b)(6) ................................................................ 4
42 U.S.C. § 238n(a) ............................................................. 16, 23
42 U.S.C. § 238n(c)(2) .............................................................. 23
42 U.S.C. § 300gg-6(a) ............................................................... 5
42 U.S.C. § 300gg-91(e)(1)-(e)(5) ................................................. 14
42 U.S.C. § 1395ss .................................................................. 11
42 U.S.C. § 18021(a)(1)(B) .......................................................... 5
42 U.S.C. § 18022(a)-(b) ............................................................ 5
42 U.S.C. § 18023(b) ................................................................ 5
42 U.S.C. § 18023(b)(1)(A)-(B) ..................................................... 5
42 U.S.C. § 18023(c)(1) ..................................................... 6, 24, 25
42 U.S.C. § 18031(b)-(c) ............................................................ 5
42 U.S.C. § 18032(d) ................................................................ 5
42 U.S.C. § 18041(c) ................................................................ 5
42 U.S.C. § 18054(a)(6) .............................................................. 6
42 U.S.C. § 2000bb .............................................................. 17, 24
42 U.S.C. § 2000bb-2 ............................................................... 17
50 Ill. Adm. Code 2008 ............................................................. 11
50 Ill. Adm. Code 4540.30 .......................................................... 14
215 ILCS 5/4 .................................................................. 3, 4, 12
215 ILCS 5/5(1) ..................................................................... 3
215 ILCS 5/121(3) ................................................................... 3
215 ILCS 5/121-1 .................................................................... 3
215 ILCS 5/121-2.05 ................................................................. 4
215 ILCS 5/121-5 .................................................................... 3
215 ILCS 5/121-19 ................................................................... 3
215 ILCS 5/123C-1(B), (C) ........................................................... 4
215 ILCS 5/123C-5(B) ................................................................ 4
215 ILCS 5/123C-18 .................................................................. 4
215 ILCS 5/123C-20 .................................................................. 4
215 ILCS 5/143(1) ................................................................... 3
215 ILCS 5/355(b) ................................................................... 3
215 ILCS 5/356z.4a ............................................................. passim

215 ILCS 5/356z.60 ................................................................................................ passim
215 ILCS 5/370 ........................................................................................................ 11
215 ILCS 5/401(a) ..................................................................................................... 3
215 ILCS 5/403A ....................................................................................................... 3
215 ILCS 110/3 .......................................................................................................... 3
215 ILCS 110/15 ........................................................................................................ 3
215 ILCS 110/28 ........................................................................................................ 3
215 ILCS 110/44 ........................................................................................................ 3
215 ILCS 125/1-2(7) .................................................................................................. 3
215 ILCS 125/2-1(a) .................................................................................................. 3
215 ILCS 125/4-13 ..................................................................................................... 3
215 ILCS 125/5-9 ....................................................................................................... 3
215 ILCS 130/1002 ..................................................................................................... 3
215 ILCS 130/2001(a) ................................................................................................ 3
215 ILCS 130/3007 ..................................................................................................... 3
215 ILCS 130/4009 ..................................................................................................... 3
215 ILCS 165/2(b) ...................................................................................................... 3
215 ILCS 165/8 .......................................................................................................... 3
215 ILCS 165/13 ........................................................................................................ 3
215 ILCS 165/28 ........................................................................................................ 3
775 ILCS 55/1-5 ........................................................................................... 22, 25, 26
Pub. L. No. 117-103, Div. H, § 507(d), 136 Stat. 49, 496 (2022) .......................... 17, 23
P.L. 118-47, §§ 506, 507(a) ........................................................................................ 5

**INTRODUCTION**

Plaintiffs challenge two provisions of the Illinois Insurance Code enacted through the Reproductive Health Act: 215 ILCS 5/356z.4a and 5/356z.60 ("RHA Provisions"). The RHA Provisions require health insurance products that cover pregnancy care and are regulated by the Illinois Department of Insurance ("the Department") to cover abortion care. 215 ILCS 5/356z.4a; 5/356z.60. The RHA Provisions apply *only* to Department-regulated health insurance products— a subset of the health insurance products offered in Illinois.

Plaintiffs are individuals and organizations with religious objections to abortion care seeking to purchase health insurance. They bring six claims to challenge the RHA Provisions: two under the First Amendment and four based on alleged violations of federal statutes. Although none of the Plaintiffs are regulated by the RHA Provisions, which apply to insurance companies, Plaintiffs want the RHA Provisions enjoined. Such an injunction, they theorize—without pleading supporting facts—would encourage health insurance companies to offer Department-regulated products that exclude coverage for abortion care. No insurance company is a party in this suit, however, so Plaintiffs also want this Court to direct the Department to require non-party insurance companies to offer Plaintiffs' preferred, abortion-excluding plans.

This extraordinary request is a symptom of a persistent defect in Plaintiffs' case that their amended pleading has not cured: Plaintiffs lack standing to challenge the RHA Provisions. Plaintiffs' purported inability to find tailor-made, abortion coverage-excluding health insurance is neither redressable through the injunction Plaintiffs seek nor traceable to the Department. The Department does not and cannot create such health insurance products; its role is simply to ensure that the insurance products offered by regulated non-party insurance companies comply with existing Illinois law. Plaintiffs do not plead facts to support their theory that enjoining the RHA

1

Provisions will yield the abortion coverage-excluding insurance plans they prefer. The Department lacks statutory authority to require such products be brought to market, and it cannot do so by rule. Plaintiffs' speculative pleading does not establish traceability or redressability for any of their claims, and the amended complaint should be dismissed for lack of standing.

Even if Plaintiffs had pled standing (they have not), all of their claims fail as a matter of law and should be dismissed under Rule 12(b)(6). Their four statutory claims cannot be brought as private causes of action against the Department under any theory. Those claims also have no substantive merit based on preemption.

Plaintiffs also do not allege any facts that support their First Amendment free exercise and expressive association claims, but instead focus on arguing the RHA Provisions are subject to strict scrutiny review. But the RHA Provisions are neutral, generally applicable, and rationally related to a valid government purpose, and Plaintiffs cannot bootstrap a meritless, unsupported expressive association claim to trigger strict scrutiny review.

For these reasons, the Second Amended Complaint must be dismissed.

## BACKGROUND

### I.     The Department regulates certain health insurance products.

The Department regulates insurance companies and certain types of managed care entities that wish to sell private insurance or managed care policies in Illinois. The Department ensures that insurance and managed care products subject to the Illinois Insurance Code or one of the managed care statutes comply with Illinois law through two main levels of regulation. First, the Department issues certificates of authority to entities seeking to sell certain classes of insurance, including health insurance, if the entity complies with general organizational standards. Then, once it has a certificate of authority, an insurance company or managed care entity seeking to sell health

insurance in Illinois presents the Department with a potential product, which the Department reviews for compliance with the Illinois Insurance Code, including the RHA Provisions. The Department has the authority to penalize anyone who sells such products without proper authorization from the Department. *See* 215 ILCS 5/4; 5/5(1); 5/121-1; 5/121(3); 5/121-5; 5/121-19; 5/143(1); 5/355(b); 5/403A; 110/3; 110/15; 110/28; 110/44; 125/1-2(7); 125/2-1(a); 125/4-13; 125/5-9; 130/1002; 130/2001(a); 130/3007; 130/4009; 165/2(b); 165/8; 165/13; 165/28. Neither the RHA Provisions nor any other Illinois law requires Illinois employers, out-of-state employers employing Illinois residents, or individuals—including Plaintiffs—to purchase health insurance regulated by the Department.

The Department does not have statutory authority to force insurers to offer health insurance products with specific coverage parameters or penalize insurers for not providing certain products. In Illinois, the Department's authority is to assess whether products voluntarily offered under the Illinois Insurance Code or a managed care statute meet applicable requirements.

The Department also does not have unilateral rulemaking power to require insurers to sell certain products. The Department can only issue rules to the extent they make effective an insurance law of the State. *See* 215 ILCS 5/401(a). In making a law effective, the Department does not have the authority to contradict the statute or to require standards outside the scope of what the statute requires. *See U.S. Liab. Ins. Co. v. Ill. Dep't of Ins.*, 2014 IL App. (4th) 121125, ¶ 37 (holding invalid Department regulation promulgated under 215 ILCS 5/401(a) as inconsistent with statutory language rule aimed to implement); *Julie Q. v. Ill. Dep't of Children & Family Servs.*, 2011 IL App. (2d) 100643, ¶ 35 ("An administrative agency's authority to adopt rules and regulations is defined and limited by the enabling statute…Rules that fail to conform to the enabling statute are void *ab initio*."). In any case, no Illinois law grants the Department authority to issue rules requiring

insurers to introduce any specific health insurance products, let alone products that do not cover abortion care specifically, as Plaintiffs request.

## II.     Some health insurance products are not regulated by the Department.

Some health insurance products available to Illinois groups are not regulated by the Department, and thus are not subject to the RHA Provisions. Illinois-based associations that do not wish or are ineligible to purchase group health insurance from an existing Department-regulated entity can establish a domestic captive insurance company. *See* 215 ILCS 5/123C-1(B), (C); 5/123C-5(B). The health coverage offered to employers through a domestic captive insurance company would be subject to limited state and federal regulations including ERISA and the ACA. Captive insurance companies offer flexibility in designing care and coverage because they are exempt from all Illinois health benefit mandates and many other insurance requirements, including the RHA Provisions. *See* 215 ILCS 5/123C-18; 5/123C-20.

An employer can also join an association sited in a different State. Its employees' coverage under that plan would then be subject to a different state's insurance laws if the plan is fully-insured, or if the other State has enacted laws governing self-insured multiple-employer welfare arrangements, but such coverage would not be subject to Illinois laws like the RHA Provisions. 29 U.S.C. § 1144(b)(6) *with* 215 ILCS 5/121-2.05.[1]

## III.    The ACA is silent as to whether insurance products offered to individuals must cover abortion care.

In addition to state laws, the federal Affordable Care Act (the "ACA") underlies all health insurance products. It reformed the individual insurance market and, within a subset of that market,

---

[1] Health care sharing ministries are also not regulated by the Department. A health care sharing ministry is not insurance in the traditional sense but a way to defray and spread healthcare costs among its members. *See* 215 ILCS 5/4 Class 1(b) (defining "arrangements between a religious organization and the organization's members or participants").

required the establishment of an exchange by or for the benefit of each State, where individuals can purchase health insurance products for themselves and their families. *See, e.g.*, 42 U.S.C. § 18031(b); 42 U.S.C. § 18041(c). Individuals also may purchase health insurance products in the individual market outside of the exchange. 42 U.S.C. § 18032(d)(1) and (d)(3). The ACA sets the floor for the services that must be covered as essential health benefits by health insurance products offered in the individual market, both within and outside the exchange.[2] *See, e.g.*, 42 U.S.C. § 300gg-6(a); 42 U.S.C. § 18021(a)(1)(B); 42 U.S.C. § 18022(a)-(b); 42 U.S.C. § 18031(b)-(c).

Plaintiffs, citing the ACA, claim that "[f]ederal law requires every health insurer that offers plans on a state-run exchange to offer at least one plan that [] excludes coverage for elective abortion." Second Amended Complaint (Dkt. #19) at ¶24. Neither the ACA nor any other federal law requires insurance companies to offer health insurance products that exclude abortion care coverage on the individual market in Illinois or elsewhere. Indeed, the one provision of the ACA that Plaintiffs cite, 42 U.S.C. § 18023(b), establishes "special rules relating to coverage of abortion services" but does not include a requirement that insurers offer individual health insurance product without abortion care coverage. In short, the ACA does not compel insurance companies to affirmatively introduce certain health insurance products for individuals in any fashion, whether or not offered through the exchange.

---

[2] The ACA prohibits non-Hyde abortion care from being deemed an essential health benefit. 42 U.S.C. § 18023(b)(1)(A)(i). Non-Hyde abortion care is care for which federal funding is prohibited pursuant to the Hyde Amendment; the Hyde Amendment allows federal funding for abortions when a woman's life is at risk, or in cases of incest or rape. 42 U.S.C. § 18023(b)(1)(B)(i) *accord* P.L. 118-47, §§ 506 and 507(a). Although States cannot require coverage of non-Hyde abortion care by deeming it an essential health benefit, they are still free to require non-Hyde abortion care coverage through state law.

The ACA is silent as to abortion care coverage for individual products that private health insurers offer on exchanges.[3] In fact, the ACA is designed to defer to States' own laws regulating insurance coverage of abortion. The ACA states that "[n]othing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions." 42 U.S.C. § 18023(c)(1); *see also* Dkt. #19 at ¶25. The ACA's silence on abortion care coverage means that even if no state law speaks on the issue, it is ultimately up to insurance companies to determine whether their ACA market products for individuals cover abortion care.

With respect to employers, the ACA requires those with at least 50 full-time employees to offer their employees a group health plan or otherwise pay a tax. 26 U.S.C. § 4980H(a), (c)(2) ("ACA coverage mandate").

In sum, groups can buy health insurance products that are subject to the Illinois Insurance Code (including the RHA Provisions) or a managed care statute and therefore regulated by the Department; or they can buy products not regulated by the Department. Individuals who do not obtain group insurance through their employers can buy health insurance products through the exchange established by the ACA, or outside the exchange through other private insurance options. The ACA dictates minimum coverage requirements for individual products and does not require insurers to offer products without abortion care coverage. The Department itself has no legal

---

[3] Multi-state plans offered under 42 U.S.C. § 18054 through the exchanges by the federal Office of Personnel Management are the only instance where the ACA may require the inclusion of a plan that does not cover abortion care. 42 U.S.C. § 18054(a)(6). However, OPM has not offered a multi-state plan since 2018. *See* https://www.opm.gov/healthcare-insurance/multi-state-plan-program, *accessed* March 24, 2025. If OPM were to offer a multi-state plan again, the RHA Provisions include a specific exemption deferring to their exclusion of non-Hyde abortion coverage. 215 ILCS 5/356z.4a(d); 215 ILCS 5/356z.60(f).

authority to compel insurers to introduce certain products, and there is no Illinois law under which the Department can enact rules granting itself such power.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction including for lack of standing. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021). A Rule 12(b)(1) challenge to standing can take the form of a "facial attack" "test[ing] whether the allegations, taken as true, support an inference that the elements of standing exist." *Id*. Facial attacks require the Court to "look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id*. At the pleading stage, courts "presume general allegations include the specific facts supporting the claim"; however, broad unsupported allegations "akin to impermissible speculation rather than permissible presumption . . . 'stop short of the line between possibility and plausibility.'" *Id*. at 1010 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Similarly, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) evaluates a complaint for "facial plausibility." *Iqbal*, 556 U.S. at 678. A complaint may not merely state an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When deciding the sufficiency of a complaint under this standard, the Court must accept all well-pleaded factual allegations as true. *See Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). However, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotations omitted).

**ARGUMENT**

**I.      Plaintiffs' claims must be dismissed pursuant to Rule 12(b)(1) for lack of standing.**

Plaintiffs[4] seek redress for a supposed problem that the Department does not cause and therefore cannot solve. Plaintiffs' basis for the Second Amended Complaint is this: because other insurance options are not available to them, they are forced to purchase Department-regulated health insurance that covers abortion care pursuant to the RHA Provisions, which contravenes their religious beliefs. *E.g.*, Dkt. #19 at ¶¶22, 63-65, 71-73, 79-81, 88-90, 97-99. But Plaintiffs do not plead sufficient facts to support Article III standing, and their Second Amended Complaint must be dismissed pursuant to Rule 12(b)(1).

To plead Article III standing, Plaintiffs must allege facts showing three requirements: (1) they "have suffered an injury in fact—an invasion of a legally protected interest that is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the challenged action of Defendant(s) and [] not the result of

---

[4] Individually-named Plaintiffs (John Southard, Michael Flynn, Kolby Atchison, Jaclyn Cornell, Ann Scheidler, Eric Scheidler, Matthew Yonke, and Erol Senses) lack standing for the same reasons as their employers, to the extent they are named because (1) they are tasked with procuring health insurance for their employers (Dkt. #19 at ¶¶ 104, 107, 108, 113, 116, 117, 122, 125, 126, 131, 134, 135, 140, 142, 143, 164, 167, 168); and/or (2) they will be purchasing Department-regulated health insurance through their employers (Dkt. #19 at ¶¶ 106, 108, 115, 117, 124, 126, 133, 135, 148, 150, 151, 156, 158, 159, 166, 168). Their injury is based on the same allegations, and they seek the same relief as, their employers. Plaintiff Michael Flynn's employer is no longer a named party, but these arguments apply equally to him for the same reasons. To the extent individual Plaintiffs are named because they seek to procure private insurance for themselves separately from their employers, they also fail to plead standing for lack of causation and redressability. Plaintiff Students for Life of America ("SFLA") does not assert standing as an employer seeking to offer group health insurance for its employees, but relies on allegations of individual members seeking to procure insurance as individuals to establish associational standing. Dkt. #19 at ¶¶ 29, 31-55. SFLA lacks standing for the same reasons as individual Plaintiffs seeking non-employer-based insurance. *See Prairie Rivers*, 2 F.4th at 1008 (associational standing is "derivative of—and not independent from—individual standing").

independent action by a third party not before the Court;" and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up); *see also Parents Protecting Our Child., UA v. Eau Claire Area Sch. Dist.*, 95 F.4th 501, 505 (7th Cir. 2024); *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing these elements. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof[.]" *Lujan*, 504 U.S. at 561. Failure to adequately plead even one element of Article III standing is grounds for dismissal. *Id.* Moreover, "standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (cleaned up).

Here, Plaintiffs' requested relief fails to meet the redressability requirement because it is either beyond the Department's scope of authority or would otherwise not address the grievance alleged in the Second Amended Complaint. Specifically, Plaintiffs plead no facts that indicate how enjoining the Department from enforcing the RHA Provisions would thereafter compel a non-party insurance company to create an insurance product in Illinois that excludes abortion care coverage. Non-party insurance companies decide what products to offer, not the Department or the Court, and Plaintiffs do not make allegations about this crucial role played by insurers. Furthermore, the Department cannot force any non-party company to create such a product in the first place. Plaintiffs cannot plead around these realities, which are fatal to their attempts to show both redressability and traceability for standing purposes.[5]

---

[5] The Department does not concede that Plaintiffs can ultimately establish that they have a meritorious claim that they suffer either a direct or indirect injury.

A. **Plaintiffs' requested injunction against the Department would not redress their alleged injury.**

In their pursuit of affordable health insurance without abortion care coverage, Plaintiffs continue in their amended pleading to ask the Court to permanently enjoin the Department's enforcement of the RHA Provisions, and to request the extraordinary relief of ordering the Department to force non-party insurance companies to offer the specific insurance plan they desire.

Plaintiffs' renewed request for relief is essentially the same as in their initial pleading, this time more specific as to what the Department should include in its rule. Specifically, Plaintiffs request that this Court:

> [e]nter a permanent injunction that compels Acting Director Gillespie and her successors to issue and enforce rules pursuant to their statutory rulemaking authority that prohibit state-regulated health-insurance plans from including any policy provision that covers elective abortions unless that health insurer:
> (1) Provides a notice to enrollees, as part of the summary of benefits and coverage explanation, at the time of enrollment, that the plan covers elective abortions;
> (2) Offers a separate state-regulated health plan that excludes any coverage of elective abortion; and
> (3) Ensures that none of the premiums collected from beneficiaries enrolled in a plan that excludes coverage of elective abortion are used to directly or indirectly subsidize elective abortions or provide coverage of elective abortions in any way…

Dkt. #19 at ¶204(f).

This amendment does not address the underlying fault in their theory of the case. Neither an injunction against enforcement of the RHA Provisions, nor a mandate that non-party health insurers "offer[] a separate state-regulated health plan that excludes any coverage of elective abortion," would redress their alleged injury. Dkt. #19 at ¶204. "[A] bald allegation of standing is not enough to survive even a motion to dismiss where neither the factual allegations nor their logic establish redressability." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1278 (D.C. Cir. 2007); *accord Howe v. Burwell*, No. 2:15-CV-6, 2015 WL 4479757, at *9 (D. Vt. July 21, 2015). The Second Amended Complaint must be dismissed for failure to establish

the redressability requirement of standing.

        **1.**    **The Department lacks the authority to require non-party insurance companies to sell insurance without abortion care coverage, and thus cannot redress Plaintiffs' alleged injury.**

Plaintiffs cannot establish redressability by asking for relief that is a legal impossibility, which is exactly what they do here: they want the Department to force non-parties to create health insurance products in Illinois that exclude abortion care coverage. But the Department simply ensures that health insurance products presented by insurance companies comply with existing Illinois insurance laws. Those laws authorize the Department to enforce statutory requirements that specify certain health care services must be covered by health insurance or managed care plans. *See, e.g.*, 215 ILCS 5/370. Non-party insurance companies—not the Department— ultimately decide whether to offer certain products and the coverage specifications of any products based on the insurance market and other business factors. No Illinois law authorizes the Department to require that any specific health care service be excluded from an insurance plan.[6]

When, as here, "a defendant does not have the authority to carry out the injunction, a plaintiff's claim for injunctive relief must be dismissed because the Court cannot enjoin a defendant to act in any way that is beyond the defendant's authority in the first place." *Swan v. Bd. of Educ. of City of Chi.*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013) (citation omitted) (dismissing non-redressable claims for lack of standing); *see also Pavlock v. Holcomb*, 35 F.4th 581, 589 (7th

---

[6] The Department does enforce a national standardization of benefits for Medicare supplement insurance as required by State and federal law, so Medicare supplement insurance benefits are identical across insurance companies, and some benefits cannot be included even if an insurance company would like to include them. 42 U.S.C. 1395ss; 50 Ill. Adm. Code 2008. Even under those laws, the Department does not have authority to require Illinois insurance companies to exclude coverage for any health care service provided in the national models for the standardized plans. 42 U.S.C. § 1395ss(p)(4); 50 Ill. Adm. Code 2008.67(g). None of those laws apply to the types of health insurance products at issue in this action.

Cir. 2022) (no state defendant had power to confer requested relief: "No injunction we enter can fix that problem"); *McDaniel v. Bd. of Educ. of City of Chi.*, 956 F. Supp. 2d 887, 893 (N.D. Ill. 2013); *Taylor*, 875 F.3d at 854-55; *Shahi v. U.S. Dep't of State*, 572 F. Supp. 3d 470, 477-78 (N.D. Ill. 2021).

The fact that the Department has some statutorily-authorized rulemaking authority—to which Plaintiffs repeatedly refer in the Second Amended Complaint[7]—changes nothing. No Illinois law authorizes the Department to make the sweeping, policy-driven, legislative changes that Plaintiffs ask for here. In effect, Plaintiffs ask the Court to step into the place of the legislature, which is improper. The Court cannot grant an injunction that essentially legislates new requirements for Department-regulated insurance companies by requiring them to offer products that exclude specific care from coverage. That is the job of the General Assembly, not the Department or the Court. *See Taylor*, 875 F.3d at 855 ("only Congress can provide the relief [plaintiffs] seek"); *Newdow v. Roberts*, 603 F.3d 1002, 1011 (D.C. Cir. 2010) ("legislation . . . [is] not within the power of the courts."); *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).[8]

---

[7] *See, e.g.*, Dkt. #19 at ¶¶ 19, 56, 59, 66, 69, 74, 77, 82, 85, 91, 94, 100, 103, 109, 112, 118, 121, 127, 130, 136, 139, 144, 147, 152, 155, 160, 163, 169, 172, 204(f). Plaintiffs cite to rulemaking authority under "215 ILCS 5/4(a)." *Id.* at ¶ 19. That is a reference to Class 1(a), which applies to life insurance, not health insurance. Health insurance is separately classified under Classes 1(b) and 2(a), and those clauses do not contain rulemaking language. *See* 215 ILCS 5/4. Even if Class 1(a) did apply here, which it does not, that clause does not allow the Department to require an insurer to offer certain insurance products.

[8] Since the Department cannot force insurance companies to offer health insurance products without abortion care coverage, the Department in turn cannot mandate any segregation requirements for such hypothetical plans. Dkt. #19 at ¶204(f). In any case, the Department does not have discretionary authority to require that insurance companies segregate fees across plans. The Department can only require funds segregation to implement an applicable statute.

### 2. Plaintiffs fail to plead that enjoining enforcement of the RHA Provisions or providing notice of abortion coverage would redress their alleged injury.

Prohibiting the Department from enforcing the RHA Provisions would only impact *how* the Department regulates insurance products. Critically, Plaintiffs do not meet their obligation to plead facts that enjoining the RHA Provisions would make non-party Illinois insurance companies offer Plaintiffs' desired products—affordable health insurance that excludes abortion care coverage. Thus, Plaintiffs have not pled that their requested relief has a substantial likelihood of redressing their alleged injury.

First, Plaintiffs surmise that if enforcement of the RHA Provisions is enjoined, "at least some private insurers in Illinois will respond by offering state-regulated health-insurance plans that exclude or limit coverage for elective abortion."[9] But they do not plead any facts to support their theory, and these speculative allegations are not enough to establish standing. As the Ninth Circuit recently has recognized, non-party insurance companies' decisions about whether to offer "no-abortion health plans . . . is independent of" laws like the RHA Provisions at issue. *Cedar Park Assembly of God of Kirkland, Wash. v. Kriedler*, --F.4th--, No. 23-35560, 2025 WL 716341, at *7 (9th Cir. Mar. 6, 2025) (finding no redressability in free exercise challenge to state abortion coverage law).[10] Plaintiffs therefore cannot adequately plead redressability in the absence of any

---

[9] *E.g.*, Dkt. #19 at ¶¶ 58, 68, 76, 84, 93, 102, 111, 120, 129, 138, 146, 154, 162, 171.

[10] Moreover, a product would need to appear in the applicable market (individual, small group, or large group) and service area (geographical location) *for each Plaintiff*. In other words, individual Plaintiffs (who are not obtaining insurance through their employers) would need a product to appear in the individual market. Small employer Plaintiffs would need a product to appear in the small group market. Plaintiff Innovator would need a product to appear in the large group market. *See* 42 U.S.C. § 300gg-91(e)(1)-(e)(5). Even if an insurer offered a product in the right market for a particular Plaintiff, the product would also need to be sold in the right service area for that Plaintiff – *e.g.* a product might be sold to residents living in or employers based in Cook County but not in DuPage County, or vice-versa. *See* 50 Ill. Adm. Code 4540.30.

relevant facts. Redressability is not satisfied "whenever a decision *might* persuade actors who are not before the court" to act in a certain manner. *Haaland*, 599 U.S. at 294 (emphasis added). Rather, Plaintiffs must allege facts "sufficient to demonstrate a *substantial likelihood* that" non-party insurance companies would in fact offer the desired products as a "a result of the relief the plaintiff[s] sought." *Renal Physicians,* 489 F.3d at 1275 (emphasis added); *see also Lujan*, 504 U.S. at 561; *Area Transp., Inc. v. Ettinger*, 219 F.3d 671, 674 (7th Cir. 2000); *Haaland*, 599 U.S. at 294.

Second, Plaintiffs mistakenly allege that if the RHA Provisions are "declared unconstitutional and enjoined, then federal law will require every health insurer that offers plans on Illinois's state exchange to offer at least one plan that . . . excludes coverage for elective abortion . . ."[11] This is incorrect as a matter of law. Neither the ACA nor any other federal law would *require* insurance companies to sell products without abortion care coverage in Illinois should the Court enjoin enforcement of the RHA Provisions. *See supra* pp. 5-7 & n.2.

Finally, Plaintiffs allege no facts—nor can they—that show how requiring an insurer to provide notice to its enrollees that a plan covers abortion care would possibly relieve Plaintiffs' alleged injury.[12] Such notice would not affect a plan's benefits or somehow create a new plan without abortion care coverage as Plaintiffs desire. Thus, Plaintiffs also fail to establish redressability for this requested relief. *See, e.g.*, *Renal Physicians*, 489 F.3d at 1278.

---

[11] *E.g.*, Dkt. #19 at ¶¶ 57, 67, 75, 83, 92, 101, 110, 119, 128, 137, 145, 153, 161, 170.

[12] *E.g.*, Dkt. #19 at ¶¶ 59, 66, 69, 74, 77, 82, 85, 91, 94, 100, 103, 109, 112, 118, 121, 127, 130, 136, 139, 144, 147, 152, 155, 160, 163, 169, 172, 204(f).

**B.** **Plaintiffs fail to plead traceability to the Department because non-party insurance companies decide coverage specifications.**

Plaintiffs fail to meet the traceability requirement for many of the same reasons as they fail to plead redressability. The RHA Provisions are not enforced against Plaintiffs, but against companies that sell Department-regulated insurance. Plaintiffs do not sell insurance products in Illinois, nor do they do allege that they wish to do so. As a result, Plaintiffs must clear a high hurdle to establish standing because the complained-of rule is not enforced against Plaintiffs themselves, but against non-party insurance companies that are not before the Court. *Lujan*, 504 U.S. at 561; *see also Int'l Union of Operating Engineers, Local 139, AFL-CIO v. Daley*, 983 F.3d 287, 295-96 (7th Cir. 2020); *Shakman v. Dunne*, 829 F.2d 1387, 1396 (7th Cir. 1987).

Plaintiffs' allegations do not clear this high bar. They allege only that before the RHA Provisions went into effect, "there were some private insurers in Illinois that offered state-regulated health insurance plans that excluded or limited coverage for elective abortions." Dkt. #19 at ¶ 26. These allegations are not enough to plead traceability to the Department's enforcement of the RHA Provisions.

When causation and redressability hinge on the response of a regulated non-party to the government action, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 561. Plaintiffs cannot establish standing merely by alleging that a challenged policy "encouraged" non-parties to deny services that caused injury because it is "purely speculative whether" non-parties' actions were fairly traced to defendants. *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 42-43 (1976); *see also Int'l Union of Operating Eng'rs*, 983 F.3d at 295-96; *Segovia v. United States*, 880 F.3d 384, 389 (7th Cir. 2018); *Area Transp.*, 219 F.3d at 674. Thus, Plaintiffs fail to plead the required facts here to establish traceability.

## II. Claims 3, 4, 5, and 6 should be dismissed under Rule 12(b)(6) because none of the statutory claims are actionable by Plaintiffs.

Plaintiffs allege in Claims 3, 4, 5, and 6 that the RHA Provisions are preempted by scattered provisions of federal law. These claims fail on multiple grounds. Fundamentally, the statutes do not confer a private right of action or a right enforceable under Section 1983, and no other authority alleged can fill that gap. Even if Plaintiffs could enforce these statutes, they do not preempt the RHA Provisions. Their statutory claims thus must be dismissed under Rule 12(b)(6).

### A. Plaintiffs' asserted statutory provisions do not create private rights of action.

Plaintiffs cannot enforce federal law simply by pointing to it. Rather, "[a] private right of action to enforce federal law must be created by Congress." *Miller Aviation v. Milwaukee Cnty. Bd. of Supervisors*, 273 F.3d 722, 729 (7th Cir. 2001). Here, none of Plaintiffs' statutory provisions includes an explicit private right of action that gives rise to a claim against the Department, and Plaintiffs do not and cannot cite one. *See* Dkt. #19 at ¶¶190, 194, 198, 203 (citing other causes of action).

In Claim 3, Plaintiffs seek relief under federal criminal laws enacted in 1873 known as the Comstock Act. *Id.* at ¶¶188-90. The Comstock Act prohibits the import, interstate distribution, or mailing of "obscene materials," including "[e]very article or thing designed, adapted, or intended for producing abortion, or for any indecent or immoral use." 18 U.S.C. §§ 1461-62. But the Act is enforced by the U.S. Department of Justice—not private plaintiffs.

The Coats-Snowe and Weldon Amendments—the bases for Claims 4 and 5—are provisions limiting dispersal of federal funds. Dkt. #19 at ¶¶ 191-98. The Coats-Snowe Amendment prohibits "any State or local government that receives Federal financial assistance" from discriminating against a health care entity based on refusal to provide abortion care. 42 U.S.C. § 238n(a). Likewise, the Weldon Amendment is an appropriations rider that prohibits distribution

16

of federal funds to government entities that discriminate against a health care entity based on refusal to provide abortion care. *See* Pub. L. No. 117-103, Div. H, § 507(d), 136 Stat. 49, 496 (2022). Neither of these appropriations provisions contains any hint of a private right of action— particularly here, where no Plaintiff is a health care entity.

Lastly, Claim 6 relies on a combination of the ACA and the federal Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA"). Plaintiff alleges that the RHA Provisions cause the federal government (a non-party) to violate federal RFRA as to Plaintiff Innovator[13] through its enforcement of the ACA coverage mandate in the State of Illinois. Dkt. #19 at ¶¶ 199-203. Put another way, the ACA requires Innovator to offer insurance to its employees because of its size, but Innovator's purported only option in Illinois is to purchase Department-regulated health insurance that covers abortion care. This then allegedly causes the federal government to violate federal RFRA with respect to Innovator because any Department-regulated plan contravenes Innovator's religious beliefs. Therefore, Innovator concludes, the RHA Provisions must be preempted by federal RFRA and the ACA.

But neither the ACA nor federal RFRA allows Innovator to bring an action against the Department. The ACA coverage mandate confers no private right of action on an employer. 26 U.S.C. § 4980D(a)-(b); §§ 4980H(a), (c)(2); *Exact Scis. Corp. v. Blue Cross & Blue Shield of N.C.*, No. 1:16CV125, 2017 WL 1155807, at *10 (M.D.N.C. Mar. 27, 2017). And a private party can bring a federal RFRA claim against the federal government only, not a State or subdivision of a State like the Department. 42 U.S.C. § 2000bb-2 (defining "government" as "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United

---

[13] Innovator is the only Plaintiff pursuing Claim 6 because it alleges that it has more than 50 employees and is therefore subject to the ACA insurance coverage mandate. Dkt. #19 at ¶199; 26 U.S.C. § 4980H(a), (c)(2).

States, or of a covered entity"); *City of Boerne v. Flores*, 521 U.S. 507, 511 (1997) (federal RFRA cannot be enforced against the States). So, Innovator cannot invoke these statutes here either.

### B.    Plaintiffs' asserted provisions are not otherwise privately enforceable.

Plaintiffs assert that 42 U.S.C. § 1983, the Declaratory Judgment Act, and the doctrine of *Ex parte Young* allow them to invoke these statutory provisions. Dkt. #19 at ¶¶190, 194, 198, 203. But none permit Plaintiffs to bring suit.[14]

### 1.    Plaintiffs cannot use Section 1983 to enforce these statutory provisions because they do not confer individualized rights.

Section 1983 does not permit Plaintiffs to enforce the cited statutory provisions.[15] Section 1983 creates a private right of action against state officials who have violated rights protected by the Constitution or federal statute. *White v. Olig*, 56 F.3d 817, 820 (7th Cir. 1995). A plaintiff that seeks to enforce a federal law under Section 1983 must show, using "traditional tools of statutory construction," that "Congress has 'unambiguously conferred' 'individual rights upon a class of beneficiaries' to which the plaintiff belongs." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283, 285-86 (2002)). The plaintiff must show that "'Congress intended to create a federal right' for the identified class, not merely that [it falls] 'within the general zone of interest that the statute is intended to protect.'" *Id.* (quoting *Gonzaga*, 536 U.S. at 283). As the Supreme Court explained last year, that test is satisfied

---

[14] Section 1983, the Declaratory Judgment Act, and *Ex parte Young* can never apply to a federal RFRA claim against the Department—as alleged in Claim 6—because they cannot circumvent fundamental law that a federal RFRA claim cannot be brought against the Department as a State entity. *See City of Boerne*, 521 U.S. at 511.

[15] The Second Amended Complaint does not allege that Section 1983 provides grounds for the Comstock Act count in Claim 3. Nonetheless, Section 1983 cannot create a private Comstock Act claim. Rather, the Comstock Act is a federal criminal statute. It is not a source of an enforceable individual right, nor does it unambiguously confer a right on any party.

"where the provision in question is phrased in terms of the persons benefited and contains rights-creating, individual-centric language," but not where the provision contains "no rights-creating language," has "an aggregate, not individual, focus," or operates "primarily to direct the Federal Government's distribution of public funds." *Id.* at 183-84 (cleaned up).

The Coats-Snowe and Weldon Amendments in Claims 4 and 5 are paradigmatic examples of provisions that operate "primarily to direct the Federal Government's distribution of public funds." *Id.*; *see also Endsley v. City of Chi.*, 230 F.3d 276, 281 (7th Cir. 2000) (existence of "limitations on use of" federal funds does not mean "that Congress intended to open the door to private enforcement of them"); *Nat'l Inst. of Fam. & Life Advocs. v. Rauner*, No. 16-cv-50310, 2017 WL 11570803, at *3 (N.D. Ill. July 19, 2017) (granting motion to dismiss Coats-Snowe Amendment claim on this ground). These statutory provisions do not confer any rights on anyone, much less on Plaintiffs, and so cannot be enforced under Section 1983.

Plaintiff Innovator also cannot press Claim 6 through the lens of Section 1983. It cannot enforce the ACA this way because the ACA does not "unambiguously confer[] individual rights upon" employers who are required to purchase insurance for their employees, *Talevski*, 599 U.S. at 183 (quotation omitted); indeed, as relevant here, the ACA *imposes obligations* on employers, rather than entitling them to sue. *See* 26 U.S.C. § 4980D(a)-(b). And Innovator's invocation of federal RFRA is no more helpful, given that that statute does not permit suit against States, and so cannot possibly form the basis of a Section 1983 suit here.

### 2. Neither the Declaratory Judgment Act nor *Ex parte Young* doctrine create a basis to assert Plaintiffs' claims.

Plaintiffs are also incorrect that the Declaratory Judgment Act and *Ex parte Young* doctrine permit them to assert their statutory claims. The Declaratory Judgment Act "is procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), and does not create a cause of

action. Instead, a plaintiff seeking relief under the Act must separately show "the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *accord Alarm Detection Sys., Inc. v. Orland Fire Prot. Dist.*, 929 F.3d 865, 871 n.2 (7th Cir. 2019). Plaintiffs cannot do so here, as discussed, and so the Declaratory Judgment Act is of no help to them.

Plaintiffs also cannot pursue any of their statutory claims through an equitable cause of action recognized in *Ex parte Young*, 209 U.S. 123 (1908). That doctrine allows a court, "in some circumstances," where "an individual claims federal law immunizes him from state regulation," to "grant injunctive relief against state officers who are violating, or planning to violate, federal law." *Armstrong v. Exceptional Child Ctr. Inc.*, 575 U.S. 320, 326-27 (2015). It does not apply to Plaintiffs' statutory claims.

First, Plaintiffs cannot rely on *Ex parte Young* because the Department is not threatening to enforce the RHA Provisions against them—nor will it ever, because Plaintiffs are not insurers and are not subject to the Department's authority. *Ex parte Young* allows "the pre-emptive assertion in equity of a defense that would otherwise have been available in the State's enforcement proceedings at law," and therefore is available only where a State "is threatening [the plaintiff] with an enforcement action or otherwise trying to regulate its behavior through an action at law." *Planned Parenthood of Ind., Inc. v. Comm'r of the Ind. State Dep't. of Health*, 699 F.3d 962, 983 (7th Cir. 2012) (cleaned up). It allows a plaintiff to enjoin state officials "who threaten and are about to commence proceedings" against him or her. *Young*, 209 U.S. at 156; *accord Doe v. Holcomb*, 883 F.3d 971, 977 (7th Cir. 2018) (*Young* unavailable because state officer "ha[d] not threatened to do anything" to plaintiff); *Minn. RFL Republican Farmer Lab. Caucus v. Moriarty*, 108 F.4th 1035, 1037 (8th Cir. 2024) (*Young* applies only "to officials who threaten and are about to commence civil or criminal proceedings to enforce unconstitutional policies"). Here, Plaintiffs

20

face no imminent threat that the Department will enforce the RHA Provisions against them. Indeed, because the Department has power only over insurers, not private parties, there can be no "threat[] . . . [of] an enforcement action," *Planned Parenthood*, 699 F.3d at 983, against Plaintiffs at all. *Ex parte Young* is inapplicable here.

Plaintiffs' reliance on *Ex parte Young* fails for the additional reason that each of the statutory provisions on which they rely contains an exclusive remedial scheme that precludes private enforcement. Congress can implicitly foreclose reliance on *Ex parte Young* by providing an exclusive remedial scheme. *See Armstrong*, 575 U.S. at 328 ("[T]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." (cleaned up)).

As a criminal statute, the Comstock Act is subject to the enforcement authority of the federal Executive Branch, which "makes arrests and prosecutes offenses on behalf of the United States." *United States v. Texas*, 599 U.S. 670, 679 (2023). The Supreme Court "has long held "that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.* at 674 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). Both the Coats-Snowe and Weldon Amendments contemplate withholding of funding from noncompliant state or local government recipients as the method of ensuring compliance. And the tax penalty in the ACA also renders *Ex parte Young* unavailable. *See Armstrong*, 575 U.S. at 328.

### C. Plaintiffs' statutory claims also fail as a matter of law.

Finally, to the extent Plaintiffs' statutory claims can be interpreted on their merits based on preemption, they must be dismissed under Rule 12(b)(6).

*Comstock Act.* Plaintiffs' Comstock Act claim is badly flawed. First, Plaintiffs misread the

21

scope of the Act. Contrary to Plaintiffs' view that "[e]very abortion provider in the United States is violating" the Act (Dkt. #19 at ¶188), the Act does not supplant state law regulating abortion care or categorically prohibit obtaining abortion products. The Comstock Act only bans the conveyance of items used in abortion care if the sender intends the items to be used unlawfully under the law of the receiving state. *See*, *e.g.*, *United States v. One Package*, 86 F.2d 737, 738 (2d Cir. 1936) (relying on New York law to conclude ultimate use of contraceptive was legal and therefore did not violate Section 305(a) of Tariff Act of 1930, derived from Comstock Act); *Youngs Rubber Corp. v. C.I. Lee & Co.*, 45 F.2d 103, 107 (2d Cir. 1930) (same, in dicta); *Bours v. United States*, 229 F. 960, 965 (7th Cir. 1915) (reversing conviction of physician when indictment failed to delineate whether potential abortion would be performed as "duty of any reputable physician to perform the act"). In Illinois, abortion is not only legal but statutorily protected. 775 ILCS 55/1-5. Plaintiffs are wrong at the outset that any health care provider that operates in or sends abortion products to Illinois is engaging in conduct implicating the Act at all.

Plaintiffs' specific preemption claim is even more attenuated. Plaintiffs, after all, are not abortion providers; they claim that purchasing Department-regulated insurance forces them to aid and abet violations of the Comstock Act when other insurance consumers use abortion medication and are reimbursed through their insurance. Dkt. #19 at ¶189. But that novel theory is wrong on its face. "A person who 'aids, abets, counsels, commands, induces or procures' the commission of a federal offense 'is punishable as a principal.'" *United States v. Anderson*, 988 F.3d 420, 424 (7th Cir. 2021) (citing 18 U.S.C. § 2(a)). To be liable, "a person must (1) take an affirmative act in furtherance of the offense with (2) the intent of facilitating the offense's commission." *Id.* (citing *Rosemond v. United States*, 572 U.S. 65, 71 (2014)). Where the actions of the accused and the ultimate crime for which they are charged is attenuated, an aiding-and-abetting theory fails "absent

'some showing of specific intent to aid in, or specific knowledge of, the crime charged.'" *Id.* at 425 (citing *United States v. Greer*, 467 F.2d 1064, 1069 (7th Cir. 1972)).

Plaintiffs plead no facts that suggest they specifically intend to further a criminal venture—or frankly, that they intend to support abortion in any capacity. It is far too attenuated to claim that Plaintiffs could be held criminally liable for actions by strangers who happen to have the same insurer. Given that disavowal, there can be no aiding-and-abetting liability here, and therefore no preemption.

*Funding statutes.* Plaintiffs' Weldon and Coats-Snowe Amendment claims also fail. Both statutes bar state and local governments that receive certain federal funds from subjecting any "health care entity" to discrimination on certain abortion-related bases. 42 U.S.C. § 238n(a); Pub. L. No. 117-103, Div. H, § 507(d), 136 Stat. 49, 496 (2022). However, insurance plan beneficiaries and purchasers like Plaintiffs are not protected "health care entities" as defined in these statutes.[16] The Coats-Snowe Amendment does not speak to state law governing health insurers at all and thus does not apply to the RHA Provisions (which regulate insurers, not physicians). The health care entities whose religious or moral objections the Weldon Amendment protects include health insurers or managed care entities, such as a ". . . provider-sponsored organization, health maintenance organization, a health insurance plan . . . ," Pub. L. No. 117-103, Div. H, § 507(d)(2), 136 Stat. 49, 496 (2022), but those are entities that issue a health insurance product, not purchasers such as Plaintiffs. Regardless, both claims fail to the extent they rest on a perceived conflict

---

[16] *See* 42 U.S.C. § 238n(c)(2) ("'health care entity' includes an individual physician, a postgraduate physician training program, and a participant in a program of training in the health professions"); Pub. L. No. 117-103, Div. H, § 507(d)(2), 136 Stat. 49, 496 (2022) ("'health care entity' includes an individual physician or other health care professional, a hospital, a provider-sponsored organization, a health maintenance organization, a health insurance plan, or any other kind of health care facility, organization, or plan.").

between the RHA Provisions and the funding statutes.

*ACA/federal RFRA.* Plaintiff Innovator alleges a "conflict [is] created by the combined existence of RFRA, the ACA coverage mandate, and the RHA Provisions," and as such the RHA Provisions "must give way under the Supremacy Clause." Dkt. #19 at ¶202. Innovator claims that the ACA coverage mandate (which requires it to offer employees insurance) in concert with the RHA Provisions (which require Department-regulated insurance plans to cover abortion care) violate federal RFRA with respect to its beliefs. *Id.* at ¶¶201-02. Innovator alleges that the ACA coverage mandate and RHA Provisions substantially burden its religion and "the *federal government has made no attempt* to demonstrate that imposing this burden on Innovator represents the 'least restrictive means' of furthering a 'compelling government interest.'" *Id.* at ¶201 (citing 42 U.S.C. § 200bb-1, emphasis added).[17]

This is nonsensical and improper as a matter of law. The federal government would only make this showing in the context of a lawsuit, and the federal government is not a party to this suit. In the end, this claim amounts to an attempt to make an end run around *City of Boerne*, which expressly held that federal RFRA cannot be enforced against the States. If a plaintiff cannot directly enforce federal RFRA against a State, it cannot salvage that defect by attempting to cast its claim as sounding instead in "preemption." Innovator's invocation of the ACA cannot cure this problem,

---

[17] Innovator also alleges that the RHA Provisions may "curb the scope or efficacy or permissible enforcement" of the ACA coverage mandate. Dkt. #19 at ¶202. It claims that the result is a "conflict" of laws that "must be resolved in favor of the federal statutes" as they preempt the RHA Provisions. These allegations are legally wrong. The ACA contemplates potential state laws regarding insurance coverage of abortion and mandates that "[n]othing in this Act shall be construed to preempt or otherwise have any effect on State laws regarding the prohibition of (or requirement of) coverage, funding, or procedural requirements on abortions." 42 U.S.C. § 18023(c)(1). Indeed, Plaintiffs concede as much earlier in the Complaint. Dkt. #19 at ¶25 (quoting ACA).

either, because the ACA expressly provides that it does not "preempt or otherwise have any effect on State laws" that, like the RHA Provisions, "require[] . . . coverage" of abortion. 42 U.S.C. § 18023(c)(1). Claim 6 therefore must be dismissed under Rule 12(b)(6).

### III. Claims 1 and 2 must be dismissed pursuant to Rule 12(b)(6) because the RHA Provisions comply with the First Amendment.

#### A. The Free Exercise claim fails because the RHA Provisions are neutral, generally applicable insurance regulations supported by a rational basis.

The Court should dismiss Plaintiffs' Free Exercise claim (Claim 1) because the RHA Provisions are neutral, generally applicable, and rationally related to a valid government purpose. *See Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017), *as amended* (Oct. 5, 2017). Plaintiffs do not, and cannot, plead any set of facts that would show otherwise.

"The Free Exercise Clause protects against laws that impose special disabilities on the basis of religious status." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 461 (2017) (cleaned up). "[N]eutral laws of general application that burden religious practices do not run afoul of the Free Exercise Clause." *United States v. Indianapolis Baptist Temple*, 224 F.3d 627, 629 (7th Cir. 2000). "[A] neutral law of general applicability is constitutional if it is supported by a rational basis." *Ill. Bible Colls. Ass'n*, 870 F.3d at 639.

The RHA Provisions meet all of these criteria. First, they are neutral because they "do not target religion or religious institutions" and the Second Amended Complaint contains "no allegation of an underlying religious animus." *Id.* (affirming grant of motion to dismiss Free Exercise claim). Second, they are generally applicable because they apply equally to all Department-regulated health insurance products regardless of the religious beliefs of the employers or individuals who purchase them. *See id.* Third, they are rationally related to the valid government purpose of "protect[ing] individual decision-making in the area of reproductive health

and [] support[ing] access to the full scope of quality reproductive health care for all in our State." 775 ILCS 55/1-5. This is undoubtedly a legitimate government purpose. *See Cedar Park Assembly of God of Kirkland, Wash. v. Kreidler*, 683 F. Supp. 3d 1172, 1187 (W.D. Wash. 2023) (finding "promoting gender equity, promoting economic success of women, improving women's health, and protecting privacy" are "all legitimate governmental purposes"); *Or. Right to Life v. Stolfi*, --- F.Supp.3d ----, No. 6:23-CV-01282-MK, 2024 WL 4345758, at *8 (D. Or. Sept. 30, 2024) (court had "no trouble concluding" that "access to comprehensive reproductive health care" is "legitimate governmental purpose"). As in their original complaint, Plaintiffs do not, and cannot, allege otherwise.

Finally, Plaintiffs do not allege that the RHA Provisions "impose[] a special disability on religions or religious beliefs and practices." *Ill. Bible Colls. Ass'n*, 870 F.3d at 639; *see also Trinity*, 582 U.S. at 461. Nor is such a special disability evident in their text.

### B. The Free Exercise claim fails because the exemptions in the RHA Provisions do not undermine general applicability.

Plaintiffs allege that exemptions in the RHA Provisions ensuring compliance with federal laws defeat general applicability. Dkt. #19 at ¶¶175-77, 179. Their argument fails as a matter of law. The exemptions are for when it is "necessary to ensure the continued receipt of federal funds" and for "pursuant to 42 U.S.C. 18054(a)(6), [] a multistate plan that does not provide coverage for abortion." 215 ILCS 5/356z.4a(d)-(e), 5/356z.60(f). RHA Provision 5/356z.60(d) also has an exemption for when coverage for abortion care without cost-sharing "would disqualify a high-deductible health plan from eligibility for a health savings account pursuant to the federal Internal Revenue Code, 26 U.S.C. 223." As case law has made clear, "ensuring compliance with federal law" through these exemptions "does not defeat general applicability." *Cedar Park*, 683 F. Supp. 3d at 1186 (rejecting Free Exercise challenge to law requiring state-regulated insurance cover

abortion); *see also Or. Right to Life,* 2024 WL 4345758, at *7-8 (same); *Ill. Bible Colls.*, 870 F.3d at 640-41.

Plaintiffs also claim that the RHA Provisions contain exemptions for grandfathered health insurance policies. Dkt. #19 at ¶178. However, these are not exemptions to the RHA Provisions, but rather a specification that the RHA Provisions would take effect at the start of a policy period or if the policy were amended for any reason. Thus, one RHA Provision went into effect for any Department-regulated policies "amended, delivered, issued, or renewed . . . on or after January 1, 2024" (215 ILCS 5/356z.60(b)), and the other for those "issued, amended, delivered, or renewed . . . after the effective date of this amendatory Act of the 101st General Assembly." 215 ILCS 5/356z.4a(a). Any health insurance policies amended or renewed on or after the effective dates of the RHA Provisions became subject to those provisions regardless of whether they were a grandfathered health plan. Simply put, the "exemptions" cited in the Second Amended Complaint are not exemptions at all.

### C. Plaintiffs' expressive association claim is also deficient and should be dismissed, dooming any attempted boot-strapped hybrid-rights claim.

Three of the Plaintiffs, Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life, attempt to salvage their defective Free Exercise claim by alleging that it is "a hybrid-rights claim."[18] They allege that thanks to their accompanying First Amendment expressive association claim (Claim 2), the RHA Provisions automatically are subject to strict scrutiny. Dkt. #19 at ¶¶180, 184-87. But "a plaintiff does not allege a hybrid rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right." *C.L. for Urb. Believers v. City of Chi.*, 342 F.3d 752, 765 (7th

---

[18] This "hybrid-rights" argument cannot be made by the rest of the Plaintiffs, who did not bring an expressive association claim.

Cir. 2003) (cleaned up). And these three Plaintiffs fail to state an expressive association claim upon which relief can be granted, thus their expressive association claim must also be dismissed.

A law may violate an organization's expressive association right where it directly interferes with membership decisions or where it indirectly affects the group's composition by making membership "less attractive." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc. (FAIR)*, 547 U.S. 47, 69 (2006). "The forced inclusion of an unwanted *person* in a group infringes the group's freedom of expressive association if the presence of that person affects in a significant way the group's ability to advocate public or private viewpoints." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (citing *N.Y. State Club Ass'n., Inc. v. City of N.Y.*, 487 U.S. 1, 13 (1988), emphasis added). Laws that compel associations to interact with "outsiders" but do not force those associations to "accept members [they] do[] not desire" do not violate the right to expressive association. *FAIR*, 547 U.S. at 69-70 (law requiring universities to grant military recruiters access to campuses did not violate First Amendment as schools were free to express disapproval of military policy, faculty and students were free to avoid recruiters, and no one would reasonably believe recruiters' presence reflected schools' beliefs).

The Second Amended Complaint lacks any allegations supporting a violation of the right to expressive association. It alleges that the RHA Provisions force Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life to choose between: (1) not purchasing health insurance at all, making them less attractive to potential employees; or (2) purchasing insurance that "aid[s] and abet[s] the very behaviors that they condemn, [] undercut[ting] the credibility of their anti-abortion messag[ing]," exposing them to "charges of hypocrisy" and "making their employees (and their organization[s]) complicit in other people's elective abortions." Dkt. #19 at ¶¶185-86. But even if these Plaintiffs did purchase Department-regulated insurance, their claim

fails, because fundamentally, *purchasing an insurance plan is not expressive conduct*. The right to freedom of expressive association protects more than a group's membership decisions; however, unlike laws that jeopardize member anonymity and safety or "impose penalties or withhold benefits based on membership in a disfavored group," baldly claiming that certain conduct (e.g., purchasing health insurance) is undertaken for expressive purposes does not make it symbolic, protected speech. *FAIR*, 547 U.S. at 69; *see also Healy v. James*, 408 U.S. 169, 180-84 (1972). Nor can a speaker "erect a shield" against laws it dislikes simply by asserting that they would impair its message. *Boy Scouts of Am.*, 530 U.S. at 653; *see also Healy*, 408 U.S. at 180-84.

Here, Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life do not and cannot allege how the act of purchasing health insurance for their employees is protected speech, let alone how that action infringes on their expressive membership decisions. The RHA Provisions do not contemplate policyholders' organizational membership choices. Nor do the RHA Provisions prohibit these Plaintiffs and their members from voicing their religious beliefs against abortion. *See, e.g.*, *FAIR*, 547 U.S. at 69-70. It is implausible that potential members would view their compliance with a facially neutral, generally applicable law that does not target their religious beliefs as expressive speech by these three Plaintiffs themselves. For example, the ACA contraceptive mandate requiring insurance to cover contraception does not violate the right to expressive association. Purchasing such insurance does not interfere with the freedom of an association's members to "associate with each other and to promote their religious views on contraception . . . and to voice their disapproval of health-care products and services that they believe to be immoral." *Priests for Life v. U.S. Dep't of Health & Hum. Servs.*, 772 F.3d 229, 270 (D.C. Cir. 2014) (vacated and remanded on other grounds); *see also U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 600 (6th Cir. 2013) (individual mandate does not "impair plaintiffs' ability to engage

in expressive conduct" and "nothing about" such laws "affects the composition of the group by making group membership less desirable." (citation omitted)).

Thus, the Court should dismiss Claim 2 under Rule 12(b)(6), thereby disallowing Plaintiffs Midwest Bible Church, Pro-Life Action League, and Illinois Right to Life from bringing a hybrid-rights claim with Claim 1.

## CONCLUSION

For these reasons, the Department respectfully requests that this Court dismiss the Second Amended Complaint pursuant to Rules 12(b)(1) and 12(b)(6).

Dated: March 31, 2025

KWAME RAOUL
*Attorney General of Illinois*

*/s/ Elizabeth Morris*
Elizabeth Morris, ARDC #6297239
Sarah J. Gallo, ARDC #6320644
Alice L. Riechers, ARDC #6272933
Elena S. Meth, ARDC # 6346041
Office of the Illinois Attorney General
Special Litigation Bureau
115 S. LaSalle Street, 35th Floor
Chicago, IL 60603
312-814-3000
elizabeth.morris@ilag.gov
sarah.gallo@ilag.gov
alice.riechers@ilag.gov
elena.meth@ilag.gov

*Counsel for Defendant Ann Gillespie*